**ALTVIEW LAW GROUP, LLP**
John M. Begakis, Esq. (SBN 278681)
john@altviewlawgroup.com
Sheena B. Tehrani, Esq. (SBN 326373)
sheena@altviewlawgroup.com
12100 Wilshire Blvd., Suite 800
Los Angeles, California 90025
Telephone: (310) 230-5580
Facsimile: (562) 275-8954

*Attorneys for Plaintiff*
THAT ONE VIDEO ENTERTAINMENT, LLC, a
California limited liability company

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THAT ONE VIDEO ENTERTAINMENT, LLC, a California limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> KOIL CONTENT CREATION PTY LTD., an Australian proprietary limited company doing business as NOPIXEL; MITCHELL CLOUT, an individual; and DOES 1-25, inclusive, <br><br> Defendants. | CASE NO: 2:23-cv-02687 CAS (JCx) <br><br> [Assigned to the Hon. Stephen V. Wilson; Ctrm 10A] <br><br> **PLAINTIFF'S MOTION TO QUASH, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JOHN BEGAKIS IN SUPPORT THEREOF** <br><br> **Hearing:** <br> Judge: Hon. Jacqueline Chooljian <br> Date:  September 10, 2024 <br> Time:  9:30 a.m. <br> Place:  Ctrm 750, 255 East Temple Street, Los Angeles, California, 90012 <br><br> Action Filed: April 10, 2023 <br> Trial Date: September 17, 2024 |

PLAINTIFF'S MOTION TO QUASH, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

    **PLEASE TAKE NOTICE** that, on September 10, 2024, at 9:30 a.m., in the United States District Court for the Central District of California, located at 255 East Temple Street, Los Angeles, California, 90012, the Honorable Magistrate Judge Jacqueline Chooljian presiding, Plaintiff THAT ONE VIDEO ENTERTAINMENT, LLC, a California limited liability company ("TOVE" or "Plaintiff") will and hereby does move for an order quashing the Subpoena served upon TOVE's immigration attorneys on or about July 18, 2024 by Defendants KOIL CONTENT CREATION PTY LTD., an Australian proprietary limited company doing business as NOPIXEL, and MITCHELL CLOUT, an individual (collectively, "Defendants"), or, in the alternative, for an order preventing Defendants from obtaining any attorney-client privileged documents sought from such Subpoena (collectively, the "Motion").

    The Motion is made pursuant to Rule 45(d)(3) of the Federal Rules of Civil Procedure ("FRCP"), on the grounds that the Subpoena must be quashed because it seeks privileged and/or protected communications between TOVE and its immigration attorneys where no exception applies. The Motion is alternatively made pursuant to Rule 26(c)(1), on the grounds that a protective order is necessary to protect TOVE from annoyance, embarrassment, oppression and/or undue burden or expense resulting from Defendants' effort to obtain such privileged and/or protected communications where they are totally irrelevant to the parties' dispute over a claim to joint ownership of certain copyrighted works.

///

///

///

///

///

///

PLAINTIFF'S MOTION TO QUASH, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

The Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities and Declarations of John Begakis, Benjamin Lau, and Daniel Tracey, all pleadings, files and records in this proceeding, all matters of which the Court may take judicial notice, and any arguments or evidence that the Court may consider prior to ruling.

DATED:  August 8, 2024                **ALTVIEW LAW GROUP, LLP**


By:   /s/ John Begakis, Esq.
        JOHN M. BEGAKIS
        SHEENA B. TEHRANI
        *Attorneys for* THAT ONE VIDEO
ENTERTAINMENT, LLC, a California
limited liability company

PLAINTIFF'S MOTION TO QUASH, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................. 1

II.   STATEMENT OF RELEVANT FACTS ............................................ 1

      A.    The Underlying Dispute ............................................ 1

      B.    The Deposition of the Person Most Knowledgeable For TOVE............ 3

      C.    Defendants' Counsel's Unfounded Threats Of Illegality.............. 3

III.  THE PARTIES HAVE PROPERLLY MET AND CONFERRED ................. 4

IV.   ARGUMENT........................................................................ 4

      A.    The Subpoena Must Be Quashed ...................................... 4

            1.    Communications Regarding The Preparation Of Danny
                  Tracey's Visa Application Are Protected By The Attorney
                  Client Privilege............................................... 5

            2.    The Crime-Fraud Exception Does Not Apply To
                  Communications Regarding The Preparation of Danny
                  Tracey's Visa Application ..................................... 5

      B.    In the Alternative, A Protective Order Should Be Issued To
            Prevent The Disclosure of Privileged Information From
            Plaintiff's Immigration Attorneys ................................ 7

      C.    Good Cause Exists to Grant TOVE's Motion ......................... 9

            1.    Communications Regarding The Preparation Of Danny
                  Tracey's Visa Application Are Irrelevant To The Question
                  Of Whether TOVE Is A Co-Owner In The NoPixel Server
                  Source Code ................................................... 9

            2.    Communications Regarding The Preparation Of Danny
                  Tracey's Visa Application Are Protected By The Attorney
                  Client Privilege, And The Crime-Fraud Exception Does
                  Not Apply..................................................... 10

      D.    The Balance of Interests Favors Limiting Discovery to Relevant
            Information ...................................................... 10

V.    CONCLUSION....................................................................... 11

PLAINTIFF'S MOTION TO QUASH, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

# **TABLE OF AUTHORITIES**

## **CASES**

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406 (C.D. Cal. 2014) .................................................................................................. 4

*BP Alaska Exploration, Inc. v. Sup. Ct.* (1988) 199 Cal. App. 3d 1240 ..................... 5

*Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989)................................. 9

*Continental Cas. Co. v. St. Paul Surplus Lines Ins. Co.*, 265 F.R.D. 510 (E.D. Cal., 2010).................................................................................................................... 8

*Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965 (C.D. Cal. 2010) ............... 4

*Cunningham v. Connecticut Mut. Life Ins.*, 845 F.Supp.1403 (S.D. Cal. 1994)......... 7

*Eastman v. Thompson*, 594 F.Supp.3d 1156 (C.D. Cal., 2022) ................................. 8

FRCP 26(c)(1) ......................................................................................................... 7

*Hasbrouck v. BankAmerica Housing Services*, 187 F.R.D. 453 (N.D.N.Y. 1999). 7, 8

*In re Fontaine*, 402 F.Supp. 1219 (E.D.N.Y. 1975) ................................................. 8

*Lectrolarm Custom Systems, Inc. v. Pelco Sales, Inc.*, 212 F.R.D. 567 (E.D. Cal., 2002)..................................................................................................................... 8

*Nowell v. Sup. Ct.* (1963) 223 Cal. App. 2d 652................................................. 5, 10

*Sartor v. Cnty. of Riverside*, No. 522CV1410JGBSPX, 2024 WL 1136333 (C.D. Cal. Feb. 15, 2024) ............................................................................................. 4

*United States v. CBS, Inc.*, 666 F.2d 364 (9th Cir. 1982) ......................................... 7

## **STATUTES**

17 U.S.C. § 101 ....................................................................................................... 9

17 U.S.C. § 201(a) ................................................................................................... 9

FRCP 26(b)(1)...................................................................................................... 4, 7

FRCP 45 .................................................................................................................. 4

FRE 403 ................................................................................................................ 10

PLAINTIFF'S MOTION TO QUASH, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff THAT ONE VIDEO ENTERTAINMENT, LLC, a California limited liability company ("TOVE" or "Plaintiff") hereby moves for an order quashing the Subpoena served upon TOVE's immigration attorneys on or about July 18, 2024 by Defendants KOIL CONTENT CREATION PTY LTD., an Australian proprietary limited company doing business as NOPIXEL, and MITCHELL CLOUT, an individual (collectively, "Defendants"), or, in the alternative, for an order preventing Defendants from obtaining any attorney-client privileged documents sought from such Subpoena (collectively, the "Motion").

## I.   INTRODUCTION

In a transparent and desperate attempt to intimidate TOVE into dismissing its claims, particularly as it becomes more apparent that TOVE is clearly entitled to co-ownership in the copyrightable work at issue in this case, Defendants have turned to accusing TOVE of committing "immigration fraud." After improperly threatening TOVE's principal with up to ten years' jailtime (in violation of Rule 5-100 of the California Rules of Professional Conduct) on such an utterly baseless accusation, Defendant served the Subpoena on Plaintiff's immigration counsel to obtain their obviously privileged communications with TOVE's principal. However, the FRCP is clear: because Defendants seek privileged documents between TOVE and its immigration attorneys, and no real crime-fraud exception applies, the Subpoena must be quashed, or a protective order limiting the scope must be issued.

## II.   STATEMENT OF RELEVANT FACTS

### A.   The Underlying Dispute

TOVE is a content creation and business management company that hired Daniel Tracey, a talented software developer, to work as its lead developer. First Amended Complaint ("FAC") at ¶ 9. Because Mr. Tracey is a foreign national working in the United States, and TOVE is a U.S.-based company, TOVE also sponsored Mr. Tracey's work visa. *Id*. Pursuant to the terms of his employment

1

relationship, TOVE was permitted to contract with third parties for the services of Mr. Tracey. *Id.* at ¶ 10.

Defendants operate a very successful videogame server, wherein individuals who play the "open world" videogame entitled "Grand Theft Auto V" (the "Game") can "role-play" with other individuals in a closed Game environment on such server (the "NoPixel Server"). *Id.* at ¶ 11. In or about early 2020, NoPixel desired to engage Mr. Tracey, in his role as a software developer, to make significant updates to the NoPixel Server (the "Services"). *Id.* at ¶ 12. Accordingly, NoPixel contracted with TOVE for the services of Mr. Tracey, in exchange for NoPixel's agreement to pay TOVE (by way of Mr. Tracey). *Id.*

From in or about early 2020 to in or about December of 2022, Mr. Tracey rendered the Services to NoPixel as an employee of TOVE, but without ever signing any written agreement assigning his rights in his contributions to NoPixel. *Id.* at ¶ 13. In rendering the Services, Mr. Tracey made significant creative contributions to the "back end" information management systems that allow the NoPixel Server to function, including designing and creating the entire payment processing system for the NoPixel Server that has facilitated the processing of millions of dollars a year in payments to Defendants. *Id.* Because Mr. Tracey rendered the Services to NoPixel in the course and scope of his employment for TOVE, and because NoPixel had no written agreement otherwise addressing Mr. Tracey's rights in his contributions, TOVE is now a co-owner in the NoPixel Server.

Eventually, on or about December 27, 2022, Defendants terminated Mr. Tracey from his role with NoPixel without warning. *Id.* at ¶ 15. Despite this fact, Defendants did not cease using Mr. Tracey's contributions to the NoPixel Server, and continue to this day to use such contributions while simultaneously failing and refusing to account to TOVE for its share of the profits generated therefrom as the co-owner in the copyright thereto. *See* Declaration of John Begakis ("Begakis

PLAINTIFF'S MOTION TO QUASH, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

Decl.") at ¶ 2. Accordingly, TOVE commenced this action for, among other Causes of Action, a determination from the Court that it is the joint owner in the copyright to the source code of the NoPixel Server. *Id*.

### B. The Deposition of the Person Most Knowledgeable For TOVE

On or about July 12, 2024, Defendants' counsel took the deposition of Jacque Khalil, as the Chief Operating Officer of TOVE and person most knowledgeable to testify on behalf of TOVE. *Id*. at ¶ 4. During the deposition, Defendants' counsel presented Mr. Khalil with immigration forms, which TOVE had submitted for Mr. Tracey to obtain a work visa due to his employment with TOVE. *Id.* After asking a series of questions regarding TOVE's employment of Mr. Tracey, Defendants' counsel – who has since admitted to having *absolutely no experience* in immigration law – turned to accusing TOVE and Mr. Tracey of committing a "scam to the immigration department". *Id*; Exhibit "A" thereto. Defendants' counsel then continued to threaten Mr. Khalil, by asserting that he had committed immigration fraud, which he claimed was a crime "with penalty up to ten years." *Id.*

### C. Defendants' Counsel's Unfounded Threats Of Illegality

Thereafter, on or about July 15, 2024, Defendants' counsel sent TOVE's counsel an email correspondence wherein he demanded that TOVE "immediately dismiss" its claims because Mr. Khalil "knowingly" furnished false information, subjecting him to "up to 10 years in prison." *Id*. at ¶ 4; Exhibit "B" thereto. Two days later, on or about July 17, 2024, Defendants' counsel also sent essentially the same threatening email correspondence to TOVE's immigration counsel at the law firm of Jackson Lewis, and harassingly called such counsel multiple times. *Id*. at ¶ 5; Exhibit "C" thereto. After those threats did not work, Defendants served Jackson Lewis with a Subpoena seeking "all communications" between TOVE and counsel. *Id*. at ¶ 6; Exhibit "D" thereto.

///

3

**III.    THE PARTIES HAVE PROPERLLY MET AND CONFERRED**

On or about July 22, 2024, Plaintiff's counsel met and conferred with Defendants' counsel in person regarding Plaintiff's intention to bring this Motion. *Id*. at ¶ 7. During this meeting, Defendants' counsel admitted to having literally no experience in immigration law. *Id*. Yet, Defendants' counsel again threatened Mr. Khalil of TOVE with criminal prosecution, stating "your client is going to go to jail" if Mr. Khalil did not withdraw the Complaint. *Id*.; Exhibit "E" thereto.

Predictably, Defendants' counsel also flatly refused to even modify or limit the Subpoena, and this Motion therefore necessarily results. *Id*.

**IV.    ARGUMENT**

**A.    The Subpoena Must Be Quashed**

In general, discovery of any relevant, non-privileged information is permissible. FRCP 26(b)(1). Motions to quash subpoenas are governed by Rule 45, and, the "same broad scope of discovery set out in Rule 26 applies to the discovery that may be sought pursuant to Rule 45." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014). Under Rule 45, a subpoena ***must*** be quashed or modified where the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or… subjects a person to undue burden." FRCP 45(d)(3)(A)(iii)-(iv) (emphasis added).

Though a motion to quash a third-party subpoena may pose issues regarding standing, a party objecting to the subpoena may establish standing if "the objecting party claims some personal right or privilege with regard to the documents sought." *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 973 (C.D. Cal. 2010); *see also Sartor v. Cnty. of Riverside*, No. 522CV1410JGBSPX, 2024 WL 1136333, at *3 (C.D. Cal. Feb. 15, 2024) ("But defendants do have standing to move to quash the Law Firms subpoenas based on a claim of a right or privilege as to the requested documents."). As discussed below, TOVE unquestionably has standing to quash the

4

PLAINTIFF'S MOTION TO QUASH, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

Subpoena because Defendants seek attorney-client privileged communications between TOVE and its immigration attorneys.

1.    Communications Regarding The Preparation Of Danny Tracey's Visa Application Are Protected By The Attorney Client Privilege

Defendants do not hide what they seek via the Subpoena: privileged email communications between TOVE and its immigration counsel. But whether because Defendants' counsel truly believes such information is relevant (and not ripe for exclusion at trial via a motion *in limine*), or whether Defendants' counsel has become so desperate not to lose that he is willing to try anything, the attorney client privilege absolutely protects all of such communications between TOVE and its immigration counsel. Knowing this, Defendants' attempts to allege the crime-fraud exception, but as the Court will see below, such exception does not apply.

2.    The Crime-Fraud Exception Does Not Apply To Communications Regarding The Preparation of Danny Tracey's Visa Application

In California, for the crime-fraud exception to apply, the party opposing assertion of the attorney-client privilege must establish, first, a *prima facie* case of fraud and, second, a reasonable relationship between the fraud and the attorney-client privileged communication. *BP Alaska Exploration, Inc. v. Sup. Ct.* (1988) 199 Cal. App. 3d 1240, 1262; *Nowell v. Sup. Ct.* (1963) 223 Cal. App. 2d 652, 657. Mere assertion of fraud is insufficient; there must be a showing that the fraud has some foundation in fact. *Nowell*, 223 Cal. App. 2d at 657. Here, Defendants' counsel contends (without any immigration law expertise or experience) that Plaintiff's principal "submitted false information" in connection with an H-1B Application regarding: (i) Mr. Tracey's place of employment; and (ii) the percentage of time Mr. Tracey spent on certain work.

///

5

PLAINTIFF'S MOTION TO QUASH, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

***First***, TOVE's answer in the negative to a question on Form 9035 regarding whether Mr. Tracey would be "placed with a secondary entity at this place of employment" was accurate. This is because the question, stated another way, is simply asking whether Mr. Tracey would be physically placed at a worksite that was controlled by a third-party business for which TOVE was providing his services. Declaration of Benjamin Lau ("Lau Decl.") at ¶ 3. And the answer to that question was (accurately) "no" because Mr. Tracey was working remotely for NoPixel during his employment with TOVE. Declaration of Daniel Tracey ("Tracey Decl.") at ¶ 2.

***Second***, the letter submitted by TOVE's principal, Mr. Khalil, as part of the H-1B application accurately specified that approximately 10% of Mr. Tracey's job duties would be to "[c]reate video tutorials demonstrating software modifying techniques and general media content discussing software modifying strategies for interactive multimedia entertainment productions." Lau Decl. at ¶ 4. A portion of Mr. Tracey's time as an employee for TOVE was dedicated to streaming audiovisual content of Mr. Tracey's programming abilities (i.e., "software modifying strategies") in connection with the game played on the NoPixel Server (i.e., "interactive multimedia entertainment productions"). Tracey Decl. at ¶ 3. Thus, while Mr. Tracey did stream more during certain times than others, the 10% number assigned to streaming was an accurate estimate of the average amount of time Mr. Tracey would spend on such task in a given week at the time the Application was submitted. Tracey Decl. at ¶ 3; Lau Decl. at ¶ 4.

All of Defendants other intentionally salacious allegations, including (i) that the Employment Agreement didn't specify that Mr. Tracey would be loaned out, (ii) that the H-1B Application didn't state that Mr. Tracey was being hired to work for Defendants, (iii) that TOVE's principal never spoke with Defendant about the loan-out arrangement, and (iv) that Defendants did not pay TOVE directly, are either false, irrelevant to the H-1B Application, or both. And even if such statements were

true and were relevant to Mr. Tracey's employment status, their omission does not constitute a "submission of false information." *See* Lau Decl. at ¶ 5.

**B.** **In the Alternative, A Protective Order Should Be Issued To Prevent The Disclosure of Privileged Information From Plaintiff's Immigration Attorneys**

As explained above, discovery of any relevant, non-privileged information is permissible. FRCP 26(b)(1). However, the "liberality of the discovery rules provides significant opportunity for abuse by the parties seeking discovery." *Hasbrouck v. BankAmerica Housing Services*, 187 F.R.D. 453, 455 (N.D.N.Y. 1999). In light of the broad reach of discovery, protective orders are meant to provide a safeguard for parties and other persons. *United States v. CBS, Inc.*, 666 F.2d 364, 368-369 (9th Cir. 1982). "A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending…" FRCP 26(c)(1).

Upon such a motion, "[t]he court may, for good cause, issue an order to protect a party…from annoyance embarrassment, oppression, or undue burden or expense, including one or more of the following:

(A)    forbidding the disclosure of discovery;

(B)    specifying the terms, including time and place or the allocation of expenses, for the disclosure of discovery;

(C)    prescribing a discovery method other than the one selected by the party seeking discovery; [and]

(D)    forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters…" FRCP 26(c)(1)(A)-(D).

In certain circumstances, a protective order is the appropriate remedy to cure the unauthorized disclosure of attorney-client privileged communications. *Cunningham v. Connecticut Mut. Life Ins.*, 845 F.Supp.1403, 1408 (S.D. Cal. 1994).

///

PLAINTIFF'S MOTION TO QUASH, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

To establish good cause for the issuance of a protective order, the moving party must make a clear showing of a particular and specific need for the order. *Hasbrouck*, 187 F.R.D. at 455. For example, although the scope of information that is discoverable in litigation is broad, a party's right to discovery does not allow such party to explore topics that are not germane on the hope that it might become so. *In re Fontaine*, 402 F.Supp. 1219, 1221 (E.D.N.Y. 1975). Furthermore, the attorney-client privilege and corresponding attorney work-product doctrine, protect communications between a client and an attorney, and documents and tangible things prepared by a client's counsel, respectively, from disclosure in discovery. *Lectrolarm Custom Systems, Inc. v. Pelco Sales, Inc.*, 212 F.R.D. 567, 571 (E.D. Cal., 2002); *Eastman v. Thompson*, 594 F.Supp.3d 1156, 1181 (C.D. Cal., 2022).

If such party establishes good cause for protection, the court may balance the countervailing interests to determine whether to exercise discretion and grant the order. *Hasbrouck*, 187 F.R.D. at 455. In balancing countervailing interests, the Court may look to public policy to make its determination. Here, Defendants' general right to information in discovery does not outweigh the important public policy in the belief "that the benefits derived [from the privilege] justify the risk that unjust decisions may sometimes result from the suppression of relevant evidence." *Continental Cas. Co. v. St. Paul Surplus Lines Ins. Co.*, 265 F.R.D. 510, 520 (E.D. Cal., 2010) (internal citation omitted); *see also Lectrolarm Custom Systems, Inc.*, 212 F.R.D. at 573 ("The burdensome and harassing nature of the requests clearly outweighs the minimal need for the very limited amount of information that could be discovered under the subpoenas.")

Here, TOVE has good cause for issuance of a protective order preventing Defendants from subpoenaing their immigration attorneys to obtain communications that are completely protected by the attorney-client privilege and clearly intended to annoy, embarrass, oppress or cause undue burden or expense to TOVE.

PLAINTIFF'S MOTION TO QUASH, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

**C.    Good Cause Exists to Grant TOVE's Motion**

1.    Communications Regarding The Preparation Of Danny Tracey's Visa Application Are Irrelevant To The Question Of Whether TOVE Is A Co-Owner In The NoPixel Server Source Code

The legal basis for TOVE's claim to be a co-owner in the NoPixel Server source code is simple: Mr. Tracey was a joint author thereof by virtue of his contributions to the development of the NoPixel Server, and Mr. Tracey rendered such contributions in his capacity as an employee for TOVE. 17 U.S.C. §§ 101 and 201(a); *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 741 (1989). It makes no difference whether TOVE specifically told Defendants about the arrangement, whether Defendants paid TOVE or Mr. Tracey directly, whether Mr. Tracey's employment agreement with TOVE expressly set forth the arrangement, or even whether TOVE completed immigration paperwork properly. All that matters is that Mr. Tracey was an employee of TOVE at the time he rendered services as a contractor for NoPixel, and that Defendants did not require him to sign any document that expressly granted all rights in his contributions to Defendants.

Defendants seem to believe that the evidence of Mr. Khalil's allegedly false statements "prove" that TOVE did not, in fact, loan out Mr. Tracey's services to Defendants. But such evidence does nothing of the sort, as the relevant declaration in the H-1B Application merely speaks to the *physical location* of where Mr. Tracey would render services for NoPixel (or other third parties) on TOVE's behalf. Lau Decl. at ¶ 3. Defendants alternatively claim that, if TOVE did in fact loan out Mr. Tracey's services, such evidence is relevant to show that Mr. Khalil committed perjury on the H-1B Application. But, then, such character evidence is completely irrelevant to TOVE's copyright co-ownership claim, and is inadmissible at trial.

///

///

PLAINTIFF'S MOTION TO QUASH, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

Accordingly, any evidence regarding any supposed "fraud" in immigration paperwork is irrelevant to this dispute and will never be admissible at trial under Federal Evidence Rule 403 in any event.

2.   Communications Regarding The Preparation Of Danny Tracey's Visa Application Are Protected By The Attorney Client Privilege, And The Crime-Fraud Exception Does Not Apply

As explained in detail above, the Subpoena unquestionably seeks attorney-client privileged communications between Plaintiff's principal and its immigration attorneys. Yet, Defendants' mere assertion of a "scam" or fraud on the immigration office is insufficient because Defendants have also failed to show that the alleged fraud has some foundation in fact. *See Nowell*, 223 Cal. App. 2d at 657. For example, Defendants have no evidence that that the percentage of work TOVE and Mr. Tracey believed Mr. Tracey would, and generally did, perform at the time the Application was submitted was contrary to what TOVE set forth in the Application. Nor do Defendants possess evidence showing that Mr. Tracey worked on site for NoPixel while he was employed by TOVE.

Defendant has instead chosen to hurl salacious allegations that are either false, irrelevant to the H-1B Application, or both. And, as explained above, even if such statements were true, and were relevant to Mr. Tracey's employment status, their omission does not constitute a "submission of false information."

D.   **The Balance of Interests Favors Limiting Discovery to Relevant Information**

*Even if* TOVE's communications with its immigration counsel are somehow relevant to the question of whether TOVE is a joint owner of the copyright in the source code for the NoPixel Server, the important public policy consideration of preserving the sanctity of the attorney-client relationship far outweighs any minimal value such evidence would have. As explained above, if Defendants believe that the

PLAINTIFF'S MOTION TO QUASH, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

evidence of Mr. Khalil's false statements on immigration paperwork "prove" that TOVE did not, in fact, loan out Mr. Tracey's services to Defendants, then the documents themselves are the best evidence to make that argument. Whatever value supporting evidence of TOVE's communications may provide is far outweighed by the harm that would be caused in violating TOVE's right to maintain the privilege over those communications.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, TOVE respectfully requests that that the Court quash the Subpoena, or, in the alternative, issue an order prohibiting Defendants from subpoenaing, and obtaining documents evidencing attorney-client privileged communications from, TOVE's immigration attorneys.

DATED:  August 8, 2024          **ALTVIEW LAW GROUP, LLP**


                                By:   /s/ John Begakis, Esq.
                                      JOHN M. BEGAKIS
                                      SHEENA B. TEHRANI
                                      *Attorneys for* THAT ONE VIDEO
                                      ENTERTAINMENT, LLC, a California
                                      limited liability company

11

## **DECLARATION OF JOHN BEGAKIS**

I, John Begakis, declare and state as follows:

1.      I am an attorney duly licensed to practice law in the State of California and before this Court. I am a founding partner at AltView Law Group, LLP and co-counsel for THAT ONE VIDEO ENTERTAINMENT, LLC, a California limited liability company ("TOVE" or "Plaintiff"), the Plaintiff in this action. I hereby submit this Declaration in support of TOVE's motion for an order quashing the Subpoena served upon TOVE's immigration attorneys on or about July 18, 2024 by Defendants KOIL CONTENT CREATION PTY LTD., an Australian proprietary limited company doing business as NOPIXEL ("NoPixel"), and MITCHELL CLOUT, an individual ("Clout") (collectively, "Defendants"), or, in the alternative, for an order preventing Defendants from obtaining any attorney-client privileged documents sought from such Subpoena (collectively, the "Motion"). I know all of the following facts of my own personal knowledge and, if called upon and sworn as a witness, could and would competently testify thereto.

2.      On or about April 10, 2023, our office commenced this action on behalf of TOVE. The gravamen of this dispute is over TOVE's claim to be the co-owner in certain source code contributed by TOVE's employee, Daniel Tracey, to the development of the videogame server run by Defendants (the "NoPixel Server"). Accordingly, TOVE's operative First Amended Complaint seeks declaratory relief in the form of a determination from this Court that TOVE is a joint owner in the copyright to the source code of the NoPixel Server, and is entitled to an accounting of its share of the profits generated therefrom as a co-owner.

3.      On or about July 12, 2024, Defendants' counsel, Larry Zerner, Esq., took the deposition of Jacque Khalil, an owner and the Chief Operating Officer of TOVE, as the person most knowledgeable to testify on behalf of TOVE. During the deposition, Mr. Zerner presented Mr. Khalil with immigration forms, which TOVE and Mr. Tracey had jointly submitted for Mr. Tracey to obtain a work visa due to his

employment with TOVE. After asking a series of questions about such forms, however, Mr. Zerner then accused TOVE and Mr. Tracey of committing a "scam to the immigration department." Mr. Zerner thereafter continued to threaten Mr. Khalil with committing immigration fraud, which Mr. Zerner claimed was a crime "with penalty up to ten years." A true and correct copy of the relevant portions of Mr. Khalil's deposition transcript evidencing such highly inappropriate threats is attached hereto as Exhibit "A" and incorporated herein by this reference.

4.    On or about July 15, 2024, Mr. Zerner sent me an email, wherein he demanded that TOVE "immediately dismiss" its claims because Mr. Khalil "knowingly" furnished false information, subjecting him to "up to 10 years in prison." A true and correct copy of Mr. Zerner's July 15, 2024 email correspondence to me is attached hereto as Exhibit "B" and incorporated herein by this reference.

5.    On or about July 17, 2024, I received an email from Benjamin Lau, Esq., TOVE's immigration counsel at the law firm of Jackson Lewis P.C., who forwarded me a threatening email correspondence he received from Mr. Zerner as well. In the email from Mr. Zerner to Mr. Lau, Mr. Zerner also made reference to the telephone call he made to Mr. Lau's office. A true and correct copy of Mr. Lau's email to me, wherein Mr. Zerner's email to Mr. Lau is included, is attached hereto as Exhibit "C" and incorporated herein by this reference.

6.    On or about July 19, 2024, I received an email from Mr. Zerner stating that a Subpoena seeking attorney client privileged communications between TOVE and its counsel at Jackson Lewis P.C. had been served thereon. A true and correct copy of the Subpoena as it was transmitted to me by Mr. Zerner via email on July 19, 2024 is attached hereto as Exhibit "D" and incorporated herein by this reference.

7.    On or about July 22, 2024, I emailed Mr. Zerner to request his availability to meet and confer in person pursuant to Local Rule 37-1 regarding our intention to file this Motion.

///

DECLARATION OF JOHN BEGAKIS

8.      The next day, on or about July 23, 2024, Mr. Zerner came to my office to meet and confer. During this meeting, Mr. Zerner looked me in the face and said "your client is going to jail" if he (meaning Mr. Khalil as the principal and COO of TOVE) did not withdraw TOVE's Complaint. Mr. Zerner also told me that he had zero – literally zero – experience practicing immigration law. Ahead of the meeting, Mr. Lau had provided me with responses to each of Mr. Zerner's claims regarding Mr. Khalil's supposedly "fraudulent" statements and I tried to discuss those responses in good faith with Mr. Zerner . But Mr. Zerner refused to listen, much less agree to even narrow the scope of the Subpoena. A true and correct copy of my email to Mr. Zerner memorializing the more egregious parts of our meet and confer meeting is attached hereto as Exhibit "E" and incorporated herein by this reference.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration was executed on August 8, 2024, at Los Angeles, California.

JOHN BEGAKIS

DECLARATION OF JOHN BEGAKIS

1

# **PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 9454 Wilshire Blvd, Suite 825, Beverly Hills, CA 90212.

4

5

On August 8, 2024, I served the documents described as:

6

**PLAINTIFF'S MOTION TO QUASH, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JOHN BEGAKIS IN SUPPORT THEREOF**

7

8

**DECLARATION OF BENJAMIN LAU IN SUPPORT OF PLAINTIFF'S MOTION TO QUASH, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

9

10

**DECLARATION OF DANIEL TRACEY IN SUPPORT OF PLAINTIFF'S MOTION TO QUASH, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

11

12

**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION TO QUASH, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

13

on all interested parties in this action by placing _____ the original __X_ a true copy thereof enclosed in sealed envelope(s) addressed as follows:

14

15

Larry Zerner, Esq.
MORRISON COOPER LLP
10900 Wilshire Blvd., Suite 930
Los Angeles, CA 90024
larry@morrisoncooper.com
Keith@morrisoncooper.com
Kat@morrisoncooper.com

16

17

18

19

[X]:    BY ELECTRONIC MAIL:

20

As follows: I hereby certify that I served the above-described document on the interested parties in this action by attaching an electronic copy of the document to an email addressed to the parties listed below at their most recent e-mail address of record in this action.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

21

22

23

[X]:    (FEDERAL) – I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

24

25

I declare under penalty of perjury that the foregoing is true and correct.

26

EXECUTED on August 8, 2024, in Los Angeles, California.

27

_____
John Begakis

28

PROOF OF SERVICE

# EXHIBIT "A"

1          MR. ZERNER:  No, no.  I was just talking to the

2     court reporter.  John, if you can just forward him that

3     e-mail that I sent to you yesterday, that would be great.

4          (Deposition Exhibit No. 102 was marked for

5     identification.)

6          MR. BEGAKIS:  And I didn't label them.  I'm just

7     referring to them off the e-mail originally.  Larry, which

8     one are we looking at first?

9          MR. ZERNER:  The one that's called,

10    "Immigration" document.

11         MR. BEGAKIS:  Got it.

12         THE WITNESS:  I got your e-mail and I'm looking

13    at them all right now.  "Immigration Documents," plural?

14         MR. BEGAKIS:  Yeah.  It's a 16-page document.

15    Immigration Documents 912 is the name of the file.  Take a

16    moment to familiarized yourself with it.

17         Q    (By Mr. Zerner)  If you could go to page 10 of

18    the document, it's TOVE 001076 on the bottom.

19         A    The "Labor Condition Application"?

20         Q    Yes.

21              This is a document that you provided through

22    your attorney to give to us.  Right?

23         A    Yes.

24         Q    And the document is unsigned; but is it safe to

25    say that there was a signed copy that was then submitted

                                        Page 21

```
 1    developing and streaming a little bit more, he would have

 2    other opportunities for merchandise and maybe selling

 3    other products.  We call them video game insertions or

 4    sponsorships, for lack of a better term.  And so there was

 5    an upside financially for both of us.

 6         Q    So you had a financial incentive; is that

 7    right?

 8         A    Sure.  Yeah.

 9         Q    It doesn't help your business at all -- forget

10    the money; it doesn't help your business if he's

11    developing for NoPixel.  Correct?

12              MR. BEGAKIS:  Objection.  Vague and assumes

13    facts not in evidence.

14              THE WITNESS:  I would disagree.  I think

15    notoriety is a big deal, especially in our industry.

16    People found out that he worked for us, and they knew that

17    it was related to the completionist.

18         Q    (By Mr. Zerner)  Mr. Khalil, tell me if this is

19    correct.  Danny wanted to stay in the United States; he

20    couldn't stay in the United States if he was working

21    full-time for NoPixel because NoPixel is in Australia.

22    You fronted like he was going to be the developer for

23    TOVE; in reality, that was a lie.

24              He was actually going to be the developer for

25    NoPixel and then in exchange he wanted to stay in the
```

                                                    Page 39

```
 1    United States and then you made an agreement that you
 2    would take his butch money, the money he got from
 3    streaming or subscription or sponsorship, and then you
 4    would take the first -- give back the salary that you were
 5    allegedly paying him to work for NoPixel and then you'd
 6    take 30 percent on top of that and this was all just a
 7    scam to the immigration department.  Correct?
 8              MR. BEGAKIS:  Objection.  Argumentative, calls
 9    for a legal conclusion, assumes facts not in evidence, and
10    requires -- potentially requires -- disclosure of
11    attorney-client privileged communications.
12              To the extent that you understand the question
13    in that rambling two minutes and you're capable of
14    answering without disclosing attorney-client privileged
15    communication between you and your immigration counsel,
16    please do so.
17              THE WITNESS:  First of all, I take offense to
18    the comment that we were trying to run a front or a scam.
19    Danny wanted to dedicate more time to development on
20    NoPixel.  I hired him so he could do that.  There were
21    some beneficial upside financially for both of us in order
22    for him to do that.  So Danny could not necessarily have
23    to worry about his roles or responsibilities that he had
24    to Grubhub previously, and he can dedicate full-time
25    development work, which also included him streaming and
```

Page 40

1    from time to time getting on the phone with me to geek out

2    about some technical stuff.

3            To say that we were trying to front the scam,

4    not only do I disagree with it, but I take offense to it.

5        Q    (By Mr. Zerner)  You didn't write in your letter

6    that you were going to loan him out to NoPixel and work

7    for an Australian company.  Right?

8            MR. BEGAKIS:  Objection.  The immigration

9    documents speak for themselves and to the extent that the

10   answer requires a disclosure of attorney-client

11   privileged -- argumentative.

12           To the extent the question requires a disclosure

13   of attorney-client privileged communications or the

14   information derived therefrom between you and your

15   immigration counsel, then I'm going to instruct you not to

16   answer.  If you can answer without doing so, then please

17   answer.

18           THE WITNESS:  I'll say this, I'm not aware that

19   anything we did was illegal if that's what you're trying

20   to allude to.

21       Q    (By Mr. Zerner)  Just know that making material

22   misrepresentations to the immigration office is a crime

23   with penalty up to ten years, just letting you know that.

24           MR. BEGAKIS:  Objection, Counsel.  There is no

25   question there.  And now we're going to let the court know

                                                Page 41

# EXHIBIT "B"

altView Law Group-CLP Mail - TOVE v. Koil                                                           8/1/24, 3:36 PM

 Gmail                                                    John Begakis <john@altviewlawgroup.com>

---

## TOVE v. Koil

**Larry Zerner** <Larry@zernerlaw.com>                                           Mon, Jul 15, 2024 at 2:58 PM
To: John Begakis <john@altviewlawgroup.com>
Cc: Katayoon Iravani <Kat@morrisoncooper.com>, "Keith@morrisoncooper.com" <Keith@morrisoncooper.com>

John,

I just want to follow up a little bit on our conversation this morning.

Back in 2021, Jacques filed the H1B declaration which was signed under penalty of perjury.  Not only is it filed under penalty of perjury, but the document further warned Jacque that knowingly furnishing false information in the form (or in the letter he attached) is a federal offence punishable by fines, imprisonment or both.  The penalty for submitting false information in immigration papers is up to 10 years in prison.

request during any investigation under the immigration and Nationality Act (20 CFR 655.700 and 20 CFR Subpart I).

*I declare under penalty of perjury that I have read and reviewed this application and that to the best of my knowledge, the information contained therein is true and accurate.  I understand that to knowingly furnish materially false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a federal offense punishable by fines, imprisonment, or both (18 U.S.C. 2, 1001,1546,1621).*

| 1. Last (family) name of hiring or designated official * KHALIL | 2. First (given) name of hiring or designated official * JACQUE | 3. Middle initial § |
|---|---|---|

Figure 1 TOVE 1076

In the application, Jacque was asked whether Danny would be placed with a secondary entity and his answer was "no."  A secondary entity is defined as "another entity . . . with which LCA workers will be placed during the period of certification."  (See General Instructions for the 9035 & 9035E).

a. *Place of Employment Information* 1

| 1. Enter the estimated number of workers that will perform work at this place of employment under the LCA.* | 1 |
|---|---|
| 2. Indicate whether the worker(s) subject to this LCA will be placed with a secondary entity at this place of employment. * | ☐ Yes  ☑ No |
| 3. If "Yes" to question 2, provide the legal business name of the secondary entity. § | |

altView Law Group - LPL Main - TOVE v. Koil                                                                     9/1/24, 3:36 PM

Figure 2 TOVE 1074

Then, Jacque submits a letter in which he states that Danny is being hired as TOVE's lead developer ("Mr. Farrow Tracey will be responsible for working as TOVE's lead developer . . .")  The letter gives the approximate amount of time that Danny would be working at each task and that time adds up to 100%.

Nowhere in the letter does it say that Danny is being hired to work at Koil, nor does Danny's employment agreement mention Koil.  Jacque admits that he never spoke to Mitch (or anyone at TOVE) prior to entering into this alleged loan-out agreement with Koil and that Koil paid Danny's salary directly to Danny (not to TOVE) and that, to date, Danny has not paid any of his Koil salary to TOVE.

We will be filing a motion for summary judgment, bringing up all of these undisputed facts to show that there never was any agreement between TOVE and Koil.

You can file a declaration from Jacques claiming that TOVE did loan Danny out to Koil, but in doing so, you run into at least two problems. First, is the "sham affidavit" rule which says that a party cannot create a triable issue of fact by filing an affidavit that contradicts a previous statement made under penalty of perjury.

Second, and more importantly, if Jacques were to submit a sworn declaration stating that TOVE loaned out Danny to Koil (or if he stated this on the stand during trial), he would be admitting that the statements in the H1B application were false, that he committed perjury and that he violated a number of federal statutes.  Even if TOVE could have loaned Danny out to Koil (and it didn't),  it would certainly be considered a material omission from the application not to mention that Danny would be spending the great bulk of his time working for a company in Australia.  This does not even begin to consider the fact that Danny was actually making money for TOVE by streaming, a fact that is also omitted from the application and which also would be considered a material omission.

I understand that everyone wants to win their case, but you just can't contradict sworn statements without consequences.  The consequences in this case could be that Jacques is arrested and charged with filing false immigration papers, and that Danny is thrown out of the country and never allowed to return.  I sincerely hope that you have adequately warned your clients of these (very real) possibilities if the case continues.

TOVE cannot create an issue of fact that completely depends upon contradicting an earlier sworn statement.  There is no reason for this case to proceed and I would ask that immediately dismiss it

before you put your clients in a position where they are forced to admit to committing perjury in the immigration application.

And just so there is no confusion, I want to make it clear that I am not threatening to report TOVE to Immigration if the case is not dismissed and I have no intention of contacting Immigration.  It is you who will be bringing all of this up to Judge Wilson, a former AAG who ran the division prosecuting tax fraud.  If you think that Judge Wilson will hear this testimony and not take any action against your clients,  then by all means proceed.  But you should make sure that your clients are also on board with this risk.

Larry

---

**Larry Zerner**

Law Office of Larry Zerner

**Phone**: 310-773-3623

**Email**: Larry@Zernerlaw.com

1801 Century Park East, Ste. 2400

Los Angeles, CA 90067

**www.ZernerLaw.com**

**Let's Connect!** Schedule a Time With Me Here

---

The information contained in this email and its attachments is confidential and may be the subject of legal, professional or other privilege. It is intended only for the named addressees and may not be disclosed to anyone else without consent from ZernerLaw. If you are not the named addressee you must not use, disclose, distribute, copy, print or rely on the contents of this email and should destroy it immediately. Whilst ZernerLaw takes care to protect its systems from electronic virus attack or other harmful element, the firm gives no warranty that this email message (including any attachments to it) is free of any virus or other harmful matter and accepts no responsibility for any loss or damage resulting from the recipient receiving, opening or using it. If you need further information, please contact the originator of this message on (310) 773-3623.

# EXHIBIT "C"

altView Law Group, LLP Mail - FW: That One Video Entertainment/Daniel Tracey/Preservation of Evidence                                          8/1/24, 3:43 PM

 Gmail                                                                    John Begakis <john@altviewlawgroup.com>

---

## FW: That One Video Entertainment/Daniel Tracey/Preservation of Evidence

**Lau, Benjamin C. (LA)** <Benjamin.Lau@jacksonlewis.com>                              Wed, Jul 17, 2024 at 12:34 PM
To: "Jacque Khalil (jkhalil@thatonevideogamer.com)" <jkhalil@thatonevideogamer.com>
Cc: John Begakis <john@altviewlawgroup.com>, "Nolan, John M. (Berkeley Heights)" <John.Nolan@jacksonlewis.com>

Hi Jacque,


I wanted to let you know that I received the below email from Larry Zerner this morning. Should we be properly served with a subpoena, we will respond appropriately. We have no intention of turning over any documents protected by attorney-client privilege, and will provide you with copies of any documents for your review prior to responding to any subpoena.


I am copying John Nolan, Jackson Lewis' General Counsel, on this email. I have discussed the matter with him and he is aware of the situation.


Do not hesitate to reach out if you have any questions.


Best,

Ben



    **Benjamin C. Lau**
       Attorney at Law

       **Jackson Lewis P.C.**
       725 South Figueroa Street
       Suite 2500
       Los Angeles, CA 90017
       Direct: (213) 337-3852 | Main: (213) 689-0404
       Benjamin.Lau@JacksonLewis.com | www.jacksonlewis.com

---

**From:** larry@morrisoncooper.com <larry@morrisoncooper.com>
**Sent:** Wednesday, July 17, 2024 9:12 AM
**To:** Lau, Benjamin C. (LA) <Benjamin.Lau@Jacksonlewis.com>
**Subject:** That One Video Entertainment/Daniel Tracey/Preservation of Evidence



Mr. Lau,


I am the attorney who called you on Monday. I represent Koil Content Creation Pty Ltd.  I am writing to you regarding the H1B Visa Application that you prepared for That One Video Entertainment ("TOVE") on behalf of Daniel Tracey in the fall of 2021.

Koil is currently in a lawsuit filed by TOVE, in which TOVE claims that it hired Daniel Tracey, not to work at TOVE, but to be "loaned-out" to Koil.  The lawsuit further alleges that TOVE and Koil made an agreement that TOVE would be entitled to 50% of Koil's revenue and that Koil breached the agreement by not paying TOVE.  None of this is true (my client never heard of TOVE until shortly before the lawsuit was filed), but the reason I am writing to you is that if TOVE did loan-out Tracey to work at Koil (an Australian company with no offices in the United States), then TOVE engaged in immigration fraud, and you may have unwillingly assisted it in doing so.

In the application that you prepared, Jacque Khalil, TOVE's COO, stated that TOVE was hiring Tracey to work as TOVE's lead developer.  In the application, Mr. Khalil was asked if Tracey would be placed with a secondary entity and he responded, "No."

| a. *Place of Employment Information* 1 | |
|---|---|
| 1. Enter the estimated number of workers that will perform work at this place of employment under the LCA.* | 1 |
| 2. Indicate whether the worker(s) subject to this LCA will be placed with a secondary entity at this place of employment. * | ☐ Yes  ☒ No |
| 3. If "Yes" to question 2, provide the legal business name of the secondary entity. § | |

Mr. Khalil also submitted a letter (which apparently you helped him draft) in which he states that Tracey is being hired as TOVE's lead developer ("Mr. Farrow Tracey will be responsible for working as TOVE's lead developer . . .")  The letter gives the approximate amount of time that Danny would be working at each task for TOVE and that time adds up to 100%.

Nowhere in the letter or the application does it mention that TOVE is not hiring Tracey to work for TOVE, but to actually work for Koil in Australia.

I took Mr. Khalil's deposition on Friday and he proudly admitted that the statements in the immigration application were untrue.  He claimed that Tracey was hired to work at Koil (not TOVE), and that Tracey also was required to stream himself gameplaying on Twitch and that from the revenue he (Tracey) earned from streaming, he was required to pay TOVE back the alleged developer salary of $8750 per month, plus 30% of anything over that.  Again, somehow none of this was mentioned in the letter that Mr. Khalil submitted with the visa application even though his time was pretty well documented in the letter.  I have attached a copy of the letter and application so you don't have to go digging for it.

I'm no expert in immigration law, but I'm pretty sure (and correct me if I'm wrong) that if TOVE stated in the application that 1) they were actually hiring Tracey to work for company located in Australia, and 2) that Tracey was kicking back the alleged salary he was being paid from his streaming revenue (which is what he now claims happened) that the U.S. Government would not have issued Tracey his visa.

Accordingly, the issue of what exactly Tracey was hired to do for TOVE has become a major issue in this case.  Was Tracey hired solely to work at TOVE as stated in the application and sworn under penalty of perjury by Mr. Khalil, in which case there could not be an agreement between TOVE and Koil for Tracey's services.  Or, did TOVE violate 18 U.S.C. Sec.1546, as well as other statutes by lying on the Visa application about Tracey's job duties?

In order to get to the truth, I'm going to send a subpoena to Jackson Lewis for all communications between your firm and TOVE (or Tracey) regarding the visa application.  I know that you are thinking that these documents would be protected by the attorney-client privilege, but that is incorrect.  Mr. Khalil already admitted that he used your services to commit immigration fraud.  As such, the documents are discoverable under the crime-fraud exception, which attaches when a client consults an attorney for advice that will serve him in the commission of a fraud.  UMG Recording, Inc. v. Bertelsmann AG (In re Napster Copyright Litig.), 479 F.3d 1078, 1090 (9th Cir. 2007).  It does not matter if you were not aware that TOVE intended to commit a crime for the crime-fraud exception to apply ("it is the client's knowledge and intentions that are of paramount concern to the application of the crime-fraud exception; the attorney need know nothing about the client's ongoing or planned illicit activity for the exception to apply. In re Grand Jury Proceedings (Corporation), 87 F.3d 377, 381-82 (9th Cir. 1996).

Therefore, this letter is to inform you that you must retain and preserver all communications between your firm and any employee or officer of TOVE, including, but not limited to, Jacques Khalil.

If you wish to discuss this further, I can be reached at the number below.  I'm sorry it had to come to this, but you refused to speak to me on the phone.

Larry Zerner

**Larry Zerner**

**Of Counsel**

Phone: 310-773-3623

**Morrison Cooper LLP**

10900 Wilshire Blvd, Suite 930, Los Angeles, CA 90024

https://www.morrisoncooper.com

CONFIDENTIALITY NOTICE:  This communication (including any related attachments) may contain confidential and/or privileged material.  Any unauthorized disclosure or use is prohibited.  If you received this communication in error, please contact the sender immediately, and permanently delete the communication (including any related attachments) and permanently destroy any copies.

---

**2 attachments**

 **Complaint First Amended.pdf**
262K

 **Immigration Documents 921.pdf**
3253K

# EXHIBIT "D"

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | |
|---|---|
| THAT ONE VIDEO ENTERTAINMENT, LLC | ) |
| *Plaintiff* | ) |
| v. | ) |
| KOIL CONTENT CREATION PTY LTD., et al. | ) |
| *Defendant* | ) |

Civil Action No. 2:23-cv-02687 SVW (JCx)

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                 Jackson Lewis PC

_____
*(Name of person to whom this subpoena is directed)*

❑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: 1) All communications from August 1, 2021 to December 31, 2021, between Jacques Khalil at That One Video Entertainment, LLC and Benjamin Lau at Jackson Lewis concerning or relating to the preparation of any documents to be used to obtain an H1B visa for Daniel Tracey and; 2) All communications from August 1, 2021 to December 31, 2021, between Jacques Khalil at That One Video Entertainment, LLC and Benjamin Lau at Jackson Lewis concerning or relating to the preparation of the letter dated September 20, 2021, and signed by Jacques Khalil, which discusses That One Video Entertainment, LLC's desire to hire Daniel Tracey as its lead developer (including all drafts of said letter.

| Place: Morrison Cooper 10900 Wilshire Blvd # 930, Los Angeles, CA 90024 | Date and Time: 08/9/2024 10:00 am |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    07/18/2024

CLERK OF COURT

                                            OR                    *Larry Zerner*

_____        _____
*Signature of Clerk or Deputy Clerk*            *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Koil Content Creation PTY, LTD                                            , who issues or requests this subpoena, are:

Larry Zerner, 10900 Wilshire Blvd # 930, Los Angeles, CA 90024 Larry@morrisoncooper.com 310-773-3623

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 2:23-cv-02687 SVW (JCx)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❑  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  **(A)** Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
  **(A)** When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A)** Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
  **(D)** Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  **(A)** Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT "E"

altView Law Group GLP Mail - That One Video Entertainment LLC v. Koil Content Creation PTY LTD., et al. (2:23-cv-02687-SVW-JC) - Request to Meet and Confer Pursuant to L.R. 37-1    8/1/24, 4:01 PM

  John Begakis <john@altviewlawgroup.com>

---

## That One Video Entertainment LLC v. Koil Content Creation PTY LTD., et al. (2:23-cv-02687-SVW-JC) - Request to Meet and Confer Pursuant to L.R. 37-1

---

**John Begakis** <john@altviewlawgroup.com>                                     Tue, Jul 23, 2024 at 11:45 AM
To: larry@morrisoncooper.com
Cc: Katayoon Iravani <Kat@morrisoncooper.com>, Keith@morrisoncooper.com, Sheena Tehrani <sheena@altviewlawgroup.com>, "Lau, Benjamin C. (LA)" <Benjamin.Lau@jacksonlewis.com>, "Nolan, John M. (Berkeley Heights)" <John.Nolan@jacksonlewis.com>

    Counsel:

    This email confirms that we met today in my office to satisfy both our meet and confer obligation under Local Rule 37-1, with respect to our anticipated discovery motion, and our meet and confer obligation under Local Rule 7-3, with respect to our anticipated Motion for Summary Judgment.  During our meeting you again threatened our client by stating that "your client is going to go to jail" if he does not withdraw his Complaint.  You also confirmed that our office does not need to serve a formal objection to the Subpoena so long as we file a Motion for Protective Order and/or a Motion to Quash prior to the production deadline, which is August 9, 2024 at 10:00 a.m.

    Best,
    John
    [Quoted text hidden]

---