1 | **ALTVIEW LAW GROUP, LLP**
John M. Begakis, Esq. (SBN 278681)
2 | john@altviewlawgroup.com
Sheena B. Tehrani, Esq. (SBN 326373)
3 | sheena@altviewlawgroup.com
9454 Wilshire Blvd., Suite 825
4 | Beverly Hills, California 90212
Telephone: (310) 230-5580
5 | Facsimile: (562) 275-8954

6 | *Attorneys for Plaintiff*
THAT ONE VIDEO ENTERTAINMENT, LLC, a
7 | California limited liability company

8 |

9 | **UNITED STATES DISTRICT COURT**

10 | **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11 | THAT ONE VIDEO | CASE NO: 2:23-cv-02687 SVW (JCx)
ENTERTAINMENT, LLC, a
12 | California limited liability company, | [Assigned to the Hon. Stephen V. Wilson; Ctrm 10A]
13 | Plaintiff,
vs. | **PLAINTIFF'S NOTICE OF MOTION**
14 | | **AND MOTION FOR SUMMARY**
KOIL CONTENT CREATION PTY | **ADJUDICATION; MEMORANDUM OF**
15 | LTD., an Australian proprietary | **POINTS AND AUTHORITIES IN**
limited company doing business as | **SUPPORT THEREOF**
16 | NOPIXEL; MITCHELL CLOUT, an
individual; and DOES 1-25, inclusive, | *[Declarations of Jacque Khalil, Daniel Tracey*
17 | | *William Francis, Benjamin Lau, Esq., and*
Defendants. | *John Begakis, Esq.; Separate Statement of*
18 | | *Undisputed Fact; and [Proposed] Order filed*
19 | | *concurrently herewith]*

20 | | **Hearing**
Date:  September 9, 2024
21 | | Time: 1:30 p.m.
Dept.: Courtroom 10A (10th Floor)
22 | |          350 W. First Street
23 | |          Los Angeles, CA 90012
Judge: Hon. Stephen V. Wilson

24 |

25 |

26 |

27 |

28 |

---

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on September 9, 2024 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 10A of the United States District Court, Central District of California, located at 350 W. 1st Street, the Honorable Stephen V. Wilson presiding, Plaintiff THAT ONE VIDEO ENTERTAINMENT, LLC, a California limited liability company ("TOVE" or "Plaintiff") will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure ("FRCP") 56, for summary adjudication as to Plaintiff's First Cause of Action for Declaratory Relief in the First Amended Complaint ("FAC").

This Motion is made on the grounds that TOVE is indisputably a co-owner of the copyright to the back-end source code in the game server run by Defendants KOIL CONTENT CREATION PTY LTD., an Australian proprietary limited company doing business as NOPIXEL ("NoPixel") and MITCHELL CLOUT, an individual ("Clout") (collectively, "Defendants"), by way of the significant contributions to the development thereof made by Daniel Tracey in the course and scope of his employment with TOVE.

This Motion is made following the conference of counsel that took place on July 23, 2024, as required by California Central District Local Rule ("L.R.") 7-3. Begakis Decl. at ¶ 9.

///
///
///
///
///
///
///
///
///

PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION

1    The Motion is based on this Notice of Motion, the attached Memorandum of
2   Points and Authorities, the Declarations of Jacque Khalil, Daniel Tracey, William
3   Francis, Benjamin Lau, Esq., and John Begakis, Esq. filed concurrently therewith,
4   all pleadings files, and records in this proceeding, all matters of which the Court
5   may take judicial notice, and any argument or evidence that may be presented to or
6   considered by the Court prior to its ruling.

7   DATED:  August 12, 2024                **ALTVIEW LAW GROUP, LLP**

8

9                                          By:   /s/ John M. Begakis, Esq.
10                                               JOHN M. BEGAKIS
                                                 SHEENA B. TEHRANI
11                                          *Attorneys for* THAT ONE VIDEO
                                            ENTERTAINMENT, LLC, a California
12                                          limited liability company

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................... 1

II.   UNDISPUTED MATERIAL FACTS ....................................................... 1

   A.   TOVE And Daniel Tracey ............................................................... 1

   B.   Defendants And The NoPixel Server ............................................... 2

   C.   Daniel Tracey's Work On The NoPixel Server ............................... 4

   D.   Daniel Tracey's Termination By Defendants ................................... 5

III.  PROCEDURAL HISTORY ...................................................................... 6

IV.   LEGAL STANDARD ............................................................................... 6

   A.   Summary Judgment Standard .......................................................... 6

   B.   Declaratory Relief Standard ............................................................ 7

V.    SUMMARY ADJUDICATION MUST BE GRANTED AS TO

PLAINTIFF'S FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF ....... 7

   A.   Source Code Is Subject To Copyright Protection ............................ 7

   B.   Mr. Tracey Co-Authored The Back-End Source Code On The NoPixel Server
        8

        1.   Joint Works of Authorship ..................................................... 8

        2.   Mr. Tracey Made Significant Contributions To The Development Of the
             NoPixel Server ....................................................................... 8

        3.   Mr. Tracey Exercised Control Over The Development Of The Back-End
             Source Code On The NoPixel Server .................................... 10

        4.   Mr. Tracey and Defendants Objectively Manifested A Shared Intent To Be
             Co-Authors In His Contributions .......................................... 10

        5.   Mr. Tracey Did Not Execute Any Written Agreement That Would Have
             Granted Defendants Rights In His Contributions ................. 11

   C.   Mr. Tracey Was An Employee Of TOVE And Contributed To The
        Development Of The Back-End Source Code In The Course And Scope Of Such
        Employment ................................................................................... 12

        1.   Copyright Ownership Over An Employee's Contributions ....................... 12

        2.   Mr. Tracey Provided His Contributions To The NoPixel Server Within The
             Course And Scope Of His Employment ................................ 12

        3.   The Express Language Of Mr. Tracey's Employment Agreement With
             TOVE Does Not Control The Court's Analysis ................... 14

iv

4.   Defendants' Inflammatory and Baseless Claims Of "Immigration Fraud"
Should Have No Bearing On The Court's Analysis ........................................... 14

D.   TOVE Does Not Seek A Determination Of Exclusive Ownership ............... 15

E.   TOVE Is, Therefore, A Co-Owner In The NoPixel Server And Entitled To An
Accounting Of The Profits Generated Therefrom ................................................ 15

VI.   CONCLUSION................................................................................................ 15

PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION

# TABLE OF AUTHORITIES

## CASES

*Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir. 2000) ............................................ 7, 8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................ 6

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................................................... 6

*Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) .............................. 12

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) .................... 8, 9

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542 (9th Cir. 1990) .... 7

*Integral Dev. Corp. v. Tolat*, 675 F. App'x 700 (9th Cir. 2017) .............................. 7

*Oddo v. Ries*, 743 F.2d 630 (9th Cir. 1984) ........................................................ 15

*On Davis v. The Gap, Inc.*, 246 F.3d 152 (2d Cir. 2001) ........................................ 7

*Pye v. Mitchell*, 574 F.2d 476 (9th Cir. 1978) ...................................................... 8

*Reinsdorf v. Skechers U.S.A.*, 922 F. Supp. 2d 866 (C.D. Cal. 2013) ...................... 7

*Robertson v. Burdon*, No. EDCV1800397JAKSHKX, 2019 WL 2141971 (C.D. Cal. Apr. 3, 2019) ...................................................................................................... 7

## STATUTES

17 U.S.C. § 101 ............................................................................................ 8, 12

17 U.S.C. § 201(a) ............................................................................................ 8

28 U.S.C. § 2201(a) ........................................................................................... 7

FRCP 56(a) ...................................................................................................... 6

FRCP 56(c) ...................................................................................................... 6

PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff THAT ONE VIDEO ENTERTAINMENT, LLC, a California limited liability company ("TOVE" or "Plaintiff") hereby moves the Court, pursuant to Federal Rule of Civil Procedure ("FRCP") 56, for summary adjudication as to Plaintiff's First Cause of Action for Declaratory Relief in the First Amended Complaint ("FAC"), on the grounds set forth below (the "Motion").

## I.    INTRODUCTION

It is undisputed that Daniel Tracey was employed by TOVE, and that all of the results and proceeds of his work performed in the course and scope of such employment were therefore owned by TOVE. It is also undisputed that TOVE loaned out Mr. Tracey's services to Defendant NoPixel, and that Mr. Tracey worked pursuant to such arrangement as an independent contractor without a written agreement addressing the ownership of his contributions. Accordingly, it is undisputed that TOVE owns Mr. Tracey's contributions to, and is a co-owner of, the video game server owned and operated by Defendants.

Desperate not to have to account to a co-owner for half the profits derived each year from a multi-million-dollar video game server, Defendants make several arguments that lack any merit or logic and are obviously intended solely to confuse the issues. Defendants claim they have a perpetual license to use Mr. Tracey's contributions but cannot produce any writing evidencing such license. Defendants also claim that they did not know about the loan-out arrangement for Mr. Tracey's services, but that is provably false and unnecessary to the Court's analysis anyway.

Accordingly, this Motion must be granted and a determination that TOVE is a co-owner in Defendants' video game server must be found.

## II.    UNDISPUTED MATERIAL FACTS

### A.    TOVE And Daniel Tracey

TOVE is a U.S.-based content creation and business management company. Plaintiff's Separate Statement of Undisputed Material Facts ("UMF") at ¶ 1. Daniel

1

Tracey is a talented software engineer and developer from the United Kingdom. *Id*. at ¶ 2. On or about October 14, 2021, TOVE and Mr. Tracey entered into a written employment agreement, pursuant to which TOVE agreed to pay Mr. Tracey a salary of $105,000 per year, plus bonuses, in exchange for Mr. Tracey's agreement to be employed full-time as "Lead Developer" (the "Employment Agreement"). *Id*. at ¶ 3.

TOVE and Mr. Tracey also agreed that, in such position, Mr. Tracey could be loaned out to third parties to render services as a lead developer. *Id*. at ¶ 4. Pursuant to that agreement, the Employment Agreement set forth that Mr. Tracey would be required to devote substantially all of his working time and attention to the business of TOVE and "***any other position or responsibilities***" assigned to him. *Id.* at ¶ 5 (emphasis added). The Employment Agreement also set forth that Mr. Tracey "may be required to appear on camera and create video tutorials and general media content" around his work for TOVE. *Id*. at ¶ 6.

Because Mr. Tracey was a foreign national working for TOVE in the United States, TOVE also sponsored Mr. Tracey's H-1B visa application (the "Application"). *Id*. at ¶ 8. In the Application, TOVE identified the physical location in which Mr. Tracey would be rendering services either to TOVE or to other potential third parties, and set forth an approximate percentage of time that Mr. Tracey would be spending on his various duties. *Id*. at ¶ 9. TOVE did not, however, identify in the Application to whom Mr. Tracey would be providing lead developer services because such information was not required. *Id*. at ¶ 12.

**B.    Defendants And The NoPixel Server**

Defendants operate a very successful videogame server, wherein individuals who play a heavily modified version of the "open world" videogame "Grand Theft Auto V" (the "Game") can "role-play" with others in a closed Game environment (the "NoPixel Server"). UMF at ¶ 13. Players of the Game can make significant changes to the visual aesthetics of the in-Game environment, including by changing their physical appearance, the appearance of their automobile, or the appearance of

surrounding physical structures. *Id*. at ¶ 14. Despite this unique feature of the Game, there is still a "very big difference" between a *player* making changes to the appearance of the in-Game environment, and a *developer* creating new 3D models of that environment, or other structural modifications to the Game. *Id*. at ¶ 15.

An individual aspiring to become a *player* of the Game typically starts by applying to become a "community member," which requires visiting the website <www.nopixel.net> (the "Website") and registering an account. *Id*. at ¶ 16. In order to thereafter be "whitelisted" and gain access to actually play the Game on the NoPixel Server, however, each community member must also answer questions establishing that they understand how to "role play" as a created character within the Game. *Id*. at ¶ 17. Despite this process being the primary way for players to join and play on the NoPixel Server, there are other ways individuals can join and play without going through the onboarding process described above. *Id*. at ¶ 18.

An individual aspiring to become a *developer* for the Game, on the other hand, can come from inside or outside of the NoPixel community, and applies separately through a much less formal process. *Id*. at ¶ 19. At the time Mr. Tracey applied to become a developer, Defendants also did not require developers to enter into any separate, written agreement for their services. *See id*. at ¶ 20. Since the commencement of this lawsuit, however, Defendants have changed that policy and now require all developers to execute separate, written agreements. *Id*. at ¶ 21.

When an aspiring player registers an account, they are required to accept the "Terms and Rules" set forth on the Website (the "Terms of Service"). *Id*. at ¶ 22. But those Terms of Service are merely the standard, "out of the box" terms provided by XenForo, the company Defendants used to host the Website. *Id*. at ¶ 23. The relevant language within the Terms of Service is as follows:

> The providers … .of the service provided by this website ("Service") are not responsible for any user-generated contents and accounts.
>
> …

PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION

1
2

> All content you submit, upload, or otherwise make available to the Service ("Content") may be reviewed by staff members.
> …
> You are granting us with a non-exclusive, permanent, irrevocable, unlimited license to use, publish, or re-publish your Content in connection with the Service. You retain copyright over the Content. *Id.*

3
4
5

6  Nothing in the language above, however, indicates anywhere that such Terms apply
7  to developers *and* players. *See id.* at 24.

8  ### C.    Daniel Tracey's Work On The NoPixel Server

9  On or about April 22, 2020, Mr. Tracey joined the NoPixel Server as a
10 community member, though he does not recall applying through the standard
11 application process or accepting the Terms of Service. *Id.* at ¶ 26. Thereafter, Mr.
12 Tracey applied to become a developer of the Game, and was ultimately accepted via
13 communications with Defendant NoPixel over the digital messaging platform
14 Discord. *Id.* at ¶¶ 30-31. When Mr. Tracey became a developer, however, he did not
15 execute a separate written agreement with Defendant NoPixel that addressed his
16 anticipated contributions to the NoPixel Server as a developer. *Id.* at ¶ 32.

17 Due to the commercial success of many of Mr. Tracey's contributions, on or
18 about May 10, 2021, Defendant Clout offered to formally pay Mr. Tracey to render
19 development services for the NoPixel Server. *Id.* at ¶ 33. Although initially hesitant,
20 Mr. Tracey further inquired about the opportunity a few days later, and the parties
21 ultimately agreed to $10,000 per month for his services in the role of "developer" on
22 the NoPixel Server. *Id.* at ¶ 34. On or about May 27, 2021, Defendant Clout offered
23 to memorialize the terms of this agreement with a separate written contract, but no
24 such separate contract was every prepared or executed. *Id.* at ¶ 35.

25 Then, on or about October 14, 2021, Mr. Tracey became an employee of
26 TOVE, and Mr. Tracey's arrangement with Defendant NoPixel changed. *Id.* at ¶ 36.
27 Mr. Tracey became "lead developer," and his work and responsibilities for
28 Defendant NoPixel increased to include not only developing code but also (i)

4

managing the work of other developers on the NoPixel Server and (ii) handling technical operations and infrastructure development related work of the Server, such as deploying code, fixing bugs, and generally ensuring the Server ran properly. *Id.* at ¶ 37. TOVE also began invoicing Defendant NoPixel for Mr. Tracey's services. *Id.* at ¶ 39.

During this time, Mr. Tracey created an entirely new code base for the "back-end" information management systems of the NoPixel Server, utilizing code to connect third party systems to the Server to "create" service features for the Server that included, without limitation: (1) user registration and age verification; (2) login; (3) notification management; (4) programmatic payment processing for various monetization avenues; and (5) various security features. *Id.* at ¶ 41. Mr. Tracey's contributions were so significant that when he was terminated from Defendant NoPixel, approximately eighty percent (80%) of the back-end code of the NoPixel Server was created by him.[1] *Id.* at ¶ 43. Because of his contributions, which Defendant Koil acknowledged, Defendant Koil agreed to make Mr. Tracey a 50% partner in the NoPixel Server. *Id.* at ¶ 50.

### D.    Daniel Tracey's Termination By Defendants

In or about late 2022, a personal dispute developed between Mr. Tracey and Defendant Clout over the operation of the NoPixel Server. *Id.* at ¶ 52. This dispute ultimately culminated in Defendant NoPixel allegedly terminating Mr. Tracey on or about December 27, 2022 – though Defendant Clout never informed Mr. Tracey of such termination. *Id.* at ¶ 53. Thereafter, Defendants publicly accused Mr. Tracey of causing a "data breach" to the NoPixel Server, but have never provided any evidence to support this clearly defamatory allegation. *Id.* at ¶ 54.

///

---

[1] As of May 15, 2024, Mr. Tracey's contributions still comprise approximately forty percent (40%) of the NoPixel Server's codebase. *Id.* at ¶ 46.

PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION

## III.   **PROCEDURAL HISTORY**

TOVE commenced this action on April 10, 2023. Dkt. No. 1. On or about July 7, 2023, TOVE filed its operative First Amended Complaint, which includes causes of action for Declaratory Relief, Breach of Contract, and Accounting (the "FAC"). Dkt. No. 18. The FAC's First Cause of Action for Declaratory Relief seeks a determination from the Court as to whether TOVE "possesses a claim to ownership of any and all copyrights derived from Mr. Tracey's creative contributions to the NoPixel Server, pursuant to the Copyright Act, and whether TOVE is entitled to prevent Defendants from utilizing such contributions under the guise of a 'permanent and irrevocable license' that TOVE did not grant." *Id*.

## IV.   **LEGAL STANDARD**

### A.   **Summary Judgment Standard**

A court may grant summary judgment if the moving party can show that there is no genuine dispute of material fact, and that the moving party is entitled to judgment as a matter of law. FRCP 56(c). *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Substantive law determines which facts are material, as material facts are those necessary to the proof or defense of a claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Partial summary judgment upon all or any part of a claim (i.e., summary adjudication) is appropriate where there is no genuine dispute as to any material fact regarding that portion of the claim. FRCP 56(a).

The moving party has the initial burden of establishing either the absence of a material fact, or that the nonmoving party failed to present evidence establishing an essential element of its case on which it bears the ultimate burden of proof. *Anderson*, 477 U.S. at 256; *Celotex*, at 322-23. The moving party need not support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323. Once the moving party meets its initial burden, the burden shifts to the nonmoving party to show that a genuine dispute of material fact exists. *Id.* at 324.

///

**B.  Declaratory Relief Standard**

The Declaratory Judgment Act permits this Court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Declaratory relief actions are commonly brought on behalf of plaintiffs seeking their rights in and to certain copyrighted works. *See e.g.*, *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1544–45 (9th Cir. 1990) (seeking a declaration as to expiration of licensing agreement and copyright validity); *Aalmuhammed v. Lee*, 202 F.3d 1227, 1230 (9th Cir. 2000) (seeking a declaration as to co-ownership as author of joint work); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 158 (2d Cir. 2001) (seeking a declaration as to copyright infringement). In matters addressing the question of joint authorship, a plaintiff may "seek[ ] to establish that he is the sole author of a work…or at least a co-author…so as to enjoy the benefits of copyright ownership (or co-ownership)." *Robertson v. Burdon*, No. EDCV1800397JAKSHKX, 2019 WL 2141971, at *7 (C.D. Cal. Apr. 3, 2019) (citing *Reinsdorf v. Skechers U.S.A.*, 922 F. Supp. 2d 866, 872 (C.D. Cal. 2013)) (internal citations omitted).

**V.  SUMMARY ADJUDICATION MUST BE GRANTED AS TO PLAINTIFF'S FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF**

In this case, there is no genuine issue of material fact as to TOVE's joint ownership of the NoPixel Server, as a result of Mr. Tracey's contributions thereto rendered in the course and scope of his employment with TOVE.

**A.  Source Code Is Subject To Copyright Protection**

Source code is subject to copyright protection. *Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 704 (9th Cir. 2017). Indeed, Defendants do not even deny that the back-end source code of the NoPixel Server is entitled to copyright protection. Accordingly, this Court may determine the ownership of Mr. Tracey's contributions thereto, via TOVE's First Cause of Action for Declaratory Relief.

**B.** **Mr. Tracey Co-Authored The Back-End Source Code On The NoPixel Server**

1.    Joint Works of Authorship

A joint work is created when two or more authors contribute more than a modicum of creativity in the preparation of a work, with the intention that such contributions be merged into inseparable or interdependent parts of a unitary whole. 17 U.S.C. § 101; *see also Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 346 (1991) ("The Court explained that originality requires independent creation plus a modicum of creativity…"). Joint authors are co-owners to the copyright with an equal, undivided interest in the work as a whole. 17 U.S.C. § 201(a); *Pye v. Mitchell*, 574 F.2d 476, 480 (9th Cir. 1978). In the absence of a contract, several factors "suggest themselves as among the criteria for joint authorship," such as: (1) exercising control over the work; and (2) making objective manifestations of a shared intent to be coauthors. *Aalmuhammed*, 202 F.3d at 1234. In many cases, control will be the most important factor. *Id.*

2.    Mr. Tracey Made Significant Contributions To The Development Of the NoPixel Server

As lead developer, Mr. Tracey's contributions to the back-end source code of the NoPixel Server were so significant that just prior to his termination from Defendant NoPixel, his contributions made up ***eighty percent (80%)*** of such code. UMF at ¶ 43. Defendants will argue that there were other developers involved with the development of the NoPixel Server, but it is undisputed that Mr. Tracey was the primary contributor to the creation of the back-end code. *Id.* at ¶ 44. Indeed, before the commencement of this litigation, even Defendant Clout acknowledged Mr. Tracey's "lead and critical role," via a letter that Defendant Clout submitted in support of Mr. Tracey's visa Application, and via Defendant Clout's agreement to make Mr. Tracey a 50% partner in Defendant NoPixel's business. *Id.* at ¶¶ 50-51.

///

Mr. Tracey's contributions to the back-end code were so significant and important that Defendants did not remove Mr. Tracey's code after his termination. *Id*. at ¶ 45. Defendants could have chosen to start fresh, and have their other developers recreate what Mr. Tracey built – especially if Mr. Tracey's contributions were as minor and unimportant as Defendants now argue – but Defendants chose to keep his original code and simply add to it as the Server codebase expanded. *Id.* Because of this decision, as of May 15, 2024 (i.e., more than a year after this litigation began), Mr. Tracey's contributions still made up ***forty percent (40%)*** of the back-end source code comprising the NoPixel Server. *Id.* at ¶ 46.

Defendants disingenuously attempt to minimize Mr. Tracey's contributions to the NoPixel Server by comparing them against all of the code (i.e., *both* the back-end code and game code) that comprises the Server. But TOVE has never claimed it has an interest in the game code – only the backend code, and Defendants provide no logical reason for forcing this Court compare his contributions against both sets of code to make its determination. And *even if* this Court were to take Defendants' utterly flawed argument at face value, ***0.57% amounts to more than a modicum of creativity contributed to the development of the NoPixel Server***. *Feist Publications*, 499 U.S. at 348 ("To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice.").

Defendants also try to discredit the opinion of TOVE's expert by claiming his opinions are flawed because they are based on the position that Mr. Tracey contributed to the "creation" of certain back-end systems that he did not actually create. For example, Defendants' rebuttal expert argues that the NoPixel Server utilizes an external, third-party payment processor, called Tebex, that was not built by Mr. Tracey. UMF at ¶ 48. But this argument belies a basic understanding of how video game development works today.

Modern video games, like the Game, rely on many existing, external, third-party systems to function. In order for a modern video game to use any of those

systems, however, developers must develop code that effectively connects the relevant game to such systems through application programming interfaces (or, "APIs"). *Id.* at ¶ 49. Thus, as an example, it is accurate to say that Mr. Tracey not only substantially contributed to the "creation" of the payment processing system by connecting it to the Tebex API, but that such connection was so elegantly designed that it opened up new ways for Defendant NoPixel to monetize aspects of the Game and generate more revenue. *Id.*

3.  Mr. Tracey Exercised Control Over The Development Of The Back-End Source Code On The NoPixel Server

As lead developer, Mr. Tracey exercised control over his services rendered in connection with the development of the NoPixel Server in two primary ways. ***First***, Mr. Tracey was effectively running Defendant NoPixel, and was able to carry out high level tasks if Defendant Clout was unable. Even Defendants admit that Mr. Tracey was able to "provide[ ] assistance in building in-game mechanics and approv[e] development ideas and/or bounties if [Defendant Clout] was unavailable to do so." UMF at ¶ 38. ***Second***, Mr. Tracey had the authority to delegate code-writing tasks to other developers, and was responsible for managing their work. *Id.* at ¶ 37.

4.  Mr. Tracey and Defendants Objectively Manifested A Shared Intent To Be Co-Authors In His Contributions

Defendants and Mr. Tracey manifested an intent to be co-authors in Mr. Tracey's contributions to the NoPixel Sever by virtue of their ongoing relationship that continued to evolve over the course of more than two years and culminated with Defendant Clout offering Mr. Tracey fifty percent (50%) of all revenue derived from NoPixel's operation of the NoPixel Server. During such time Defendants also allowed Mr. Tracey to play a key role in the NoPixel Server's development and operation without hardly any oversight. Moreover, Defendants allowed Mr. Tracey

PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION

host the code he developed for the NoPixel Server on his own repository. UMF at ¶ 42.

5.    <u>Mr. Tracey Did Not Execute Any Written Agreement That Would Have Granted Defendants Rights In His Contributions</u>

Defendants admit that, despite having multiple opportunities to require him to do so, Mr. Tracey never signed a written agreement conveying to Defendants his contributions to the development of the NoPixel Server. Because of this obvious oversight, Defendants must now claim that the Terms of Service to which Mr. Tracey purportedly agreed when joining the NoPixel community as a player somehow granted Defendant NoPixel a perpetual, irrevocable license in his contributions as a developer. But this argument fails for three reasons.

***First***, the agreement Mr. Tracey entered into with Defendants to render services as a lead developer was separate from any Terms of Service Mr. Tracey allegedly agreed to in connection with joining the NoPixel Server as a player. This is because Mr. Tracey purportedly agreed to the Terms of Service when he first applied to play on the NoPixel Server, which was well before he separately applied to become a developer. UMF at ¶¶ 26, 30. Even Defendant Clout admitted that the agreement he later entered into with Mr. Tracey for Mr. Tracey to receive $10,000 in exchange for his services as a developer was separate from the Terms of Service, which Defendant Clout also offered to separately put in writing (but never did).

***Second***, even if there could have been a meeting of the minds between the parties at the time Mr. Tracey agreed to the Terms of Service, regarding developer services Mr. Tracey had not yet offered to formally provide, the Terms of Service were far too vague to be enforceable. Defendants contend that they had a license in Mr. Tracey's contributions because the Terms stated that Mr. Tracey was granting "a non-exclusive, permanent, irrevocable, unlimited, license to use, publish, or re-publish your Content" – but the term "Content" is only defined as "[a]ll content you submit, upload, or otherwise make available to the Service", and the term "Service"

is vaguely defined as "the services provided by this website." Further, the "website" referenced in the definition of "Service" is just forum site hosted by Xenforo.

**Third**, it is not even clear from the record that Mr. Tracey agreed to the Terms of Service when Defendants alleged that he did, particularly given that Mr. Tracey does not remember ever agreeing to them. Defendants have produced what they claim is a screenshot evidencing Mr. Tracey's apparent agreement to the Terms of Service, but such evidence cannot be relied upon by this Court given the fact that Defendant Koil has admitted to altering other evidence in this case already. UMF at ¶ 28. Defendant Clout also testified under oath that it was impossible for anyone to join the NoPixel Server without agreeing to the Terms of Service, but that is provably false, as evidenced by the conclusion of TOVE's expert. Id. at ¶ 29.

C. **Mr. Tracey Was An Employee Of TOVE And Contributed To The Development Of The Back-End Source Code In The Course And Scope Of Such Employment**

1. Copyright Ownership Over An Employee's Contributions

A copyrightable work may be deemed a work made for hire in two situations. When the work is prepared by an employee within the scope of the employee's employment, and when the work is subject to a written agreement. 17 U.S.C. § 101; *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 741 (1989). TOVE employed Mr. Tracey in the role of lead developer and, pursuant to the language of Section 8 of Mr. Tracey's Employment Agreement, TOVE was entitled to own all of the intellectual property created during his employment. UMF at ¶¶ 3-7.

2. Mr. Tracey Provided His Contributions To The NoPixel Server Within The Course And Scope Of His Employment

As part of the terms of Mr. Tracey's employment agreed to by the parties, and as expressly set forth in the language of his Employment Agreement, TOVE was permitted to provide Mr. Tracey's lead developer services to third parties. UMF at ¶ 4. And TOVE did exactly that, permitting Mr. Tracey to work and contribute to the

development of the NoPixel Server as lead developer for Defendant NoPixel. *Id.* Accordingly, TOVE owns Mr. Tracey's contributions to the NoPixel Server rendered in the course of Mr. Tracey's employment with TOVE.

Defendants contend that TOVE cannot own Mr. Tracey's contributions because Defendants did not know about Mr. Tracey's employment with TOVE and Defendants did not speak to TOVE or expressly agree to the arrangement with TOVE. But this argument is flawed for two reasons.

***First***, Defendants ***did know*** that Mr. Tracey was working for TOVE at the time he was rendering services for Defendants both because Mr. Tracey told Defendant Clout, and because TOVE issued numerous invoices to Defendants for Mr. Tracey's services. *Id.* at ¶ 39. Defendant NoPixel also paid TOVE for Mr. Tracey's services, even though some of the payments on such invoices were also paid directly to Mr. Tracey. *Id.* at ¶ 40. Furthermore, Defendant Clout later provided a letter of support that was included in an application TOVE submitted to assist Mr. Tracey in changing the status of his work visa. *Id.* at ¶ 51.

***Second***, whether Defendant Clout directly spoke to anyone at TOVE about Mr. Tracey's employment with TOVE, or expressly agreed to any particular loan out arrangement with TOVE, has no bearing on Mr. Tracey's employment with TOVE and TOVE's ownership of all of Mr. Tracey's work product produced during the course and scope of such employment. There is no requirement under California or Federal law that a business that employs a "non-direct hire" – like Mr. Tracey in this case – must have an express written agreement with the company providing the non-direct hire's services. Defendants' knowledge of the change in the arrangement for Defendant NoPixel's compensation of Mr. Tracey's services, once Mr. Tracey became an employee of TOVE, is sufficient to establish the arrangement.

///

///

///

PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION

3.    <u>The Express Language Of Mr. Tracey's Employment Agreement With TOVE Does Not Control The Court's Analysis</u>

Defendants also argue that because the Employment Agreement didn't spell out in detail TOVE's right to loan out Mr. Tracey's services, his services for Defendants were not rendered in the course and scope of his employment for TOVE. But the Employment Agreement ***does*** expressly set forth that Mr. Tracey was required to devote substantially all of his working time to his duties as Lead Developer "***and/or any other position or responsibilities***" assigned to him by TOVE. The Employment Agreement also does not contain a "no waiver" clause, the lack of which allowed Mr. Tracey to waive any claim he, and he alone, might have had against TOVE for exceeding the scope of its authority thereunder. *Id*. at ¶ 7.

4.    <u>Defendants' Inflammatory and Baseless Claims Of "Immigration Fraud" Should Have No Bearing On The Court's Analysis</u>

Finally, Defendants will likely advance the absurd argument that Mr. Tracey's employment arrangement with TOVE is somehow invalidated because TOVE "submitted false information" on Mr. Tracey's H-1B visa Application regarding: (i) Mr. Tracey's place of employment; and (ii) the percentage of Mr. Tracey's time spent on certain work. But the question in the Application regarding whether Mr. Tracey would be placed with a secondary entity simply seeks clarity as to whether Mr. Tracey was to be placed at a worksite that was controlled by a third-party, not whether TOVE intended to loan out Mr. Tracey's services to a third-party generally. UMF at ¶ 10. The Application also accurately stated that a percentage of Mr. Tracey's job duties were spent creating "video tutorials" in the form of content streamed by Mr. Tracey on Twitch, even if such percentage was merely an approximation capable of changing over time as the circumstances of Mr. Tracey's employment with TOVE changed. *Id*. at ¶ 11.

///

///

PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION

Of course, any argument made by Defendants counsel – who has admitted to having no experience in immigration law – is nothing more than a salacious distraction that has no bearing on Mr. Tracey's employment status.

### D.    TOVE Does Not Seek A Determination Of Exclusive Ownership

In finding that TOVE is a joint owner in the NoPixel Server entitled to an accounting of all profits and losses generated therefrom, the Court should understand that TOVE does not also seek a determination that it is the sole, exclusive owner of the Server. Defendants insist that any determination regarding TOVE's First Cause of Action necessarily means that the Court will be determining whether Defendants have infringed TOVE's copyright in the Server – but that is not what TOVE seeks. To the extent that the charging allegations in the FAC suggest that TOVE also seeks a determination of its ownership in the Server to the exclusion of Defendants, TOVE hereby expressly waives any such request.

### E.    TOVE Is, Therefore, A Co-Owner In The NoPixel Server And Entitled To An Accounting Of The Profits Generated Therefrom

While one co-owner cannot be liable to another co-owner for infringement, determining ownership is essential to establishing whether a co-owner is therefore entitled to an accounting of any profits received by all other co-owners. *Oddo v. Ries*, 743 F.2d 630, 632-33 (9th Cir. 1984). TOVE has established above how it is a joint owner in the NoPixel Server by virtue of Mr. Tracey's copyrightable contributions therein, which continue to exist regardless of how many new versions of the NoPixel Server are created. Accordingly, TOVE is entitled to a full accounting of all profits generated from the NoPixel Server, in order determine what it is owed to TOVE from Defendants' exploitation thereof.

### VI.    CONCLUSION

Based on the foregoing, TOVE respectfully requests summary adjudication as to Plaintiff's First Cause of Action in its FAC for Declaratory Relief.

///

PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION

DATED:  August 12, 2024  **ALTVIEW LAW GROUP, LLP**

By:  /s/ John M. Begakis, Esq.
   JOHN M. BEGAKIS
   SHEENA B. TEHRANI
*Attorneys for* THAT ONE VIDEO
ENTERTAINMENT, LLC, a California
limited liability company

16

1

## <u>CERTIFICATE OF SERVICE</u>

2

3

I HEREBY CERTIFY that a copy of the foregoing electronically filed document has been served via a "Notice of Electronic Filing" automatically generated by the CM/ECF System and sent by e-mail to all attorneys in the case who are registered as CM/ECF users and have consented to electronic service pursuant to L.R. 5-3.3.

4

5

6

7

8

Dated: August 12, 2024                By:   /s/ John Begakis

9

John M. Begakis

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE