Larry Zerner (SBN 155473)
Morrison Cooper
10900 Wilshire, Suite 930
Los Angeles, California 90024
Telephone:  (310) 773-3623
Email: Larry@MorrisonCooper.com

Attorney for Defendants Mitchell Clout
And Koil Content Creation Pty Ltd.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THAT ONE VIDEO ENTERTAINMENT, LLC, a California limited liability company,<br><br>      Plaintiff,<br><br> v.<br><br>KOIL CONTENT CREATION PTY LTD., an Australian proprietary limited company doing business as NOPIXEL; MITCHELL CLOUT, an individual; and DOES 1-25, inclusive,<br>      Defendants. | Case No. 2:23-CV-02687 SVW (JCx)<br><br>DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Date: September 9, 2024<br>Time: 1:30 p.m.<br>Dept.: Courtroom 10A |

I. **INTRODUCTION**

Plaintiff has brought the instant motion for summary adjudication solely on the *first* cause of action for declaratory relief. The first cause of action seeks a determination as to whether Defendants possesses a license to use Mr. Tracey's contributions to the NoPixel server and/or whether Mr. Tracey's contributions to the Server constitute a "joint work" under Copyright Law.

Plaintiff's motion should be denied for the following reasons:

1. It is undisputed that Mr. Tracey granted Defendant a non-exclusive, permanent, irrevocable, unlimited license to use all of his contributions to the NoPixel server.

2. There was never an intention by Defendant or by Mr. Tracey for his contributions to the NoPixel server to be considered as a "joint work."

3. TOVE did not "loan-out" Mr. Tracey to work for Defendant.

   a. Mr. Tracey was working for Defendant for over a year before Mr. Tracey began working for TOVE.
   b. TOVE is not in the business of loaning-out employees.
   c. Defendant never asked TOVE to loan Mr. Tracey to it.
   d. Defendant never spoke to TOVE about a loan-out arrangement.
   e. Defendant never spoke to Mr. Tracey about a loan-out arrangement.
   f. There are no written loan-out agreements.
   g. There are no documents of any kind expressing any intention to loan Mr. Tracey to Defendant.
   h. At all times, Defendant paid Mr. Tracey directly into his personal PayPal account.
   i. Mr. Tracey never paid any of the salary he received from Defendant to TOVE.
   j. Defendant never paid any money to TOVE. There were two $5,000 payments mistakenly made to Mr. Tracey's TOVE account and they were both immediately refunded. Mr. Tracey acknowledged that these were sent by mistake.
   k. When TOVE applied for an H-1B visa for Mr. Tracey, Jacques Khalil (TOVE's COO) stated, under penalty of perjury, that Mr. Tracey would be employed full time to work solely at TOVE.

4. Mr. Tracey's contributions to the NoPixel server constitute, at most, 0.57% of the total code, which is a de minimus amount.

5. Defendant never offered to give Mr. Tracey 50% of all of the revenue from the NoPixel server.

6. Even assuming, *arguendo,* that Defendant had agreed to give Mr. Tracey 50% of the NoPixel revenue, Defendant never ever agreed to give *TOVE* 50% of the NoPixel revenue as Defendant never had any communication with TOVE.

For all of these reasons, the motion should be denied.

## II. IT IS UNDISPUTED THAT MR. TRACEY GRANTED DEFENDANT A PERMANENT, IRREVOCABLE LICENSE TO USE HIS CONTENT

In 2020, Danny Tracey acquired an account on the NoPixel server. UMF 26. At the time he signed up, he was required to (and did) agree to the NoPixel terms of service. UMF 58.

Under the terms of service that were in place in 2020, and remained in place throughout Mr. Tracey's tenure, Mr. Tracey agreed that he was granting Koil a "non-exclusive, permanent, irrevocable, unlimited license to use, publish, or re-publish" Content in connection with the Service, but that Mr. Tracey would retain copyright over the Content. "Content" is defined in the terms of service as "**All** content you submit, upload, or otherwise make available to the Service." UMF 55-56.

The Terms of Service further states that Defendant may "remove or modify any Content submitted at any time, with or without cause, with or without notice." UMF 57.

As it is undisputed that Mr. Tracey agreed to the terms of service at the time he joined the service, that should be the beginning and end of the analysis. There is a clear and unambiguous statement from Mr. Clout that Mr. Tracey agreed to the terms of service as well as corroborating evidence confirming this fact. See, Ex. 2 to Clout

Decl. UMF 58. Plaintiff does not present any evidence to create a question of fact as to this issue. Mr. Tracey admits that he joined the NoPixel server in early 2020, and doesn't deny that he agreed to the terms and conditions. UMF 26-27. His statement that he doesn't recall whether he applied through the standard process does not create a question of fact in light of the unrebutted evidence showing that he did. Notably, Mr. Tracey did not state that he recalls signing up some way other than the normal way, or that Mr. Clout or some other developer let him in through some "backdoor."

Plaintiff's argument that the terms of service don't apply to Mr. Tracey because the terms don't say that it applies to players and developers is a nonsensical argument. The terms unambiguously state that they apply to "ALL content you submit, upload, or otherwise make available to the Service . . ." (Emphasis added). The code at issue is without a doubt, content that Mr. Tracey uploaded and made available to the Service. There is no meaningful distinction between players and developers during the signup process, Defendant is letting all of them know what the terms of service are. Moreover, nowhere in Mr. Tracey's declaration does he say that he was confused or ever thought that the terms of service didn't apply to him.

If the court agrees that the evidence proves Mr. Tracey agreed to the terms of service, then that should be the end of the inquiry. A license from Mr. Tracey gives Defendant the right to continue to use his contributions without any further payment to Mr. Tracey or TOVE. Further, as discussed, *infra*, this fact should be dispositive on the issue of whether the parties had objective manifestations on whether to create a joint work.

Even if the Court simply determines that there is a question of fact as to whether the license was granted, that will also necessarily mean that Plaintiff's motion should be denied, because in order to prevail, Plaintiff must show, "[T]hat there is no genuine dispute as to any material fact . . ." Fed. R. Civ. P. 56(a). A dispute about a material fact is "genuine" only if there is a sufficient evidentiary

basis on which a "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

At the summary judgment stage, the court's function is not to weigh the evidence or determine the truth of the matter but, rather, to determine whether there is any genuine issue for trial. *Anderson*, 477 U.S. at 249; *Balint v. Carson City,* 180 F.3d 1047, 1054 (9th Cir. 1999) (en banc).

### III. PLAINTIFF HAS PRESENTED NO EVIDENCE THAT THE PARTIES INTENTED TO CREATE A JOINT WORK

Plaintiff argues that it is entitled to receive an accounting because the NoPixel code constitutes a "joint work" owned by both TOVE and Defendant. However, the evidence is clear and undeniable that neither party considered Mr. Tracey to be "joint author" of the code to the NoPixel server.

"A joint work is a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. §101.

In order for TOVE to be considered as a Joint Author, it is not enough, as Plaintiff appears to argue, that Mr. Tracey may have contributed copyrightable expression to the NoPixel codebase, TOVE must prove that it should be considered to be a Joint Author. The leading case regarding this issue is *Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir, 2000). The Aalmuhammed case dealt with the Spike Lee movie, *Malcolm X*. Warner Brothers contracted with Lee and his production company to make the movie *Malcolm X*. Lee co-wrote, directed and co-produced the movie, which starred Denzel Washington. *Id*. at 1229.

Washington asked Aalmuhammed for his assistance because he knew a great deal about Malcolm X and Islam. *Id.* Aalmuhammed came to the set and worked

extensively on the movie, including suggesting extensive script revisions. *Id.* at 1230.

Aalmuhammed never had a written contract with Warner Brothers, or Lee, but ultimately received a check for $25,000 from Lee (which he cashed) and a check for $100,000 from Washington (which he did not cash). *Id.* He eventually filed a complaint against, *inter alia*, Lee, his production companies and Warner Brothers, claiming, in pertinent part, that the movie was a "joint work" of which he was an author and a co-owner of the copyright. As in the present case, he sought an accounting and a declaratory judgment of co-ownership. Aalmuhammed did not just claim copyright in what he wrote or contributed, but in the entire movie as co-author of a "joint work." *Id.*

The district court granted Defendant's summary judgment motion, on the grounds that Plaintiff's lawsuit was barred by the applicable statute of limitations. On appeal, the 9th Circuit held that there was a genuine issue of fact as to whether the claim was time-barred so then turned to the question of whether Aalmuhammed should be considered the author of a joint work. *Id.* at 1231.

The Court held that in the absence of a contract, the court should look at the following three factors to determine whether the Plaintiff should be considered an "author." "First, an author superintends the work by exercising control . . . *Id.* Second, putative coauthors make objective manifestations of a shared intent to be coauthors, as by denoting the authorship of The Pirates of Penzance as 'Gilbert and Sullivan.' . . . Third, the audience appeal of the work turns on both contributions and 'the share of each in its success cannot be appraised.' Control in many cases will be the most important factor. . . **The best objective manifestation of a shared intent, of course, is a contract saying that the parties intend to be or not to be co-authors."** *Id* at 1234-35 (Emphasis added).

Applying the three factor test set forth above, it is apparent that Mr. Tracey does not qualify as a "joint author" of the NoPixel server.

### A. The NoPixel server is controlled by Mitch Clout and NoPixel.

Defendant has run the NoPixel server since 2016. UMF 60. The company is owned and controlled by Mitch Clout. UMF 59. Mr. Tracey was one of dozens of contributors to the NoPixel server. UMF 61. All of these people are overseen by Mr. Clout who is solely responsible for overseeing and coordinating the work and content submissions and has the final say over all changes and additions to the code on the NoPixel server. UMF 62. While Mr. Tracey did aid in building in-game mechanics and reviewing development ideas, that in no way made Mr. Tracey the "lead" developer or anything other than one of many contributors. *UMF 64*. Mr. Tracey, at best, contributed less than one percent of the total code of the server. UMF 47. Furthermore, when a dispute arose between Mr. Tracey and Mr. Clout, his relationship with Koil and the NoPixel server was terminated, something that could not happen if he actually shared joint control over the work. Mr. Tracey lacked control over the work and "absence of control is strong evidence of the absence of co-ownership." *Id.* at 1235. Accordingly, the first factor weighs strongly in Defendant's favor.

### B. There Are No Objective Manifestations Of A Shared Intent To Be Considered As Co-Authors.

With regards to the second factor, not only are the no objective manifestations of a shared intent to be considered co-authors, all of the evidence shows that the parties did <u>not</u> intend that they be considered co-authors. As the court stated in Aalmuhammed, "The best objective manifestation of a shared intent . . . is a contract saying that the parties intend to be or not to be co-authors." *Id*. Here, there is a contract. It is the terms of service, discussed *supra,* which state that Mr. Tracey will retain copyright ownership of all of his contributions to the NoPixel server, but that

- 7 –    OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION

he is granting Defendant a license to use the contribution. There could not be a clearer manifestation of an intent <u>not</u> to create a joint work. Even if the Court believes that there is a question of fact as to whether Mr. Tracey agreed to the terms of service, the terms are a clear and objective manifestation of Defendant's intent and alone are a reason to deny the instant motion.

Second, Mr. Tracey was never credited as a co-author anywhere. UMF 68. Accordingly, if Mr. Tracey (or TOVE) was considered to be a joint author, they would be able to produce some evidence that they received such credit. The fact that they were unable to produce even a scintilla of evidence of credit, further undercuts their claim.

Finally, when Mr. Tracey was asked during his deposition who owned the copyright to his contribution, he stated that *he* owned the copyright to the work he created prior to working for TOVE and that *TOVE* owned the copyright to his contributions created after he started working with TOVE, including all of the code that allowed NoPixel to accept payments. UMF No. 69-70. Tracey Depo 46:20-47:9. 202:1-20

This is another objective manifestation that there was no intent to create a joint authorship, because if Mr. Tracey believed that he was a joint author of the code with Defendant, then he would have said that. By admitting that he solely owned the code that he wrote (or that TOVE owned the code that he wrote while employed by TOVE), Mr. Tracey has taken away any possible argument that there was a shared intention to be co-authors. Both Defendant and Mr. Tracey agree that he or TOVE owns the code that he wrote.

If someone were to ask Gilbert and Sullivan who owns the copyright to *The Pirates of Penzance*, they would certainly answer "we both do." If someone were to ask Rogers and Hammerstein the same question about *Oklahoma*, they would certainly say the same thing. So, when Mr. Tracey states that he or TOVE owns the

copyright to his code, not that this was a joint work, in which both TOVE and Koil own the copyright, that is the end of the analysis. Both Plaintiff and Defendant agree that the code written by Mr. Tracey is owned either by Mr. Tracey or TOVE. Neither party claims that this was a joint work.

It is further notable that despite the fact that Plaintiff submitted declarations from both Mr. Tracey and Mr. Khalil in support of the present motion, in neither of those declarations did either gentlemen make any claim to be a "joint author" of the code or present any evidence of joint authorship. Plaintiff is apparently under the mistaken impression that simply by presenting evidence that Mr. Tracey made a contribution of copyright material to the NoPixel server then the server becomes a "joint work." But the *Aalmuhammed* case definitively states that is not enough. In order to establish a "joint work," Plaintiff must show that he is an "author" and "authorship is not same thing as making a valuable and copyrightable contribution." *Aalmuhammed* at 1232.

As there is no objective manifestation of a shared intent to be considered to be co-authors, Plaintiff's motion must be denied.

### C. The Audience Appeal Of The Work Turns On Both Contributions And The Share Of Each In Its Success Cannot Be Appraised.'

With regard to the final factor, again there is no question that Mr. Tracey's contributions to the NoPixel server were *de minimus*. His contributions to the more than 6 million lines of code, were at best, 0.57% of the total code. UMF 46-47. To be considered a coauthor, a person must make more than a de minimis contribution to a work. *Corbello v. DeVito*, 832 F. Supp. 2d 1231, 1242 (D. Nev. 2011) (Citing Nimmer on Copyright §6.07). Moreover, his contributions were not to the creative part of the NoPixel server, but were merely code that allowed the NoPixel API to interact with the Tebex payment platform. UMF 49. While it is necessary that Defendant be able to get paid, that is not why customers come to NoPixel. They

come to play the game, something that Mr. Tracey made no contributions to. An analogy to Mr. Tracey's argument would be if the person who created the code that allowed Netflix to take credit cards, then claimed that they were the co-author of the thousands of hours of movies and television series that they had nothing to do with.

People do not come to and use the NoPixel services because of Mr. Tracey's services, and as such the third factor also weighs strongly in Defendant's favor. To be considered a coauthor, a person must make more than a de minimis contribution to a work.

As all three factors set forth in *Aalmuhammed* weigh strongly in Defendant's favor, the court should find that Mr. Tracey was not an "author" as defined by the Copyright Act, and therefore the motion should be denied.

### IV. THERE WAS NEVER A LOAN-OUT AGREEMENT FOR MR. TRACEY'S SERVICES

Plaintiff claims that it owns the copyright to Mr. Tracey's work done for Defendant because it "loaned-out" Mr. Tracey to work for Defendant. But this is untrue. This is just a story that TOVE and Mr. Tracey came up with to create a claim against Defendant. There is zero evidence supporting this claim.

Mr. Tracey began working for Defendant in 2020 and in May 2021, Defendant began to pay Mr. Tracey $10,000 per month for his developer services. UMF 33-34, 73. However, Mr. Tracey wanted to remain in the United States, so he contacted TOVE to see if it would sponsor his visa. Defendant, being an Australian company, did not care where Mr. Tracey worked. Mr. Tracey had the ability to make additional money by streaming on the Twitch network. So, Mr. Tracey entered into an illegal arrangement with TOVE, where TOVE would sponsor Mr. Tracey's H1B visa, falsely claiming that it was necessary to hire a non-immigrant foreigner to do this work, and in exchange, Mr. Tracey would pay TOVE out of his streaming income his

alleged salary of $8,750 per month plus 30% of everything he made in addition to the $8750.  UMF 77.

TOVE is not an employment agency and had never before hired an employee to go work for another company. UMF No. 76 No one at TOVE ever spoke with Mitch Clout or anyone at Koil about loaning Mr. Tracey out to them.  UMF No.72.  Mr. Tracey was already employed by Koil and there was no need for him to be loaned out.  UMF 73.  All of Defendant's salary was paid to Mr. Tracey's personal PayPal account both before and after Mr. Tracey was supposedly "employed" by TOVE.   UMF 73.

What Plaintiff is alleging, is that there was a loan-out agreement for Mr. Tracey's services, despite the fact that Mr. Tracey was already employed full time by Defendant, Defendant never agreed to a loan-out arrangement, or was even told that such an arrangement existed, and Defendant continued to pay Mr. Tracey his salary directly to him after the alleged loan-out agreement took place.

### A. THE H-1B VISA

The H-1B visa program allows employers to temporarily employ foreign workers in the U.S. on a nonimmigrant basis in specialty occupations or as fashion models. Only 65,000 H-1B visas are issued each year.[1]

In preparing the H-1B visa application, Jacques Khalil stated, under penalty of perjury, that he was hiring Mr. Tracey to work full-time as TOVE's developer.  UMF No. 8-9. Mr. Khalil submitted a letter with the application that stated that Mr. Tracey was being hired as the lead designer for TOVE.  UMF No. 11.  The letter sets out the percentage of time that Mr. Tracey will be spending doing his tasks for TOVE.  UMF No. 11  Nowhere in the letter or the application does it state that Mr. Tracey will be spending all or any part of his work day doing work for Koil.  UMF No. 11.

---

[1] Source Department of Labor at https://www.dol.gov/agencies/eta/foreign-labor/programs/h-1b

This would appear to be obvious. There would be no reason to obtain a H-1B Visa to have a U.K. citizen work for a company in Australia; and if TOVE had stated that Mr. Tracey was actually going to be working for Koil in Australia, the visa application would certainly have been denied.

Mr. Khalil's sworn statement, made to the Department of Labor in 2021, that TOVE was hiring Mr. Tracey to work as TOVE's lead developer (not Koil's) is binding on TOVE and TOVE cannot create an issue of fact by putting forth an affidavit that contradicts his previous sworn testimony. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009).

Finally, it should be noted that Mr. Khalil is extremely vague about the details of this so-called "loan-out agreement." The only mention of this agreement is set forth is in Paragraph 5 of his declaration, which states:

> "5. Once Mr. Tracey became an employee, Plaintiff began invoicing Defendant NoPixel for Mr. Tracey's services under the loan-out arrangement, and some of the amounts set forth on those invoices were initially paid to Plaintiff."

Mr. Khalil does not present any details of what this alleged arrangement was, how it was arrived at, when it was entered into, or who agreed to the arrangement. Of course, this is because no such arrangement existed. But considering so much of Plaintiff's motion is based on this alleged arrangement, the absence of any details is further evidence that it did not exist.

The fact that there was no loan-out agreement is significant in that while TOVE may have hired Mr. Tracey to work for TOVE, no part of his job duties for TOVE were to work for Koil. Koil never spoke with TOVE, and didn't need TOVE to provide Mr. Tracey as a loan-out (as Mr. Tracey was already employed by Koil). There are zero documents, or communications that discuss the loan-out, not just between Koil and TOVE, or Koil and Mr. Tracey, but significantly there are no

documents between TOVE and Mr. Tracey in which they discuss in any way this alleged loan-out agreement. This story about a loan-out appears to be something that was just concocted between TOVE and Mr. Tracey after he was terminated by Koil as a way to harass Defendants.

As there is no evidence that this loan-out agreement existed, even if there was a question of fact as to whether Mr. Tracey is a joint author, such authorship does not apply to TOVE.

## V. CONCLUSION

Mr. Tracey is not the John Lennon to Koil's Paul McCartney, the Bernie Taupin to Koil's Elton John, or the Hal David to Koil's Burt Bacharach. He is one of dozens of developers who contributed to the NoPixel server and his contributions make up, at best, 0.57% of the total code, a minuscule amount. The idea that his tiny contribution should allow him or TOVE to be considered a "joint author" is without merit. There is zero evidence that the parties intended for the server to be considered a "joint work." Instead, all of the evidence shows that there never was such an intention.

Plaintiff respectfully requests that the court not only deny Plaintiff's motion, but that the court holds that it is undisputed that there was no joint work and dismiss Plaintiff's first cause of action outright as there is no remaining triable question of fact regarding this matter.

Date: August 19, 2024                MORRISON COOPER

By: /s/Larry Zerner
    Larry Zerner
    Attorney for Defendants