**MORRISON COOPER LLP**
LARRY ZERNER, ESQ. (155473)
10900 Wilshire, Suite 930
Los Angeles, CA 90024
Tel: (310) 773-3623
Email: Larry@MorrisonCooper.com

*Attorney for Defendants*,
Mitchell Clout and Koil Content Creation Pty Ltd.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THAT ONE VIDEO ENTERTAINMENT, LLC, a California limited liability company<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>KOIL CONTENT CREATION PTY LTD., an Australian proprietary limited company doing business as NOPIXEL; MITCHELL CLOUT, an individual; and DOES 1-25, inclusive,<br>　　　　　　Defendants. | Case No.:  2:23-CV-02687 SVW (JCx)<br><br>**DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION**<br><br>**Hearing**<br>Date:  September 9, 2024<br>Time: 1:30 p.m.<br>Dept.: Courtroom 10A (10th Floor) 350 W. First Street Los Angeles, CA<br>Judge: Hon. Stephen V. Wilson |

| TOVE's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 1. TOVE is a U.S.-based content creation and business management company.<br><br>Declaration of John Begakis ("Begakis Decl.") at ¶ 8, Exhibit "F" thereto, Deposition of Person Most Knowledgeable for That One Video Entertainment, LLC ("TOVE PMK Depo") at 9:23-10:23; Declaration of Jacque Khalil ("Khalil Decl.") at ¶ 2. | 1. Undisputed. |
| 2. Daniel Tracey is a talented software engineer and developer from the United Kingdom.<br><br>Begakis Decl. at ¶ 7, Exhibit "E" thereto, Deposition of Daniel Tracey ("Tracey Depo") 14:12-13; 99:4-8; Declaration of Danny Tracey ("Tracey Decl.") at ¶ 2. | 2. Undisputed that Daniel Tracey is a software engineer and developer from the United Kingdom. Disputed that he is "talented."<br><br>Supporting evidence: Declaration of Mitchel Clout ("Clout Decl.") at ¶26. |
| 3. On or about October 14, 2021, TOVE and Mr. Tracey entered into a written employment agreement, pursuant to which TOVE agreed to pay Mr. Tracey a salary of $105,000 per year, plus bonuses, in exchange for Mr. Tracey's agreement to be employed full-time as "Lead Developer" (the "Employment Agreement").<br><br>Begakis Decl. at ¶ 4, Exhibit "B" thereto, Plaintiff's First Set of Document Production (TOVE000001-TOVE000004); Khalil Decl. at ¶ 3. | 3. Undisputed. |
| 4. TOVE and Mr. Tracey also agreed that, in his position, Mr. Tracey could be loaned out to | 4. Disputed: The alleged written "employment agreement" does not include any express provision for TOVE to loan out |

| **TOVE's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| third parties to render services as a lead developer.<br><br>Khalil Decl. at ¶ 3; Tracey Decl. at ¶ 6. | Tracey's services to any third parties.<br><br>Declaration of Larry Zerner ("Zerner Decl.") at ¶3, Exhibit "1" thereto, Plaintiff's First Set of Document Production (TOVE000001-TOVE000004). |
| 5. Pursuant to that agreement, the Employment Agreement set forth that Mr. Tracey would be required to devote substantially all of his working time and attention to the business of TOVE and "any other position or responsibilities" assigned to him.<br><br>Begakis Decl. at ¶ 4, Exhibit "B" thereto, Plaintiff's First Set of Document Production (TOVE000001-TOVE000004). | 5. Disputed: The alleged written "employment agreement" does not include any express provision for TOVE to loan out Tracey's services to any third parties as lead developer or otherwise.<br><br>Declaration of Larry Zerner ("Zerner Decl.") at ¶3, Exhibit "1" thereto, Plaintiff's First Set of Document Production (TOVE000001-TOVE000004) |
| 6. Mr. Tracey's Employment Agreement also set forth that he "may be required to appear on camera and create video tutorials and general media content" around his work for TOVE.<br><br>Begakis Decl. at ¶ 4, Exhibit "B" thereto, Plaintiff's First Set of Document Production (TOVE000001-TOVE000004). | 6. Undisputed. |
| 7. Additionally, Mr. Tracey's Employment Agreement does | 7. Objection: The meaning and nature of a "no waiver" clause is undefined, vague and |

| **TOVE's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| not contain a "no waiver" clause.<br><br>Begakis Decl. at ¶ 4, Exhibit "B" thereto, Plaintiff's First Set of Document Production (TOVE000001-TOVE000004). | ambiguous.<br><br>Objection: Relevance. The existence or absence of a "no waiver" clause is irrelevant to the determination of whether (a) there was any agreement between No Pixel and TOVE for TOVE to loan out Tracey's services to No Pixel; and (b) there was any joint authorship agreement between any of the parties hereto.<br><br>This assertion is DISPUTED on the grounds there was never any loan out agreement between NoPixel and TOVE, nor was there any joint authorship agreement.<br><br>Clout Decl. at ¶21. |
| 8. Because Mr. Tracey was a foreign national working for TOVE in the United States, TOVE also sponsored Mr. Tracey's H-1B visa application (the "Application").<br><br>Khalil Decl. at ¶ 4; Tracey Decl. at ¶8. | 8. Undisputed. |
| 9. In the Application, TOVE identified the physical location in which Mr. Tracey would be rendering services either to TOVE or to other potential third parties, and set forth an approximate percentage of time | 9. Disputed. The Application states that Mr. Tracey will be spending 100% of his time working as lead developer for TOVE. The application does not say that Mr. Tracey will be working for Defendant (an |

| **TOVE's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| that Mr. Tracey would be spending on his various duties.<br><br>Khalil Decl. at ¶ 4; Tracey Decl. at ¶ 8. | Australian company) because the government would not have granted the Visa if that information was included in the application. |
| 10. The Application addressed whether Mr. Tracey would be placed with a secondary entity, and sought clarity from TOVE as to whether Mr. Tracey were to be placed at a worksite that was controlled by a third-party, not whether the work completed by Mr. Tracey in his job was for a third-party.<br><br>Declaration of Benjamin Lau ("Lau Decl.") at ¶ 2. | 10.  Disputed. The Application requires the applicant to truthfully state who the applicant will be working for. |
| 11. A letter prepared by TOVE and included with the Application also accurately stated that a percentage of Mr. Tracey's job duties, which was estimated to be approximately 10% of his time, would be spent creating "video tutorials" in the form of content streamed by Mr. Tracey on Twitch.<br><br>Khalil Decl. at ¶ 4; Tracey Decl. at ¶ 8; Lau Decl. at ¶ 3. | 11.  Undisputed that the letter said that however, it is unlikely that the government would consider someone streaming themselves playing video games on Twitch to be a specialty occupation requiring the employment of a non-immigrant foreign worker. |
| 12. TOVE did not identify in the Application other third parties to whom Mr. Tracey would be providing lead developer services because such information was not required. | 12.  Disputed. Mr. Lau gives no legal basis for his opinion.  It is hard to believe that the government would grant an H-1B Visa if they knew that TOVE actually intended to |

| **TOVE's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| Lau Decl. at ¶ 4. | have Mr. Tracey work full time for an Australian company who Mr. Tracey was already working for. |
| 13. Defendants operate a very successful videogame server, wherein individuals who play a heavily modified version of the "open world" videogame "Grand Theft Auto V" (the "Game") can "role-play" with others in a closed Game environment (the "NoPixel Server").<br><br>Begakis Decl. at ¶ 6, Exhibit "D" thereto, Deposition of Mitchell Clout as the Person Most Knowledgeable for NoPixel ("NoPixel PMK Depo") at 22:10-15 and 104:20-105:2. | 13. Undisputed. |
| 14. Players of the Game can make significant changes to the visual aesthetics of the in-Game environment, including by changing their physical appearance, the appearance of their automobile, or the appearance of surrounding physical structures.<br><br>Begakis Decl. at ¶ 6, Exhibit "D" thereto, NoPixel PMK Depo at 96:17-25, 97:5-21, and 98:17-25. | 14. Undisputed. |
| 15. Despite this unique feature of the Game, there is still a "very big difference" between a player making changes to the | 15. Undisputed. |

| **TOVE's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| appearance of the in-Game environment, and a developer creating new 3D models of that environment, or other structural modifications to the Game.<br><br>Begakis Decl. at ¶ 6, Exhibit "D" thereto, NoPixel PMK Depo at 100:13-23. | |
| 16. An individual aspiring to become a player of the Game typically starts by applying to become a "community member," which requires visiting the website <www.nopixel.net> (the "Website") and registering an account.<br><br>Begakis Decl. at ¶ 6, Exhibit "D" thereto, NoPixel PMK Depo at 47:16-21, 48:1-49:2, 50:7-8, 50:16-23, 58:9-24. | 16. Undisputed. |
| 17. In order to thereafter be "whitelisted" and actually gain access to play on the NoPixel Server, however, each community member must also answer questions establishing that they understand how to "role play" as a created character within the Game.<br><br>Begakis Decl. at ¶ 6, Exhibit "D" thereto, NoPixel PMK Depo at 47:16-21, 48:1-49:2, 50:7-8, 50:16-23, 58:9-24 | 17. Undisputed. |

| **TOVE's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| 18. Despite this process being the primary way for players to join and play on the NoPixel Server, there are other ways individuals can join and play without going through the onboarding process.<br><br>Declaration of Plaintiff's Expert William J. Francis ("Francis Decl.") at ¶ 15. | 18. Objection: Speculation. This "fact" is speculative and based on conjecture and assumptions rather than facts. The cited testimony (Francis Declaration, Paragraph 15) simply opines "it is *possible*…to join and play on the NoPixel Server" without having to register for an account and accept the terms of service (emphasis added). "Possibilities" are not facts.<br><br>This contention is DISPUTED on the ground that Mr. Francis admitted that his opinion was solely based on his analysis of the code as it exists today and he made no analysis of the code as it existed in 2020 to see if it was possible then and admitted that could change the analysis.<br><br>Francis Depo 41:22-42:4 |
| 19. An individual aspiring to become a developer for the Game, on the other hand, can come from inside or outside of the NoPixel community, and applies separately through a much less formal process.<br><br>Begakis Decl. at ¶ 6, Exhibit "D" thereto, NoPixel PMK Depo at 52:19-53:3, 65:10-16, 66:7-10. | 19. Undisputed that an individual aspiring to become a developer for the Game can come from inside or outside of the NoPixel community. Undisputed that there is a separate application process.<br><br>Disputed that the process is "much less formal", or that said process replaces or supersedes the application of the terms of |

| **TOVE's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | service whereby _all_ content creators grant a license to No Pixel to use the created content.<br><br>Clout Decl. at ¶6 |
| 20. At the time Mr. Tracey applied to become a developer, Defendants also did not require developers to enter into any separate, written agreement for their services.<br><br>Begakis Decl. at ¶ 6, Exhibit "D" thereto, NoPixel PMK Depo at 65:22-25. | 20. Undisputed. |
| 21. Since the commencement of this lawsuit, Defendants have changed that policy and now require all developers to execute separate, written agreements.<br><br>Begakis Decl. at ¶ 6, Exhibit "D" thereto, NoPixel PMK Depo at 68:10-17, 68:22-23. | 21. Objection: Relevance. Any subsequent change in policy that requires developers to execute separate, written agreements is irrelevant to the determination of the terms of services granting a license to NoPixel, copyright ownership, joint ownership or any agreement to loan out Tracey's services to NoPixel.<br><br>This is otherwise undisputed. |
| 22. When an aspiring player registers an account, they are required to accept the "Terms and Rules" set forth on the Website (the "Terms of Service").<br><br>Begakis Decl. at ¶ 6, Exhibit "D" thereto, NoPixel PMK Depo at 52:6- | 22. Undisputed. |

| **TOVE's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| 18, 55:21-56:4, 58:9-20, 66:22-67:7, and 69:21-25. | |
| 23. However, those Terms of Service are nothing more than the standard, "out of the box" terms provided by XenForo, a company providing website forum software that Defendants used to host the Website.<br><br>Begakis Decl. at ¶ 6, Exhibit "D" thereto, NoPixel PMK Depo, Exhibit "6" thereto. | 23. Objection: Relevance and legal conclusion. Vague and ambiguous as to "out of the box terms." Whether the terms are standard or "out of the box", and who may have written them, is irrelevant to their application to content providers and website users. If the terms are valid it is irrelevant who created them.<br><br>Disputed. The subject Terms of Service, whether "out of the box" or otherwise, applied to _all_ content creators.<br><br>Clout Decl. at ¶10 |
| 24. Nothing in the language of the Terms of Service indicates anywhere that such Terms apply to developers and players.<br><br>Begakis Decl. at ¶ 6, Exhibit "D" thereto, NoPixel PMK Depo, Exhibit "6" thereto. | 24. Disputed. The terms expressly state they apply to _all_ content provided by users and there is no express or applicable exclusion for "developers" from said terms.<br><br>Clout Decl. at ¶10. |
| 25. Before ever joining the NoPixel Server as a community member, Mr. Tracey desired to, and did, make contributions to the NoPixel Server code as a developer.<br><br>Begakis Decl. at ¶ 7, Exhibit "E" thereto, Tracey Depo. at 43:6-10. | 25. Undisputed. |

| TOVE's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 26. On or about April 22, 2020, Mr. Tracey apparently joined the NoPixel Server as a community member.<br><br>Begakis Decl. at ¶ 6, Exhibit "D" thereto, NoPixel PMK Depo, Exhibit "8" thereto; Tracey Decl. at ¶ 3. | 26. Undisputed. |
| 27. Mr. Tracey does not recall applying through the standard onboarding process and accepting the Terms of Service.<br><br>Begakis Decl. at ¶ 7, Exhibit "E" thereto, Tracey Depo at 39:22-24; Tracey Decl. at ¶¶ 3-4. | 27. Undisputed. |
| 28. Defendants have produced what they claim is a screenshot evidencing Mr. Tracey's apparent agreement to the Terms of Service, but such evidence cannot be trusted given the fact that Defendant Koil has admitted to altering other evidence in this case already.<br><br>Begakis Decl. at ¶ 5, Exhibit "C" thereto, Defendants' Document Production (MC0106-MC0109) | 28. Disputed. NoPixel does not "claim" the referenced evidence is a screenshot evidencing Tracey's agreement. The screenshot does, in fact, evidence Tracey's agreement.<br><br>Disputed that the evidence "cannot be trusted."<br><br>Objection: Speculation. Plaintiff's contention here that the "evidence cannot be trusted" is *not a fact*. It is a speculative assertion that is improper to include in a Statement of Facts and can only be determined by the Court after hearing evidence, examination and cross. |

| TOVE's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Clout Decl. at ¶9. Exh. 2 thereto. |
| 29. Defendant Clout also testified under oath that it was impossible for anyone to join the NoPixel Server without agreeing to the Terms of Service, but that is provably false, as evidenced by the conclusion of TOVE's expert.<br><br>Begakis Decl. at ¶ 6, Exhibit "D" thereto, NoPixel PMK Depo at 52:6-18, 55:21-56:4, 58:9-20, 66:22-67:7, and 69:21-25. | 29. Undisputed as to Clout's testimony.<br><br>Objection: Speculation. Plaintiff's contention that the testimony is "provably false" is based on the *opinion* of Plaintiff's expert. In fact, *Plaintiff's contention here expressly creates a material issue of fact, which is required to be determined by the Court at trial after weighing the credibility of the witnesses following direct and cross-examinations.*<br><br>Disputed. TOVE's expert (William Francis) stated that his conclusion was based upon his analysis of the current code, not the code that existed in 2020 when Mr. Tracey signed up and that if he had made his analysis based on the 2020 code it certainly could change his opinion.<br><br>It is DISPUTED on that basis.<br><br>Kitchen Decl. at ¶72. Zerner Decl. ¶4 And Exhibit 2 thereto (Francis Depo p. 41:22-42:4. ) |

| **TOVE's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| 30. After jointing, Mr. Tracey formally applied to become a developer of the Game.<br><br>Begakis Decl. at ¶ 6, Exhibit "D" thereto, NoPixel PMK Depo at 115:16- 24, Exhibit "9" thereto. | 30. Undisputed. |
| 31. Although his first apparent attempt to apply was apparently rejected by Defendant NoPixel, Mr. Tracey was ultimately accepted via communications with a developer for Defendant NoPixel over the digital messaging platform Discord.<br><br>Begakis Decl. at ¶ 6, Exhibit "D" thereto, NoPixel PMK Depo at 115:15- 24, 116:7-117:19, Exhibit "9" thereto; Tracey Decl. at ¶ 4. | 31. Undisputed. |
| 32. When Mr. Tracey became a developer, he did not execute any separate written agreement with Defendant NoPixel that addressed his anticipated contributions to the NoPixel Server as a developer.<br><br>Begakis Decl. at ¶ 6, Exhibit "D" thereto, NoPixel PMK Depo at 117:20- 118:23; Tracey Decl. at ¶ 4. | 32. Undisputed. |
| 33. Due to the commercial success of many of Mr. Tracey's contributions, on or about May 10, 2021, Defendant Clout offered to formally pay Mr. | 33. Undisputed that Clout offered to formally pay Tracey to render development services on the NoPixel Server. |

| **TOVE's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| Tracey to render development services on the NoPixel Server.<br><br>Begakis Decl. at ¶ 6, Exhibit "D" thereto, NoPixel PMK Depo, Exhibit "10" thereto; Tracey Decl. at ¶ 5. | DISPUTED that this was "due to the commercial success of many of Mr. Tracey's contributions" insofar as Tracey was one of many developers, *including Defendants*, that contributed to the success of the game.<br><br>Clout Decl. at ¶13, 14, 16, 17. |
| 34. Although initially hesitant, Mr. Tracey further inquired about the opportunity a few days later, and the parties ultimately agreed to $10,000 per month for his services in the role of "developer" on the NoPixel Server.<br><br>Begakis Decl. at ¶ 6, Exhibit "D" thereto, NoPixel PMK Depo 134:7-13, Exhibit "11" thereto; Tracey Decl. at ¶ 5. | 34. Undisputed. |
| 35. On or about May 27, 2021, Defendant Clout offered to memorialize the terms of this agreement with a separate written contract, but no such separate contract was ever prepared or executed.<br><br>Begakis Decl. at ¶ 6, Exhibit "D" thereto, NoPixel PMK Depo 131:22-132:21, Exhibit "12" thereto; Tracey Decl. at ¶ 5. | 35. Undisputed. |
| 36. Then, on or about October 14, 2021, Mr. Tracey became an employee of TOVE, and Mr. | 36. Disputed. Tracey's arrangement with NoPixel never changed on or after that date. |

| **TOVE's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| Tracey's arrangement with Defendant NoPixel changed.<br><br>Tracey Decl. at ¶¶ 6-7. | Clout Decl. at ¶21, |
| 37. Mr. Tracey became "lead developer", and his work and responsibilities for Defendant NoPixel increased to include not only developing code but also (i) managing the work of other developers on the NoPixel Server and (ii) handling technical operations and infrastructure development related work of the Server, such as deploying code, fixing bugs, and generally ensuring the Server ran properly.<br><br>Begakis Decl. at ¶ 7, Exhibit "E" thereto, Tracey Depo at 64:23-65:11; Tracey Decl. at ¶ 9. | 37. Disputed.<br><br>Mr. Tracey was not the "lead developer," nor was he responsible for managing the work of other developers or handling technical operations and infrastructure development. He did deploy code, fix bugs, and assist in ensuring the server ran properly, and he ran the infrastructure side of the development (but not development of the game). All of Mr. Tracey's work was ultimately subject to the direction of Koil, who remained responsible for coordinating, overseeing and ultimately implementing the contributions made by the dozens of deployed developers. While it is true that Mr. Tracey did aid in building in-game mechanics and reviewing development ideas, that in no way made Mr. Tracey the "lead" developer or anything other than one of many contributors.<br><br>Clout Decl. at ¶16 |
| 38. In such role, Mr. Tracey had the freedom to "provide[ ] assistance in building in-game mechanics and approv[e] | 38. Disputed. At all times, *Defendants* retained control over development ideas and game |

| **TOVE's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| development ideas and/or bounties if [Defendant Clout] was unavailable to do so." <br><br> Begakis Decl. at ¶ 3, Exhibit "A" thereto, Defendant Supplemental Interrogatory Responses, No. 2. | mechanics, all of which were subject to NoPixel's approval. <br><br> Clout Decl. at ¶14-15. |
| 39. TOVE also began invoicing Defendant NoPixel for Mr. Tracey's services. <br><br> Begakis Decl. at ¶ 6, Exhibit "D" thereto, NoPixel PMK Depo; Exhibit "13" thereto; Khalil Decl. at ¶ 5; Tracey Decl. at ¶ 7. | 39. Disputed. At no time did TOVE ever invoice NoPixel for Tracey's services. At all times only Tracey invoiced NoPixel for Tracey's services. There was never any contact or communication between TOVE and NoPixel. Payment of all invoices was made directly to Tracey, not TOVE. <br><br> Clout Decl. at ¶22-23. |
| 40. Defendant NoPixel initially paid TOVE for some of TOVE's invoices , and the remainder of them were paid to Mr. Tracey. <br><br> Begakis Decl. at ¶ 7, Exhibit "E" thereto, Tracey Depo 165:7-17; Khalil Decl. at ¶ 5; Tracey Decl. at ¶ 7. | 40. Disputed. All invoices were paid directly to Tracey. At one point Tracey submitted what purported to be "TOVE" invoices; however, Tracey also immediately informed NoPixel those were submitted *by mistake* and said invoices were replaced by Tracey invoices and paid to Tracey directly. <br><br> Clout Decl. at ¶22-23. |
| 41. During this time, Mr. Tracey created an entirely new code base for the "back-end" information management systems of the NoPixel Server, utilizing code to connect third party systems to the Server to | 41. Disputed. <br><br> Not only was Tracey's Backend Code not complete, but in fact, it was only just getting started. The only code that was functional and usable by NoPixel was Tracey's |

| **TOVE's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| "create" service features for the Server that included, without limitation: (1) user registration and age verification; (2) login; (3) notification management; (4) programmatic payment processing for various monetization avenues; and (5) various security features.<br><br>Begakis Decl. at ¶ 6, Exhibit "D" thereto, NoPixel PMK Depo, Exhibit "16" thereto; Begakis Decl. at ¶ 7, Exhibit "E" thereto, Tracey Depo at 201:14-202:7; Tracey Decl. at ¶ 9. | own personal code. Tracey did not design and build the payment processing system utilized by NoPixel. Tracey's backend code did not provide significant functionality related to the monetization, security and user management necessary to run the game. Nor did Tracey's backend code provide anywhere close to all the claimed services utilized by NoPixel. As of February, 2022 the code was incomplete nor did it perform as claimed by Plaintiff. Tracey did not build a Payment Processing System for NoPixel or anywhere close to the entire payment processing system utilized by NoPixel. Rather, it was built by a 3rd party payment processing solution (Tebex), which has used by NoPixel since approximately June of 2021, well before Tracey's alleged contributions even started.<br><br>The Tebex payment platform was first deployed by NoPixel in June of 2021 and it was installed by a *different developer* (Nikez), with first payments being processed on June 4, 2021. Tebex is still the payment processing service used by NoPixel.<br><br>Additionally, Plaintiff fails to identify any files, functions or |

| **TOVE's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | other code Tracey allegedly developed. On the other hand, as a full-service system for online game monetization, including transactional, financial, and site/content management tools, Tebex's NoPixel deployment provides virtually all the functionality claimed by Plaintiff. Further, Tracey did not provide the means for the players to pay to play, or a means for the business and operations of the game to run.<br><br>Tibex also provided the storefront and game server, product and solutions functionality, including the shopping cart (login, purchases, registration, internationalization), and control panel (auditing, sales results, monitoring, deployment).<br><br>Lastly, the claims set forth by Plaintiff in this statement, are demonstrably false, based on an examination of the code were all incomplete as of February 2022. There is no way that Tracey's backend code performs as claimed.<br><br>Kitchen Decl. at ¶42-51. |
| 42. Mr. Tracey hosted the code he developed for the NoPixel Server on his own repository. | 42. Disputed.<br><br>Tracey set up his own personal repository to store backend code |

| **TOVE's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| Francis Decl. at ¶ 10. | that was *in development*, not "developed." As of February 2022, not only was Tracey's backend code incomplete (even referred to by Tracey as "code he was developing" but also as of February of 2022, his own testimony was that he was just getting started on it and "seemed to be increasing his contributions." At this time he was just "setting up his own personal repository" to store the backend code he was developing.<br><br>Kitchen Decl. at ¶36 |
| 43. When Mr. Tracey was terminated from Defendant NoPixel, approximately eighty percent (80%) of the back-end code of NoPixel Server was created by him.<br><br>Francis Decl. at ¶ 11. | 43. Objection: Misleading. Plaintiff's calculation is based only on small portion of the code, not the entire code database utilized by NoPixel<br><br>This claim is, therefore, DISPUTED. The entire contribution of Tracey's code for the entire NoPixel project is *0.57%*, which is based on the proper calculation (not the misleading and out-of-context calculation provided by Plaintiff). In fact, using *Plaintiff's* calculation methodology to calculate the total percentage of attribution results in a total contribution percentage for Tracey's code when compared to the entire NoPixel project (i.e. not |

| **TOVE's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | solely Tracey's repository) of *0.57%*.<br><br>Kitchen Decl. at ¶63. |
| 44. Mr. Tracey was also the primary contributor to the back-end source code of the NoPixel Server.<br><br>Francis Decl. at ¶ 13. | 44. Disputed.<br><br>As set forth above, not only was Tracey's backend code incomplete, it was only in early development. Most was not functional. Tracey also did not design and build the payment processing system, nor did Tracey's contribution provide any significant functionality or the claimed services utilized by NoPixel. Here, Plaintiff fails to identify any files, functions or other code Tracey allegedly developed.<br><br>The entire contribution of Tracey's code for the entire NoPixel project is *0.57%*.<br><br>Kitchen Decl. at ¶48, 63.<br>Clout Decl. at ¶14. |
| 45. Defendants did not remove Mr. Tracey's contributions after his termination. Instead, Defendants chose to keep his original code and simply add to it as the NoPixel Server codebase expanded.<br><br>Francis Decl. at ¶ 11. | 45. Undisputed that Defendants are still using a minuscule amount of Mr. Tracey's code. |

| **TOVE's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| 46. Because of Defendants decision not to remove Mr. Tracey's contributions, as of May 15, 2024, Mr. Tracey's contributions still made up forty percent (40%) of the back-end source code comprising the NoPixel Server.<br><br>Francis Decl. at ¶ 11. | 46. Disputed.<br><br>As set forth above, not only was Tracey's backend code incomplete, it was only in early development. Most was not functional. Tracey also did not design and build the payment processing system, nor did Tracey's contribution provide any significant functionality or the claimed services utilized by NoPixel. Here, Plaintiff fails to identify any files, functions or other code Tracey allegedly developed.<br><br>The entire contribution of Tracey's code for the entire NoPixel project is _0.57%_.<br><br>Kitchen Decl. at ¶48, 63. |
| 47. Defendants' rebuttal expert compares Mr. Tracey's contributions to both the back-end source code and all of the game code that comprises the NoPixel Server, to find that Mr. Tracey's services actually amount to 0.57% of the NoPixel Server.<br><br>Francis Decl. at ¶ 12. | 47. Undisputed. |
| 48. Defendants' rebuttal expert also contends that Plaintiff's expert's determination of the back-end systems Mr. Tracey contributed to the creation of is flawed | 48. Undisputed. |

| **TOVE's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| because Mr. Tracey did not actually create those back-end systems. For example, Defendants' rebuttal expert spends a significant amount of his report explaining that the NoPixel Server utilizes an already established third party payment processor, called Tebex, that was not built by Mr. Tracey.<br><br>Francis Decl. at ¶ 14. | |
| 49. However, modern video games like the Game rely on many external, third-party systems to function. But in order for games to use these systems, developers must develop code that effectively connects the game to such systems through application programming interfaces (or, "APIs"). Thus, Mr. Tracey not only substantially contributed to the "creation" of the payment processing system by connecting it to the Tebex API, but such connection was so elegantly designed that it opened up new ways for Defendant NoPixel to monetize aspects of the Game, which resulted in commercial success to Defendants. | 49. Undisputed that modern video games rely on many external, third-party systems to function; and that to function, developers must develop code that effectively connects the game to such systems through application programming interfaces (or, "APIs").<br><br>Disputed that Tracey "substantially contributed" to the creation of the payment processing system or No Pixels ability to monetize the game.<br><br>As set forth above, not only was Tracey's code incomplete, but Tracey did not design and build the payment processing system utilized by NoPixel; nor did it provide any significant functionality related to the monetization, security and user management necessary to run the |

| **TOVE's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| Begakis Decl. at ¶ 7, Exhibit "E" thereto, Tracey Depo at 201:14-202:7; Tracey Decl. at ¶ 9; Francis Decl. at ¶ 14. | game. The processing system utilized by NoPixel was built by a 3rd party payment processing solution (Tebex), which has used by NoPixel since approximately June of 2021, well before Tracey's alleged contributions even started. The Tebex payment platform was first deployed by NoPixel in June of 2021 and it was installed by a *different developer* (Nikez), with first payments being processed on June 4, 2021. Tebex is still the payment processing service used by NoPixel. <br><br> Tebex's NoPixel deployment provides virtually all the functionality claimed by Plaintiff, including the storefront and game server, product and solutions functionality, including the shopping cart (login, purchases, registration, internationalization), and control panel (auditing, sales results, monitoring, deployment). <br><br> Tracey's overall contribution to the game and NoPixel servers was *0.57%*. <br><br> Kitchen Decl. at ¶42-51. |
| 50. Because of his contributions, Defendant Koil agreed to make Mr. Tracey a 50% partner in the NoPixel Server. | 50. Objection: Vague, ambiguous and misleading. The alleged "No Pixel Server" has not been defined and is comprised of many servers, |

| TOVE's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Begakis Decl. at ¶ 7, Exhibit "E" thereto, Tracey Depo at 55:4-21; Tracey Decl. at ¶ 10. | most of which were not touched by Tracey.<br><br>Disputed. At no time did Koil agree to make Tracey a "50% partner in the NoPixel Server."<br><br>Clout Decl. at ¶25. |
| 51. Defendant Koil also acknowledged Mr. Tracey's contributions, via a letter of support included in an application TOVE submitted to assist Mr. Tracey in changing the status of his work visa, by stating that he played a "lead and critical role" in the development of the NoPixel Server, and that, among other contributions, "Mr. Tracey is the mastermind behind NoPixel's heist system…".<br><br>Begakis Decl. at ¶ 6, Exhibit "D" thereto, NoPixel PMK Depo, Exhibit "16" thereto. | 51. Undisputed. |
| 52. In or about late 2022, a personal dispute developed between Mr. Tracey and Defendant Clout over the operation of the NoPixel Server.<br><br>Begakis Decl. at ¶ 6, Exhibit "D" thereto, NoPixel PMK Depo at 153:25- 154:13; Tracey Decl. at ¶ 11. | 52. Undisputed. |
| 53. This dispute ultimately culminated in Defendant | 53. Objection. Relevance. The reason for Tracey's termination |

| **TOVE's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| NoPixel allegedly terminating Mr. Tracey on or about December 27, 2022 – though Defendant Clout never informed Mr. Tracey of such termination.<br><br>Begakis Decl. at ¶ 6, Exhibit "D" thereto, NoPixel PMK Depo at 159:16- 24; Begakis Decl. at ¶ 7, Exhibit "E" thereto, Tracey Depo at 171:23-172:2; Tracey Decl. at ¶ 11. | and whether he was informed of it or not is irrelevant to the determination of whether (a) No Pixel and TOVE agreed to TOVE loaning out Tracey's services to No Pixel or (b) there was any joint authorship of the subject matter of this dispute, which is the basis of Plaintiff's Motion.<br><br>Notwithstanding the foregoing, it is undisputed that Tracey was terminated. Disputed that Tracey was "allegedly" terminated, or that Tracey was not made aware he had been terminated. |
| 54. Thereafter, Defendants publicly accused Mr. Tracey of causing a "data breach" to the NoPixel Server, but have never provided any evidence to support this clearly defamatory allegation.<br><br>Begakis Decl. at ¶ 7, Exhibit "E" thereto, Tracey Depo at 172:20-25; Tracey Decl. at ¶ 12. | 54. Objection. Relevance and misleading. Both the data breach and baseless "defamation" claims are irrelevant to the determination of whether (a) No Pixel and TOVE agreed to TOVE loaning out Tracey's services to No Pixel or (b) there was any joint authorship of the subject matter of this dispute, which is the basis of Plaintiff's Motion.<br><br>Further, alleging "defamation" here – without any evidence whatsoever to support such a claim - is inappropriate and inapplicable to this motion and is clearly intended to influence this court. It is, therefore, misleading. |

| TOVE's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Notwithstanding the foregoing, it is undisputed that Tracey was accused of causing a data breach.<br><br>It is disputed that NoPixel failed to provide evidence of said data breach or that the data breach claim is "defamatory." |

### ADDITIONAL UNDISPUTED FACTS

| | |
|---|---|
| | 55.  The NoPixel Terms of Service defines "Content" as "All content that you submit, upload, or otherwise make available to the Service.<br><br>Begakis Decl. Exhibit D.  Clout Decl. Ex. 1. |
| | 56.  The NoPixel Terms of Service states, "You are granting us with a non-exclusive, permanent, irrevocable, unlimited license to use, publish, or re-publish your Content in connection with the Service. You retain copyright over the Content."<br><br>Begakis Decl. Exhibit D. Clout Decl. Ex. 1. |
| | 57.  The NoPixel Terms of Service allows NoPixel to, "remove or modify any Content submitted at any time, with or without cause, with or without notice. |

| | |
|---|---|
| | Begakis Decl. Exhibit D. Clout Decl. Ex. 1. |
| | 58.  On April 22, 2020, at the time he joined the NoPixel server, Danny Tracey agreed and accepted the NoPixel Terms of Service.<br><br>Clout Decl. ¶9 and Exhibit 2 thereto. |
| | 59.  Koil Content Creation is solely owned by Mitch Clout<br><br>Clout Decl. ¶3. |
| | 60.  Koil has run the NoPixel server since 2016.<br><br>Clout Decl.  ¶ 4. |
| | 61. Danny Tracey is one of dozens of people who have contributed code to the NoPixel server.<br><br>Clout Decl. ¶14. |
| | 62. Mitch Clout and Koil were responsible for overseeing and coordinating the work and content submissions and Clout has the final decision over all changes and additions to the code on the NoPixel server.<br><br>Clout Decl. ¶14-15. |
| | 63. Clout is the sole owner of Koil, and has always been and continues to be the person who supervises and is responsible for what is put on the NoPixel server and Mr. Tracey never had any final say over the additions or changes to the code to the NoPixel Server.<br><br>Clout Decl. ¶15. |

| | |
|---|---|
| | 64. Mitch Clout never considered Mr. Tracey to be a "joint author" of the NoPixel Server and while Mr. Tracey did aid in building in-game mechanics and reviewing development ideas, that in no way made Mr. Tracey the "lead" developer or anything other than one of many contributors<br><br>Clout Decl. ¶11, 16. |
| | 65. Mr. Clout never told Mr. Tracey that Koil would pay Mr. Tracey 50% of the revenue earned from the NoPixel Server.<br><br>Clout Decl. ¶21. |
| | 66. Mr. Tracey requested and Koil agreed to pay Mr. Tracey 50% of the revenue received from four of the NoPixel servers: The White Priority Server, the India Server, the Spain Server and the South America Server.  This was confirmed in a Discord message from Mr. Tracey to Mr. Clout<br><br>Clout Decl. ¶25. |
| | 67. Mr. Clout never told Mr. Tracey that he considered him to be a joint author of the code.<br><br>Clout Decl. ¶11 |
| | 68. Mr. Tracey was never credited as a joint author of the NoPixel server code.<br><br>Clout Decl. ¶19 |
| | 69. Mr. Tracey stated that in his opinion, he owned the copyright to |

| | |
|---|---|
| | the code that he created before working for Tove.<br><br>Tracey Depo. 46:20-47:9 |
| | 70. Mr. Tracey stated that, in his opinion, TOVE owned the copyright to the code that he created after beginning work for TOVE.<br><br>Tracey Depo. 201:1-20. |
| | 71. Players come to the NoPixel server to play Grand Theft Auto. No part of Koil's success is because of the code that Mr. Tracey wrote.<br><br>Clout Decl. ¶24. |
| | 72. Koil never entered into a loan-out agreement with TOVE, and never even knew about TOVE's involvement with Mr. Tracey until the claims in this case were made.<br><br>Clout Decl. ¶21. Khalil Depo. 20:15-18. |
| | 73. Koil began paying Mr. Tracey $10,000 per month in salary beginning in May of 2021. These payments were all made to Mr. Tracey's personal PayPal account (D@nny.co).<br><br>Clout Decl. ¶22-23. |
| | 74. There were no changes to Mr. Tracey's job title or duties after his purported employment by TOVE.<br><br>Clout Decl. |

| | |
|---|---|
| | 75. All of Mr. Tracey's salary for working on the NoPixel server was paid to his personal email account.<br><br>Clout Decl. ¶22. |
| | 76. Tove is not an employment agency and had never before hired an employee to go work for another company.<br><br>Zerner Decl. ¶2 and Exhibit 1 thereto (Khalil Depo. p16:19-24.) |
| | 77. TOVE required Mr. Tracey to pay TOVE back his $8,750 in alleged salary plus 30% of everything over that.  Zerner Decl. ¶2 and Exhibit 3 thereto (Khalil Depo. p.32:2-12, p.62:23-63:16) |

DATED:  August 19, 2024          **MORRISON COOPER LLP**

By:/s/ Larry Zerner
      Larry Zerner,
*Attorneys for Defendant,*
KOIL CONTENT CREATION
PTY LTD., an Australian
proprietary limited company