Larry Zerner (SBN 155473)
Morrison Cooper
10900 Wilshire, Suite 930
Los Angeles, California 90024
Telephone: (310) 773-3623
Email: Larry@MorrisonCooper.com

Attorney for Defendants Mitchell Clout
And Koil Content Creation Pty Ltd.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THAT ONE VIDEO ENTERTAINMENT, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>KOIL CONTENT CREATION PTY LTD., an Australian proprietary limited company doing business as NOPIXEL; MITCHELL CLOUT, an individual; and DOES 1-25, inclusive,<br><br>Defendants. | Case No. 2:23-CV-02687 SVW (JCx)<br><br>[Assigned to the Hon. Stephen V. Wilson; Ctrm 10A]<br><br>**DEFENDANTS NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*[Declarations of Mitchell Clout, Garry Kitchen and Larry Zerner, Esq.; Separate Statement of Undisputed Fact; and [Proposed] Order filed concurrently herewith]*<br><br>**<u>Hearing</u>**<br>Date: October 21, 2024<br>Time: 1:30 p.m.<br>Dept.: Courtroom 10A (10th Floor)<br>350 W. First Street<br>Los Angeles, CA 90012<br>Judge: Hon. Stephen V. Wilson |

- 1 –

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on October 21, 2024 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 10A of the United States District Court, Central District of California, located at 350 W. 1st Street, the Honorable Stephen V. Wilson presiding, Defendants Mitchell Clout And Koil Content Creation Pty Ltd. will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure ("FRCP") 56, for summary judgment or partial summary judgment as to Plaintiff's First Amended Complaint and each cause of actions set forth therein. This Motion is made on the grounds that: (1) There is no dispute that Plaintiff (or its allege employee Tracey) owns the copyrighted materials that is the subject of this dispute and granted Defendants a license to use it; (2) There was no contract between Plaintiff and Defendants, and therefore there was no breach; and (3) There is no "joint ownership" of the subject copyrighted material and, therefore, there is no basis for an accounting.

This Motion is made following the conference of counsel that took place on 18 July 23, 2024, as required by California Central District Local Rule ("L.R.") 7-3. Zerner Decl. at ¶7.

The Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declarations of Mitchell Clout, Garry Kitchen and Larry Zerner, Esq. filed concurrently therewith, all pleadings files, and records in this

///

///

///

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

proceeding, all matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

DATED:  September 19, 2024

MORRISON COOPER

By: /s/Larry Zerner

Larry Zerner Attorney for KOIL

CONTENT CREATION PTY LTD.,

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

Introduction .................................................................................................. 6

I.    Procedural History .................................................................................. 6

II.   Summary Of Argument In Support Of Summary Judgment ................... 7

III.  Statement Of Facts ................................................................................. 8

IV.  Argument ............................................................................................... 14

   a.   Plaintiff's First Cause Of Action For Declaratory Relief ............... 15
      (i)   Copyright Ownership And Exclusive License ......................... 15
      (i)   All Monies Generated From The Exploitation Of The Copyrighted Material 17
      (i)   Permanent And Irrevocable License To Continue Exploiting The Copyrighted Material. ......................................................... 21

   b.   Plaintiff's Second Cause Action For Breach Of Contract ............... 22

   c.   Plaintiff's Third Cause Of Action For Accounting ........................ 25

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1

## <u>TABLE OF AUTHORITIES</u>

2

3   ## <u>CASES</u>

4   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 .............................................14

5   *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. (1986) 14

6   *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009)..............16

7   *Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir, 2000) ...................................18

8   *Childress v. Taylor,* 945 F.2d 500, 508 (2nd Cir. 1991) ...............................20

9   *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009)..............24

10

11

12   ## <u>STATUTES</u>

13   Fed. R. Civ. P. 56(a).........................................................................................14

14   17 U.S.C. §101 .................................................................................................17

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

Plaintiff That One Video Entertainment ("TOVE") has brought the present action for declaratory relief and breach of contract against Defendants despite the fact that it is undisputed that Plaintiff and Defendants have never spoken with each other, never communicated in any way, and never agreed to be either "joint authors" or "partners."

As it is undisputed that there was no contractual relationship between Plaintiff and Defendants and it is undisputed that any code that Daniel Tracey contributed to Defendant's server was not considered to be a "joint work," Plaintiff cannot prevail on any of its causes of actions and the motion for summary judgment should be granted.

## I.    PROCEDURAL HISTORY

On July 7, 2023, Plaintiff ("TOVE") filed its First Amended Complaint ("FAC") asserting three causes of action against Defendants KOIL CONTENT CREATION PTY LTD., dba NOPIXEL ("Koil") and MITCHELL CLOUT ("Clout"). The three causes of action are: (1) Declaratory Relief; (2) Breach of Contract; and (3) Accounting. Specifically, Plaintiff claims:

1.  It is entitled to a declaration concerning the "parties' respective rights in and to any and all copyrights derived from Daniel Tracey's ("Tracey") creative contributions to the NoPixel Server and all monies generated from the exploitation thereof".

2.  Defendants breached an alleged contract with TOVE "commencing in or about mid-2021", whereby TOVE would provide "the services of Mr. Tracey in exchange for Defendants' agreement to pay TOVE 50% of revenue from NoPixel servers.

3.  Plaintiff is entitled to an accounting because "Defendants have received money from the exploitation of Mr. Tracey's creative contributions to the

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NoPixel Server without a license, a portion of which is therefore due to TOVE."

## II.    SUMMARY OF ARGUMENT IN SUPPORT OF SUMMARY JUDGMENT

Summary Judgment in this case against Plaintiff is appropriate for the following reasons:

1. It is **undisputed** that either Plaintiff or Tracey owns the copyrights in the "creative contributions" Tracey provided to the NoPixel Server; and it is **undisputed** that Tracey granted Defendants a non-exclusive, permanent, irrevocable and unlimited license to use them. There is, therefore, no basis for this Court to determine the "parties' respective rights in and to any and all copyrights derived from Tracey's creative contributions to the NoPixel Server and all monies generated from the exploitation thereof."

2. It is undisputed that Plaintiff and Defendants never discussed or agreed that they would together be "joint authors" of the code to the NoPixel Server.

3. It is undisputed that Plaintiff was never credited as a joint author of the NoPixel code.

4. It is **undisputed** there was no contract between TOVE and Defendants generally, and no agreement specifically for Plaintiff to "loan out" the services of Tracey to Defendants. It is also **undisputed** that the only revenue Defendants agreed to share *with Tracey* was 50% of revenue from 4 of over 170 "NoPixel servers."

5. It is **undisputed** that there is no "joint ownership" of the subject copyrighted material and, therefore, there is no basis for an accounting by Defendants to Plaintiff.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### III.    STATEMENT OF FACTS

In **2016**, Defendants created and began operating the "NoPixel Servers," which allows players of the video game "Grand Theft Auto V" to create and play new and unique scenarios that are not part of the base Grand Theft Auto game. *See* FAC, ¶11; UMF 1. These scenarios can be played and modified by *players*, but more "structural" changes are generally created by *developers*. UMF 2.

In April **2020**, Tracey acquired an account as a player on the NoPixel server. UMF 3. When he signed up, he was required to agree to the NoPixel terms of service ("Terms"). UMF 4. *Tracey did, in fact, sign up and agree to be bound by those Terms*. UMF 7. Defendants have produced a screenshot evidencing Tracey's acceptance of these terms, which was confirmed by Defendants' PMK and principal Mitchell Clout ("Clout") to be a true and correct copy thereof, and which was maintained in the ordinary course of Defendants' business. Ibid.

The aforementioned Terms unequivocally and expressly stated that (1) a content provider was granting Defendants a "*non-exclusive, permanent, irrevocable, unlimited license* to use, publish, or re-publish" the "Content" provided; (2) *the content provider would retain copyright ownership* over all such Content; and (3) "Content" is defined as "*All* content you submit, upload, or otherwise make available to the Service." UMF 6. All users were required to register for an account and accept these Terms.  UMF 7.

Not only is it **undisputed** that Tracey agreed to be bound by the Terms when he acquired his account (see UMF 5), but Tracey also *admits* that he joined the NoPixel server in early 2020 *and does not deny that he agreed to the Terms*. UMF 8. *He testified that he doesn't recall whether he applied and signed the Terms*. Ibid. The fact that Defendants have produced evidence to show Tracey agreed to and accepted the Terms, while Tracey himself cannot recall, makes this fact **undisputed**.

The subject Terms remained in place from the time Tracey acquired his *player* account and throughout his entire tenure as a content provider. UMF 9.

At some point, Tracey applied to be a "developer" of the game and not just a "player". Becoming a "developer", however, did _not_ require entering into a separate agreement. UMF 11. This was because the Terms, *which Tracey had already accepted and signed*, expressly applied to **_all_** content provided by users. UMF 12. There is no express or applicable exclusion for "developers" from said terms' and nothing in the Terms or on the website exempts "developers" from the application of the Terms. UMF 13. There was no agreement between Defendants and Tracey to do so, nor was there any representation made by Defendant to Tracey to suggest the Terms did not apply to "developers." UMF 13. Nothing suggests the Terms were superseded simply because Tracey began "developing" for NoPixel. UMF 13.

In recognition of these **undisputed facts**, Plaintiff has suggested, *without evidence*, there was a means by which Tracey could "backdoor" his way in as a developer thereby bypassing the Terms. In support, Plaintiff relies on the testimony of its expert, who suggested that individuals can participate without accepting the Terms and going through the onboarding process (*see*, e.g., declaration of William J. Francis at ¶ 15 in support of Plaintiff's MSJ). Yet this speculative "opinion" is based on conjecture and assumptions rather than facts: The actual fact is Francis simply opined "it is _possible_…to join and play on the NoPixel Server" without having to register for an account and accept the terms of service (emphasis added). UMF 14. But *possibilities are not facts*. More importantly, *Francis also admitted that his opinion was based solely on his analysis of the code as it exists _today_ and not as it existed in 2020* when Tracey signed up. UMF 15. He then admitted that this fact could cause him to change his opinion. UMF 15.

The aforementioned Terms, which Tracey agreed to, and which apply to **_all_** content provided, make it clear that such content is licensed to Defendants on a non-

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

exclusive, permanent, irrevocable, unlimited basis. Yet they also provide that *the content provider retains copyright ownership* in all provided content. UMF 6. Not only has Tracey acknowledged this **undisputed** fact, at deposition he testified *that he owned the copyright to the work he created prior to working for TOVE and that TOVE owned the copyright to his contributions created after he started working with TOVE*. UMF 16. This fact is, therefore, **undisputed**: As Tracey and/or Plaintiff claims copyright ownership, and Defendants do not. UMF 17.

Significantly, Tracey was merely one of *dozens* of Content contributors to the NoPixel server. UMF 18. In fact, the NoPixel Servers were comprised of over one hundred and seventy servers and Tracey's contributions were, therefore, limited to only a small percentage on a few of these servers. UMF 18. With so many contributors, i.e. "developers" Defendants do not and have not agreed with any of them that their contributions are "joint works" or "jointly owned." UMF 19. Instead, Defendants' role is limited to coordinating the content submissions and code modifications thereby exercising general oversight of the NoPixel Servers. UMF 20.

Further, the undisputed facts demonstrate there was no "joint ownership": (1) The NoPixel Terms of Service allows NoPixel to, "remove or modify any Content submitted at any time, with or without cause, with or without notice"; (2) Clout, and not Tracey, and certainly not TOVE, has the final decision over all changes and additions to the code on the NoPixel server; (3) Clout never considered Tracey or TOVE to be a "joint author" of the NoPixel Server and had no intent to do so; (4) Clout never told Mr. Tracey or TOVE that he considered them to be a joint author of the code; and (5) Neither Tracey nor TOVE received credit attribution. UMF 21.

Instead, developers like Tracey aided in building in-game mechanics and reviewing development ideas, but at no time was Tracey or any of the other dozens of developers working on the servers a "lead" developer. UMF 22. At best, Tracey's contribution to the overall code was *less than one percent of the total code of the*

*server*. UMF 23. In fact, the contribution of Tracey's code for the *entire* NoPixel project is *0.57%* when *properly* taking into consideration *the entire code database* and *not* just cherry-picking a limited data set as proffered by Plaintiff. Ibid.

In this regard, contrary to Plaintiff's claim that Tracey created an entirely new code base for the "back-end" information management systems, *in reality*, Tracey's backend code was in early-stage development and not complete: The only code that was functional and usable by NoPixel was Tracey's own personal code. UMF 24. More significantly, and contrary to Plaintiff's claims, Tracey did *not* design and build the payment processing system utilized by NoPixel; nor did it provide any significant functionality related to the monetization, security and user management necessary to run the game. UMF 25. Nor did Tracey build a Payment Processing System as claimed. Rather, it was built by a 3rd party payment processing solution (Tebex), which has been used by NoPixel since approximately June of 2021, before Tracey's alleged contributions even started. UMF 26. In fact, the Tebex payment platform was first deployed by NoPixel in June of 2021 and it was installed by a *different developer* (Nikez), with first payments being processed on June 4, 2021. UMF 27. As a full-service system for online game monetization, including transactional, financial, and site/content management tools, Tebex's NoPixel deployment provides virtually all the functionality claimed by Plaintiff; including the means for the players to pay to play, and the means for the business and operations of the game to run, the storefront and game server, product and solutions functionality, including the shopping cart (login, purchases, registration, internationalization), and control panel (auditing, sales results, monitoring, deployment). UMF 28. There is no way that Tracey's backend code performs as Plaintiff claims. Ibid.

The foregoing relationship continued unchanged through **May 2021**, at which time Defendants agreed to pay Tracey (and only Tracey) $10,000.00 per month to continue his

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

work. UMF 29. And this relationship continued through **October 2021**, which is when Plaintiff claims it entered an "employment agreement" with Tracey. UMF 30. Defendants' relationship with Tracey, however, *never changed*. UMF 31. Plaintiff's claim that it employed Tracey and, therefore, became the owner of Tracey's copyrighted contributions as a "joint work" (thereby entitling it to declaratory relief and an accounting) appears to be nothing more than a means by which to create standing for itself to bring this lawsuit in a Federal District Court in the United States (Tracey is a citizen of the United Kingdom and Defendants are residents of Australia). This includes the fiction that Plaintiff and Defendants agreed that Plaintiff would "loan out" the development services of Tracey.

At no time did Defendants *ever* enter into a loan-out agreement with TOVE; nor was there any reason to do so insofar as Tracey had already been working directly for Defendants for over a year. UMF 32. Not only is there no evidence of such an arrangement, but also ***Plaintiff has admitted that it never had any communications or agreements with Defendant.*** UMF 34. Further, Tracey never told Clout he was being "loaned out;" and *all of Tracey invoices were paid to Tracey directly through his personal email and PayPal account* both before *and* after Tracey was supposedly "employed" by TOVE. UMF 33.

Mr. Clout has never spoken with or had any agreements with TOVE, either individually or on behalf of Defendant Koil. UMF 34.

Further, the documents produced by Plaintiff fail to support, or outright contradict, Plaintiff's claim it "loaned out" Tracey to Koil. First, Plaintiff has produced the so-called employment agreement it had with Tracey, which is unquestionably _silent_ with respect to loaning out Tracey's services to third parties. UMF 35. Moreover, nowhere in the employment agreement does it say that Tracey must share with Plaintiff any portion of the money that he received from Defendant.

Second, in preparing an H-1B visa application that would enable TOVE to hire Tracey so Tracey could remain in the United States, TOVE's principal Jacques

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Khalil stated, under penalty of perjury, that he was hiring Tracey to work full-time as *TOVE's developer*. UMF 36. Mr. Khalil also submitted a letter with the application that stated that Tracey was being *hired as the lead designer for TOVE*. UMF 37. While the letter sets out the percentage of time that Tracey will be spending doing his tasks for TOVE, *nowhere in the letter or the application does it state that Mr. Tracey will be spending all or any part of his workdays working for Koil*. UMF 38.

The fact that Plaintiff and Tracey allegedly and verbally agreed to "loan out" his services to Koil is not, factually speaking, a "loan out agreement." Nowhere in law or fact can two parties secretly agree to loan out the services of an "employee" to a third party *without that third party's knowledge or consent*. And there is absolutely no corroborating evidence in this case of any such arrangement. Benjamin Lau, the immigration attorney at Jackson Lewis who prepared the H1-B visa application provided a declaration that confirmed that he never had any conversations with Plaintiff regarding the existence of a "loan-out" company and that Plaintiff never informed Mr. Lau of the existence of a loan-out company or any agreement with a loan-out company. UMF 39. Meantime, although the "employment" agreement specifies that Tracey, who was expressly hired to perform *streaming services* and not "development" services for third parties, would pay TOVE a percentage of his *streaming income* at $12,500 per month plus 30% of everything he made. UMF 40. Yet, Tracey and Plaintiff have both admitted that Tracey kept 100% of the money he was paid by Defendant and Tracey paid none of that money to Plaintiff. UMF 41. Plaintiff has also admitted that it is not an employment agency and had never before hired an employee to go work for another company. UMF 42.

Lastly, at no time, ever, did Defendants agree to make Tracey a "50% partner in the NoPixel Server" as Plaintiff claims without evidence. Doing so would disregard all the contributions made by the dozens of other developers that were contributing content. What Defendants did agree to, however, was to give Tracey

50% of the revenue from four of the over one hundred and seventy servers while he was employed by Koil. Those servers are identified as (1) Whitelist Priority; (2) India; (3) Spain and (4) South America. UMF 43. Tracey otherwise continued to perform services on the NoPixel servers until he was terminated. UMF 44.

However, even if the court believes that there is a question of fact as to whether Defendant agreed to pay *Tracey* 50% of its revenue, it is undisputed that Defendant never agreed to pay *Plaintiff* 50% of its revenue as Plaintiff and Defendant have never spoken or written to each other and Tracey did not have authority to bind Plaintiff into an agreement with Defendant. UMF 43.

## IV.    **ARGUMENT**

Rule 56 of the Federal Rules of Civil Procedure ("FRCP"), governs a Motion for Summary Judgment or Partial Summary Judgment. Under subsection (a), a party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought. Fed. R. Civ. P. 56(a). In such case, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (ibid).

Substantive law defines which facts are material and only disputes over facts that might affect the outcome of the case will defeat summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, at 248. A factual dispute is genuine if a "reasonable jury could return a verdict for the nonmoving party." Id. Although all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party, once the movant has met its burden of demonstrating the absence of a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the  material facts" to prevent its entry. *Matsushita Electric Industrial*

*Co. v. Zenith Radio Corp.*, 475 U.S. 547, 586–587, (1986). It is not sufficient for the party opposing summary judgment to provide a scintilla of evidence supporting its case. *Anderson v. Liberty Lobby, Inc.*, supra, 477 U.S. at 252.

In the present case, Defendants can meet its burden by demonstrating the absence of a genuine issue of material fact. Summary Judgment, therefore, is appropriate in this case.

### a. Plaintiff's First Cause of Action for Declaratory Relief

Plaintiff claims there is an actual controversy between TOVE and Defendants regarding **(i)** any and all copyrights derived from Mr. Tracey's creative contributions to the NoPixel Server, **(ii)** all monies generated from the exploitation thereof, and **(iii)** whether Defendants was granted a permanent and irrevocable license to continue exploiting such contributions.

(i)     Copyright Ownership and Exclusive License

There is, in fact, *no controversy* regarding the parties' respective rights in and to copyrights derived from Mr. Tracey's creative contributions to the NoPixel Server. Here, *the content creator himself, Daniel Tracey testified* that **_he_** owns the copyright to the work he created prior to working for TOVE; and **_TOVE_** owns the copyright to the contributions he created thereafter. *UMF 16*. Tracey's testimony on this point is **undisputed** and Defendants agree that either Tracey or TOVE owns the copyright to Tracey's contributions and Defendants make no claim to copyright ownership.

As set forth in the undisputed facts, when Tracey signed up for a NoPixel account, *he agreed to the Terms*, which specifically, unequivocally and expressly set forth two terms he was required to agree to: (1) Tracey, as content creator, retained ownership over **all content** he may publish and upload to the NoPixel Server; and (2) he granted Koil a "**non-exclusive,**

**permanent, irrevocable, unlimited license to use, publish, or re-publish"
the "Content"**. UMF 6. As stated therein, "Content" is defined as "**All
content you submit, upload, or otherwise make available to the Service**."
Ibid.

It is **undisputed** that Tracey agreed to these Terms at the time he acquired his
account. Not only is there testimony from Clout on this point, but also there is
corroborating evidence confirming this fact: *the computer record showing Tracey's
acceptance of these Terms*. UMF 5. Tracey even *admits* he joined the NoPixel server
in early 2020 *and does not deny that he agreed to the Terms*. UMF 8. *As he does
"not recall" whether he signed the terms when he applied, he cannot deny it now.*
(Plaintiff cannot create an issue of fact by putting forth an affidavit that contradicts
previous sworn testimony. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th
Cir. 2009)). *In short, Plaintiff presents **no evidence to dispute** Clout's Testimony and
Defendants' evidence showing Tracey signed and accepted the Terms.*

To avoid this undisputed fact, Plaintiff instead has endeavored to create a
fictitious narrative *unsupported by facts*. For example, in Plaintiff's MSJ recently
filed with this Court, Plaintiff argued, *without evidence*, that "there are other ways
individuals can join and play without going through the onboard process (i.e., signing
and consenting to the Terms). UMF 14.

The cited testimony from Plaintiff's expert Francis, however, is not a fact. It is
merely a speculative opinion that "it is *possible*…to join and play on the NoPixel
Server" without having to register for an account and accept the Terms. Ibid.
"Possibilities" are not facts. Neither Tracey nor Francis presented any evidence that
Tracey joined the NoPixel Server without registering for an account.

Conversely, what is an undisputed fact is that Tracey signed the Terms that
specify they apply to **all** content submitted, uploaded or otherwise made available to
the NoPixel servers.

For this reason, Plaintiff creates a second fiction: that, although the Terms apply to "players" they do not apply to "developers"; and that, when Tracy became a developer for NoPixel he was under a different (yet non-existent) agreement. UMF 13. But Plaintiff again presents **no evidence** of any of this and, instead, simply ignores the fact the Terms state unequivocally that they apply to **all Content**.

There are no exceptions to this other than Plaintiff's unsubstantiated theory that there is a difference between "players" and "developers." There isn't, and Plaintiff presents no facts or evidence to suggest there is. In fact, the copyrighted material, which is the subject of this dispute, is without a doubt "Content" that Tracey uploaded and made available. It is, therefore, subject to the Terms that Tracey agreed to. And under those Terms, Koil has the right to continue to use that Content without any further payment. **There is, therefore, no dispute as to copyright ownership or the non-exclusive license that was granted to Defendants**.

    (i)    All Monies Generated from the Exploitation of the Copyrighted Material

Plaintiff next takes the inexplicable and unsubstantiated position that there is a controversy concerning "all monies" generated through the use of the copyrighted material. There isn't. Note, the relief requested here appears to be the same relief Plaintiff seeks by way of asserting a Third Cause of Action for an Accounting. Consequently, both are addressed here.

In each case, Plaintiff argues it is entitled to receive an accounting (or declaration as the case may be) based on the concept that the NoPixel code constitutes a "joint work" owned by both TOVE and Defendant. However, the evidence is clear and undeniable that neither party considered Plaintiff to be a "joint author" of the code to the NoPixel server. UMF 21.

"A joint work is a work prepared by two or more authors with the *intention* that their contributions be merged into inseparable or interdependent

parts of a unitary whole." 17 U.S.C. §101 (emphasis added). For TOVE to be considered a Joint Author, therefore, it is not enough, as Plaintiff appears to argue, that Tracey may have contributed copyrightable expression to the NoPixel codebase. TOVE must prove that **both** TOVE and Koil intended Tracey's contributions (which are less than 1% of the total code), to constitute a joint work, and that such work would be equally co-owned by both Koil and TOVE.

The leading case regarding this issue is *Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir, 2000). The Aalmuhammed case dealt with the Spike Lee movie, *Malcolm X.* Warner Brothers contracted with Lee and his production company to make the movie *Malcolm X.* Lee co-wrote, directed and co-produced the movie, which starred Denzel Washington. *Id*. at 1229. Washington asked Aalmuhammed for his assistance because he knew a great deal about Malcolm X and Islam. *Id.* Aalmuhammed came to the set and worked extensively on the movie, including suggesting extensive script revisions. *Id.* at 1230.

In that case, Aalmuhammed never had a written contract with Warner Brothers, or Lee, but ultimately received a check for $25,000 from Lee (which he cashed) and a check for $100,000 from Washington (which he did not cash). *Id.* He eventually filed a complaint against, *inter alia*, Lee, his production companies and Warner Brothers, claiming, in pertinent part, that the movie was a "joint work" of which he was an author and a co-owner of the copyright.

As in the present case, he sought an accounting and a declaratory judgment of co-ownership. Aalmuhammed did not just claim copyright in what he wrote or contributed, but in the entire movie as co-author of a "joint work." *Id.*

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The district court granted Defendant's summary judgment motion, on the grounds that Plaintiff's lawsuit was barred by the applicable statute of limitations. On appeal, the 9th Circuit held that there was a genuine issue of fact as to whether the claim was time-barred so then turned to the question of whether Aalmuhammed should be considered the author of a joint work. *Id.* at 1231. The Court held that, in the absence of a contract, it should look at the following three factors to determine whether the Plaintiff should be considered an "author": "First, an author superintends the work by exercising control . . . *Id.* Second, putative coauthors make objective manifestations of a shared intent to be coauthors, as by denoting the authorship of The Pirates of Penzance as 'Gilbert and Sullivan.' . . . Third, the audience appeal of the work turns on both contributions and 'the share of each in its success cannot be appraised.' Control in many cases will be the most important factor. . . **The best objective manifestation of a shared intent, of course, is a contract saying that the parties intend to be or not to be co-authors."** *Id* at 1234-35 (Emphasis added).

Applying the three-factor test set forth above, co-authorship does not exist.

(1)    First, the NoPixel server is controlled by Defendants. UMF 20. Defendants have run the NoPixel server since 2016. UMF 1. Tracey was one of *dozens* of contributors to the NoPixel server. UMF 18. All of these people are overseen by Clout who is solely responsible for overseeing and coordinating the work and content submissions, and has the final say over all changes and additions to the code on the NoPixel server. UMF 20.

While Tracey did aid in building in-game mechanics and reviewing development ideas, that in no way made Mr. Tracey the "lead" developer as Plaintiff claims, or anything other than one of *many* contributors. UMF 22. Tracey, at best,

contributed *less than one percent* of the total code of the server. UMF 23. Furthermore, when a dispute arose between Mr. Tracey and Mr. Clout, he was terminated (UMF 43), something that could not happen if he actually shared control. The "absence of control is strong evidence of the absence of co-ownership." Id. at 1235.

Accordingly, neither Tracey nor Plaintiff ever "controlled" the work. Rather, Tracey, along with dozens of other contributors, created a portion of the work, retained ownership of that portion, and granted the right and license to Defendants to use it. Thus, the first factor fails to support the concept of "joint ownership."

Second, there Are No Objective Manifestations of a shared intent to be co-authors. In fact, all of the evidence shows that the parties did **not** intend that they be considered co-authors. UMF 21. As the court stated in Aalmuhammed, "The best objective manifestation of a shared intent . . . is a contract saying that the parties intend to be or not to be co-authors." Id. Here, the contract shows the exact opposite of what Plaintiff is trying to claim. The contract is the Terms, which state that **Tracey retains copyright ownership** of all his contributions to the NoPixel server, and he is granting Defendant a license to use them. There could not be a clearer manifestation of an intent **not** to create a joint work. Even if the Court finds there is a question of fact as to whether Tracey agreed to the Terms, they are a clear and objective manifestation of ***Defendant's intent*** that the work is not joint, which is reason enough to grant this motion. "[I]t is only where the dominant author intends to be sharing authorship that joint authorship will result." *Childress v. Taylor,* 945 F.2d 500, 508 (2nd Cir. 1991) (quoting *Fisher v. Klein,* 16 U.S.P.Q.2D (BNA) 1795, 1798 (S.D.N.Y. June 26, 1990).

Further, Tracey was never credited as a co-author. UMF 21. If Mr. Tracey (or TOVE) were considered a joint author, they would be able to produce some evidence

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

that they received such credit. The fact that they were unable to produce even a scintilla of evidence of credit undermines their claim.

Moreover, and most significantly, when Tracey was asked during his deposition who owned the copyright to his contribution, ***he testified that <u>he</u> owned the copyright*** to the work he created prior to working for TOVE; and that ***<u>TOVE</u> owned the copyright to his contributions created after*** he started working with TOVE, including all of the code that allowed NoPixel to accept payments. UMF 16. This is another objective manifestation that there was **no intent to create a joint authorship**, because, if Tracey believed that he was a joint author of the code with Defendant, he would have said that under oath and under penalty of perjury. By admitting that he solely owned the code that he wrote (or that TOVE owned the code that he wrote while employed by TOVE), Tracey removed any argument of a shared intention to be co-authors. Lastly, Defendants and Tracey agree that he or TOVE owns the code, which is, therefore, a fact that is **undisputed**.

Notably, despite the fact that Plaintiff submitted declarations from both Tracey and TOVE in support of Plaintiff's MSJ, in neither of those declarations did either gentlemen make any claim to be a "joint author" of the code or present any evidence of joint authorship. Instead, Plaintiff claims, without legal support, that simply by presenting evidence that Tracey made a contribution of copyright material to the NoPixel server the server becomes a "joint work." The Aalmuhammed case definitively states that is not enough. In order to establish a "joint work," Plaintiff must show that he is an "author" and "authorship is not same thing as making a valuable and copyrightable contribution." Aalmuhammed at 1232. **In sum, absent objective manifestation of a shared intent to be co-authors, this motion should be GRANTED**.

     (i)     Permanent and irrevocable license to continue exploiting the Copyrighted Material.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

As set forth above and in the Statement of Undisputed Facts, Tracey signed up for a NoPixel account and accepted the Terms, which state he granted Koil a "*non-exclusive, permanent, irrevocable, unlimited license* to use, publish, or re-publish" the "Content". UMF 6 and 12. As stated therein, "Content" is defined as "*All content you submit, upload, or otherwise make available* to the Service." UMF 6. His acceptance of these Terms is demonstrated by his signature UMF 12; and Plaintiff presents no evidence that these Terms apply to him only as a "player" and not as a "developer." Thus, **Plaintiff fails on this claim as well**.

(i)      Defendants' Motion for Summary Judgment on Plaintiff's First Cause of Action for Declaratory Relief should be GRANTED. It is **undisputed** that (1) Tracey and/or TOVE (Plaintiff) solely or together own all of the copyrighted material that is the subject of this lawsuit and they are not under any circumstance "joint owners" with Defendants; and (2) Tracey, at the time he created the subject work, granted Defendants a non-exclusive, permanent, irrevocable and unlimited license to use the work. There is, therefore, no legal or factual basis for Plaintiff's First Cause of Action for Declaratory Relief and, for this reason, **Defendants' Motion for Summary Judgment should be GRANTED**.

**b.  Plaintiff's Second Cause Action for Breach of Contract**

Plaintiff claims that, in or about mid-2021, TOVE and Defendants entered into an agreement for the services of Tracey, in exchange for Defendants' agreement to pay TOVE 50% of revenue generated from the NoPixel Server.

The problem with this position is simple: **There is no agreement between TOVE and Defendants for anything, let alone for the provision of Tracey's services**. UMF 32 & 33. In fact, **TOVE has admitted this in that Khalil testified that only he and his brother could bind TOVE to contracts and agreed that he had never communicated with Defendants**. UMF 32. As there is no agreement

between TOVE and Defendants, there is also no agreement between them to "pay TOVE 50% of revenue generated from the NoPixel Server." UMF 42.

In reality, Tracey began working for Defendant in 2020 over a year before he allegedly began working for TOVE. UMF 3. In May 2021, Koil agreed to pay $10,000 per month for the developer services Tracey was providing. UMF 29. Significantly, as *confirmed by TOVE's own expert*, it was not until **October 2021,** five months after he began getting paid by Koil,  that Tracey began also working for TOVE; *while* he *continued* to provide services to Koil. UMF 30.

Yet, Plaintiff produces no evidence that, despite the fact that Tracey had been working for Defendants for over a year, Tracey was hired by TOVE, after which TOVE and Defendants agreed that Tracey would continue working for Defendants *through* TOVE. UMF 31 – 33. There is, literally, no evidence whatsoever that TOVE and Defendants ever even had a discussion at all; let alone any discussion about Tracey, the performance of Tracey's services or that TOVE would "loan out" Tracey's services to Defendants. Ibid.

There is, however, evidence that Tracey, a British citizen, wanted to remain in the United States so he contacted TOVE to see if it would sponsor his visa. UMF 36. Conversely, Defendant, an Australian company, did not care where Tracey worked. But the evidence shows that TOVE agreed to sponsor Tracey's H1B visa and Tracey would pay TOVE for the *streaming income he would generate from Twitch* under his deal with TOVE. UMF 39. This was *wholly unrelated to any content he was creating for NoPixel*, whether as a developer, a player or otherwise. Rather, TOVE's deal was that they would sponsor Tracey's visa on the condition that Tracey pay to TOVE $8750 per month, plus expenses, plus for 30% of everything he made in addition to the $8750. Ibid.

But TOVE is not an employment agency and had never before hired an employee to go work for another company. UMF 41. And Plaintiff admitted that *no*

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*one at TOVE ever spoke with Clout or anyone at Koil about loaning Mr. Tracey out to them*. UMF 32. In fact, since Tracey was already employed by Koil there was no need for him to be loaned out. Ibid. Significantly, *all the money paid by Koil to Tracey was paid to Mr. Tracey's personal PayPal account both before and after Mr. Tracey was supposedly "employed" by TOVE*. UMF 33 - 34.

Further, while preparing the H-1B visa application, Jacques Khalil (TOVE's COO) stated, *under penalty of perjury*, that *he was hiring Tracey to work full-time as TOVE's developer*. UMF 36. Khalil submitted a letter with the application that stated that Tracey was being hired as the *lead designer for TOVE*. UMF 37. The letter sets out the percentage of time that Mr. Tracey will be spending doing his tasks for TOVE. UMF 38. *But neither the letter nor application states Tracey will be spending all or any part of his workday working for Defendants*. Ibid.

This would appear to be obvious. There would be no reason to obtain a H-1B Visa to have a U.K. citizen work for a company in Australia; and if TOVE had stated that Tracey was going to be working for Koil in Australia, the visa application would certainly have been denied. Mr. Khalil's sworn statement, made to the Department of Labor in 2021, that TOVE was hiring Tracey to work as TOVE's lead developer (not Koil's) is binding on TOVE and TOVE cannot create an issue of fact by putting forth an affidavit that contradicts his previous sworn testimony. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009).

The fact that Benjamin Lau, Plaintiff's immigration attorney, who prepared the H-1B visa application confirmed that Plaintiff never spoke with him about involving a loan-out company in Tracey's work further confirms that there was no such loan-out arrangement.

Plaintiff's employment agreement with Tracey states: "During your employment with the Company, any creative or intellectual property developed and originated by you *in performing your duties for the Company*, will be Company

property." (Emphasis added). Tracey's work for Defendant was not a part of his work duties for Plaintiff. That was a separate job for which he was separately paid by Defendant and which Plaintiff had no involvement in. Accordingly, none of the intellectual property created by Tracey for Defendant can be considered Plaintiff's property and for that additional reason, Plaintiff's case must fall.

For the foregoing reasons, Defendant's Motion for Summary Judgment as to Plaintiff's Second Cause of Action for Breach of Contract should be GRANTED.

### c. Plaintiff's Third Cause of Action for Accounting

Lastly, as there is no evidence of joint ownership and no evidence of any contract between Plaintiff and any defendant, there is no basis for any accounting. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's Third Cause of Action for Accounting should be GRANTED.