**MORRISON COOPER LLP**
LARRY ZERNER, ESQ. (155473)
10900 Wilshire, Suite 930
Los Angeles, CA 90024
Tel: (310) 773-3623
Email: Larry@MorrisonCooper.com
Attorney for Defendants,
Mitchell Clout and Koil Content Creation Pty Ltd.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THAT ONE VIDEO ENTERTAINMENT, LLC, a California limited liability company<br><br>Plaintiff<br><br>vs.<br><br>KOIL CONTENT CREATION PTY LTD., an Australian proprietary limited company doing business as NOPIXEL; MITCHELLE CLOUT, an individual; and DOES 1-25, inclusive,<br><br>Defendant(s). | Case No.: 2:23-CV-02687 SVW (JCx)<br><br>**DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS**<br><br>Hearing<br>Date: October 21, 2024<br>Time: 1:30 p.m.<br>Dept.: Courtroom 10A (10th Floor) 350 W. First Street<br>Los Angeles, CA Judge: Hon. Stephen V. Wilson |

| | **Defendants' Statement of Undisputed Facts** | |
|---|---|---|
| 1 | In 2016, Defendants created a videogame server, which allows individuals to play a modified version of the "open world" videogame "Grand Theft Auto V" in a closed environment.<br><br>Declaration of Mitchell Clout ("Clout Decl.") at ¶ 2-4. | |
| 2 | While players can make certain changes to the game's aesthetics, there is still a difference between "player" changes and "developer" changes, e.g., creating new 3D models or other structural modifications to the game.<br><br>("Clout Decl.") at ¶ 3 | |
| 3 | On or about April 22, 2020, Tracey acquired an account on the NoPixel Server as a community member.<br><br>Clout Decl. at ¶ 5. | |
| 4 | When a player registers for an account, they are required to accept the website's terms of service ("Terms").<br><br>Clout Decl. at ¶ 6 -- and Exhibit "1" thereto; | |

| | | |
|---|---|---|
| 5 | Tracey signed up for an account and accepted the Terms.<br><br>Clout Decl. at ¶ 9--, and Exhibit "B" thereto; (a true and correct copy of a screen shot showing Tracey's acceptance of terms as kept in the ordinary course of Defendants' business). | |
| 6 | The Terms expressly stated that (1) content providers are granting Koil a "non-exclusive, permanent, irrevocable, unlimited license to use, publish, or re-publish" the "Content" provided;<br>(2) the content provider would retain copyright ownership of all such Content; and (3) "Content" is defined as "_All_ content you submit, upload, or otherwise make available to the Service." | |
| | The Terms of Service further states that Koil may "remove or modify any Content submitted at any time, with or without cause, with or without notice; and that Koil may terminate "access to all or any part of the Service at any time, with or without cause, with or without notice.<br><br>Clout Decl. at ¶7-8, and Exhibit "1" thereto. | |

- 3 -
STATEMENT OF UNDISPUTED FACTS

| | | |
|---|---|---|
| 7 | All users of the NoPixel server were required to register for an account and accept these terms and Tracey agreed to the terms of service at the time he joined. Clout Decl. at ¶6, 9 and Exhibit 2 thereto. | |
| 8 | Tracey does not deny that he applied for an account and accepted the Terms. Zerner Decl. par. 6 and Exhibit 5 thereto (Tracey Deposition at 36:8-18; | |
| 9 | The subject Terms remained in place from the time Tracey acquired his player account and throughout his entire tenure as a content provider. Clout Decl. at ¶ 10 | |
| 10 | At some point, Tracey applied to become a "developer" of the game. Clout Decl. at ¶10 | |
| 11 | "Developers" were not required to enter into a separate written agreement for their services. Clout Decl. at ¶10 | |

- 4 -
STATEMENT OF UNDISPUTED FACTS

| | | |
|---|---|---|
| 12 | The Terms, *which Tracey accepted and signed,* expressly applied to all content provided by users.<br><br>Clout Decl. at ¶ 6, 10, and Exhibit "1" thereto; | |
| 13 | Nothing in the Terms or on the website exempt "developers" from the application of the Terms; and there was no agreement between Defendants and Tracey, or any representation made by Defendant, that the Terms did not apply to "developers." The Terms are not superseded simply because one starts developing for NoPixel.<br><br>Clout Decl. at ¶ 10 | |
| 14 | At deposition, Plaintiff's expert Francis offered his speculative "opinion" and assumptions when he testified that "it is *possible*…to join and play on the NoPixel Server" without having to register for an account and accept the terms of service.<br><br>Zerner Decl. at ¶4, Exhibit 3 (Francis Depo 41:22-42:4) | |
| 15 | Francis admitted that his opinion was based on the code as it exists today and not in 2020, when Tracey became a developer and admitted that this could change his opinion.<br><br>Zerner Decl. at ¶4, Exhibit 3 Francis Depo 41:22- 42:4; | |

| | | |
|---|---|---|
| 16 | At deposition Tracey testified that *he owned the copyright to the work he created prior to working for TOVE and that TOVE owned the copyright to his contributions created after he started working with TOVE.*<br><br>Zerner Decl. at ¶6; Tracey Depo at 46:20-47:9. 202:1-20 | |
| 17 | Defendants do not claim to own any of the copyrights in and to the contributions provided by Tracey, regardless of whether they are owned by Tracey or TOVE.<br><br>Clout Decl. at ¶ 11 | |
| 18 | Tracey was one of dozens of developers working on the NoPixel Servers, which were comprised of over one hundred and seventy servers and, therefore, Tracey's contributions were limited to only a small percentage on a few of these servers.<br><br>Clout Decl. at ¶ 13-14. | |
| 19 | With so many contributors, i.e. "developers" Defendants do not and have not agreed with any of them that their contributions are "joint works" or "jointly owned."<br><br>Clout Decl. at ¶ 11. | |

- 6 -
STATEMENT OF UNDISPUTED FACTS

| # | | |
|---|---|---|
| 20 | Defendants' role is limited to coordinating the content submissions and code modifications thereby exercising general oversight of the NoPixel Servers.<br><br>Clout Decl. at ¶ 16. | |
| 21 | Clout never considered Tracey to be a "joint author" of the NoPixel Server and had no intent to do so. Clout never told Mr. Tracey that he considered him to be a joint author of the code; and neither TOVE nor Tracey ever received credit attribution.<br><br>Clout Decl. at ¶ 11, 12, 19. | |
| 22 | Developers like Tracey aided in building in-game mechanics and reviewing development ideas, but at no time was Tracey or any of the other dozens of developers working on the servers the "lead" developer.<br><br>Clout Decl. at ¶ 16 | |

| # | | |
|---|---|---|
| 23 | Tracey's contribution to the overall code was less than one percent of the total code of the server. In fact, the entire contribution of Tracey's code for the entire NoPixel project is *0.57%*. This is the proper calculation when taking into consideration the entire code database, and not just the limited database of code proffered by Plaintiff's expert.<br><br>Kitchen Decl. at ¶ 63<br>Clout Decl. at ¶ 14 | |
| 24 | Tracey's backend code was in early stage development and not complete. Only Tracey's personal code was functional.<br><br>Kitchen Decl. at ¶ 36 | |
| 25 | Contrary to Plaintiff's claims, Tracey did *not* design and build the payment processing system utilized by NoPixel; nor did it provide any significant functionality related to the monetization, security and user management necessary to run the game.<br><br>Kitchen Decl. at ¶ 39 | |

| | | |
|---|---|---|
| 26 | Nor did Tracey build a Payment Processing System as claimed. Rather, it was built by a 3rd party payment processing solution (Tebex), which has used by NoPixel since approximately June of 2021, well before Tracey's alleged contributions even started.<br><br>Kitchen Decl. at ¶ 40 | |
| 27 | In fact, the Tebex payment platform was first deployed by NoPixel in June of 2021 and it was installed by a *different developer* (Nikez), with first payments being processed on June 4, 2021.<br><br>Kitchen Decl. at ¶ 42 | |

| | | |
|---|---|---|
| 28 | As a full-service system for online game monetization, including transactional, financial, and site/content management tools, Tebex's NoPixel deployment provides virtually all the functionality claimed by Plaintiff; including the means for the players to pay to play, and the means for the business and operations of the game to run, the storefront and game server, product and solutions functionality, including the shopping cart (login, purchases, registration, internationalization), and control panel (auditing, sales results, monitoring, deployment). There is no way that Tracey's backend code performs as Plaintiff claims.<br><br>Kitchen Decl. at ¶ 51 | |
| 29 | The foregoing relationship continued unchanged through May 2021, at which time Defendants agreed to pay Tracey (and only Tracey) $10,000.00 per month to continue his work.<br><br>Clout Decl. at ¶ 22-23. | |
| 30 | Tracey did not begin working for TOVE until October 14, 2021.<br><br>Zerner Decl. Ex. 1 (Employment Agreement between TOVE and Tracey). | |

| | | |
|---|---|---|
| 31 | Throughout 2021, at no time did Defendants' relationship and arrangement with Tracey ever change.<br><br>Clout Decl. at ¶ 24-25. | |
| 32 | At no time did Defendants *ever* enter into a loan-out agreement with TOVE, nor was there any reason to do so insofar as Tracey had already been working directly for Defendants for over a year.<br><br>Clout Decl. at ¶ 21; Khalil Depo. 20:15-18. | |
| 33 | Tracey never told Clout he was being "loaned out"; and all of Tracey invoices were paid to Tracey directly through his personal email and PayPal account.<br><br>Clout Decl. at ¶ 21-23. | |
| 34 | Clout has never spoken with or had any agreements with TOVE, either individually or on behalf of Koil.<br><br>Clout Decl. at ¶ 21 | |
| 35 | The "employment agreement" between Tove and Tracey produced by Plaintiff says nothing about "loaning out" Tracey's services to third parties.<br><br>Zerner Decl. at ¶2 and Exhibit 1 thereto. | |
| 36 | In preparing an H-1B visa application that would enable Tove to hire Tracey so Tracey could remain in the United States, Tove's principal Jacques Khalil stated, under penalty of perjury, that he was hiring Tracey to work full-time as *TOVE's developer.*<br><br>Zerner Decl. at ¶3 and Exhibit 2 thereto. | |

- 11 -
STATEMENT OF UNDISPUTED FACTS

| | | |
|---|---|---|
| 37 | Mr. Khalil also submitted a letter with the application that stated that Tracey was being *hired as the lead designer for TOVE.*<br><br>Zerner Decl. at ¶3 and Exhibit 2 thereto; | |
| 38 | While the letter sets out the percentage of time that Tracey will be spending doing his tasks for TOVE, *nowhere in the letter or the application does it state that Mr. Tracey will be spending all or any part of his workdays working for Koil.*<br><br>Zerner Decl. at ¶3 and Exhibit 2 thereto; | |
| 39 | Benjamin Lau, the immigration attorney at Jackson Lewis who prepared the H1-B visa application provided a declaration that confirmed that he never had any conversations with Plaintiff regarding the existence of a "loan-out" company and that Plaintiff never informed Mr. Lau of the existence of a loan-out company or any agreement with a loan-out company.<br><br>Lau Decl. at ¶ 2 | |
| 40 | Although the "employment" agreement specifies that Tracey, who was expressly hired to perform *streaming services* and not "development" services for third parties, would pay TOVE a percentage of his *streaming income* at $12,500 per month plus 30% of everything he made<br><br>Zerner Decl. at ¶5 and Exhibit 4 thereto (Khalil Depo. 62:23-63:16, | |

| | | |
|---|---|---|
| 41 | Yet, Tracey and Plaintiff have both admitted no such payments have been made.<br><br>Zerner Decl. at ¶3 and Exhibits 4 and 5 thereto (Khalil Depo 42:24-43:4; Tracey Depo 128:5-13). | |
| 42 | Plaintiff has admitted that it is not an employment agency and had never before hired an employee to go work for another company.<br><br>Zerner Decl. at ¶4; Khalil Depo. 16:19-24. | |
| 43 | At no time, ever, did Defendants agree to make Plaintiff a "50% partner in the NoPixel Server." Doing so would disregard all the contributions made by the dozens of other developers that were contributing content. What Defendants did agree to, however, was to give Tracey (not Plaintiff) 50% of the revenue from three of the over one hundred and seventy servers. Those servers are identified as (1) White Priority Server; (2) the India Server; (3) the Spain Server; and (4) the South America Server.<br><br>Clout Decl. at ¶ 25 | |
| 44 | Tracey otherwise continued to perform services on the NoPixel services until he was terminated in December 2022.<br><br>Clout Decl. at ¶ 26 | |

DATED: September 23, 2024                    MORRISON COOPER LLP

- 13 -
STATEMENT OF UNDISPUTED FACTS

1
2
3
4
5

                            By: /s/ Larry Zerner
                              Larry Zerner, Attorneys for Defendants, KOIL CONTENT CREATION PTY LTD., an Australian proprietary limited company, and Mitchell Clout

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 14 -
STATEMENT OF UNDISPUTED FACTS