Larry Zerner (SBN 155473)
Morrison Cooper
10900 Wilshire, Suite 930
Los Angeles, California 90024
Telephone:  (310) 773-3623
Email: Larry@MorrisonCooper.com

Attorney for Defendants Mitchell Clout
And Koil Content Creation Pty Ltd.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| THAT ONE VIDEO ENTERTAINMENT, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>KOIL CONTENT CREATION PTY LTD., an Australian proprietary limited company doing business as NOPIXEL; MITCHELL CLOUT, an individual; and DOES 1-25, inclusive,<br><br>Defendants. | Case No. 2:23-CV-02687 SVW (JCx)<br><br>DECLARATION OF LARRY ZERNER |

I, Larry Zerner declare as follows:

1.    I am an attorney admitted to practice before this Court and I am the attorney of record for Defendants in this action.  The facts set forth in my declaration are known personally by me to be true and correct, and if called upon as a witness, I could and would competently testify thereto.

1

2.    Attached hereto as Exhibit 1 is a true and correct copy of the employment contract between TOVE and Danny Tracey.  Nowhere in the document does it state that Mr. Tracey is being hired to be loaned out to work at Koil.

3.    Attached hereto as Exhibit 2 is a true and correct copy of the H-1B Visa Application filed by Plaintiff for Mr. Tracey.

4.    Attached hereto as Exhibit 3 are true and correct copies of the relevant pages from the deposition of Plaintiff's Expert William Francis.

5.    Attached hereto as Exhibit 4 are true and correct copies of the relevant pages from the deposition of TOVE's COO, Jacques Khalil.

6.    Attached hereto as Exhibit 5 are true and correct copies of the relevant pages from the deposition of Daniel Tracey.

7.    On July 23, 2024, I held an in person conference with Plaintiff's counsel regarding this Motion as required by Local Rule 7-3.

I swear under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 20th day of September in Los Angeles, CA.

/Larry Zerner/

# EXHIBIT 1



Dear Danny:

That One Video Entertainment, LLC (the "Company"), is pleased to offer you employment on the following terms:

1. **Position**. Your initial title will be Lead Developer and you will initially report to the Company's COO, Jacque Khalil. As the Company provides Entertainment Services, you may be required to appear on camera and create video tutorials and general media content around the Services you provide. This is a full-time, salaried exempt position. You will be required to work a minimum of 35 hours per week, and will not be eligible for overtime pay.

   During your employment with the Company, you will be required to devote substantially all of your working time and attention to the business of the Company and to performing your job duties as Lead Developer and/or any other position or responsibilities assigned to you. You agree to perform your duties in a diligent and professional manner. You will not, without the prior written consent of the Company's COO, engage in any other employment, consulting, or other business activity (whether full-time or part-time) that would (i) create a conflict of interest with the Company; (ii) compete with the Company's existing or reasonably anticipated business, products or services; or (iii) materially interfere with or impede the satisfactory performance of your duties and responsibilities for the Company. By signing this agreement, you represent and warrant that you have no contractual commitments or other legal obligations to any third party that would prohibit you from performing your duties for the Company.

2. **Salary**. The Company will pay you a starting salary in the gross amount of $105,000 per year. Your salary will be payable in periodic installments according to the Company's standard payroll schedule, and all payments will be subject to payroll deductions and withholdings required by law. Your salary may be subject to adjustment at the Company's discretion and pursuant to its employee compensation policies in effect from time to time.

3. **Sponsorships.** During your employment you may be eligible to participate in paid sponsorships for the services you provide to the Company. With respect to all such sponsorships, you agree that: (i) all compensation you earn is to be paid by the third party sponsor entity directly to the Company; (ii) the Company shall retain 30% of the gross amount paid for the sponsorships; and (iii) you shall be paid the remaining 70% of

TOVE000001

the gross amount paid for the sponsorships, subject to and less payroll deductions and withholdings required by law.

4. **Bonus.** During your employment with the Company, you may be eligible to receive an annual Bonus subject to your performance against certain goals, and other terms and conditions, to be determined by the Company.  Decisions concerning whether the Bonus will be paid in a given year, the amount of any such payment, and other terms and conditions of the Bonus, shall be made at the Company's sole discretion.  The Company shall pay any Bonus in one lump sum, subject to required payroll deductions and withholdings, at the end of the year to which it relates.  To be eligible for a Bonus, you must be actively employed by the Company at the time the Bonus is scheduled to be paid.

5. **Expenses**.  The Company will reimburse you for all reasonable and necessary expenses actually incurred by you in performing your duties in accordance with its policies and procedures.  Any expenses submitted by you for reimbursement by the Company must be supported with appropriate receipts, invoices, or other documentation verifying the nature, amount, and date of the expense.

6. **Confidentiality and Non-Disclosure Agreement**. Like all Company employees, you will be required, as a condition of your employment with the Company, to sign and fully comply with the Company's standard Confidentiality and Non-Disclosure Agreement, a copy of which is attached hereto as Exhibit A.

7. **Employee Handbook**. Like all Company employees, you will be required, as a condition of your employment with the Company, to read and sign an acknowledgment of receipt of the Company's Employee Handbook, a copy of which is attached hereto as Exhibit B.  You will be required to fully comply with all applicable policies and procedures set forth in the Handbook throughout your employment.

8. **Ownership Of Intellectual Property.**  During your employment with the Company, any creative or intellectual property developed and originated by you in performing your duties for the Company, will be Company property.  You will not, without an express written agreement signed by the Company's COO, have any rights to the property.

9. **Social Media**.  Your duties will involve developing content for social media, including written content, photos, and videos, related to the entertainment services provided by the Company.  In connection with these social media activities, you must always demonstrate professionalism, and exercise sound judgment and discretion.  In the event you post any content on social media, or engage in online behavior, that is determined by the Company to be: defamatory, discriminatory (based on race, national origin, sex,

TOVE000002

religion, sexual orientation, or other classification protected by law), misogynistic, violent or threating violence, overtly prejudicial, pornographic or overtly sexual to the extent not suitable for a general audience, or otherwise inappropriate, you may be subject to disciplinary action, up to and including termination of your employment with the Company.

10. **At-Will Employment.** Your employment with the Company is for no specific time period. Rather, your employment is "at will," meaning that either you or the Company may terminate your employment at any time and for any reason, with or without cause. Any contrary representations that may have been made to you are superseded by this letter agreement. This is the full and complete agreement between you and the Company on this term. Although your job duties, title, compensation, and benefits, as well as the Company's personnel policies and procedures, may change from time to time, the "at will" nature of your employment may only be changed in an express written agreement signed by you and a duly authorized officer of the Company (other than you).

11. **Verification of Identity and Employment Authorization.** For the purpose of compliance with federal immigration law, you will be required to complete a Form I-9 and provide the Company with specified documentary evidence of your identity and eligibility to work in the United States. You must complete this form and provide the required documentation within three (3) business days from your date of hire. Your failure to comply with this requirement will result in the termination of your employment with the Company.

12. **Tax Matters.**

    a. **Withholding.** All forms of compensation referred to in this letter agreement are subject to reduction to reflect applicable withholding and payroll taxes and other deductions required by law.

    b. **Tax Advice.** You are encouraged to obtain your own tax advice regarding your compensation from the Company. You agree that the Company does not have a duty to design its compensation policies in a manner that minimizes your tax liabilities, and you will not make any claim against the Company, or its Board of Directors related to tax liabilities arising from your compensation.

13. **Interpretation, Amendment and Enforcement.** This letter agreement and Exhibit A constitute the complete agreement between you and the Company, contain all the terms of your employment with the Company and supersede any prior agreements, representations, or understandings (whether written, oral, or implied) between you and the Company. This letter agreement may not be amended or modified, except by an express written agreement signed by both you and a duly authorized officer of the Company. The terms of this letter agreement and the resolution of any disputes as to the meaning, effect, performance, or validity of this letter agreement or arising out of, related to, or in any way connected with, this letter agreement, your employment with

TOVE000003

the Company or any other relationship between you and the Company (the "Disputes") will be governed by California law, excluding laws relating to conflicts or choice of law. You and the Company submit to the exclusive personal jurisdiction of the federal and state courts located in the State of California in connection with any Dispute or any claim related to any Dispute.

We hope that you will accept our offer to join the Company. You may indicate your agreement with these terms and accept this offer by signing and dating this letter agreement and the enclosed Confidentiality and Non-Disclosure Agreement and returning them to HR. This offer, if not accepted, will expire at the close of business on October 31st, 2021. As required by law, your employment with the Company is contingent upon your providing legal proof of your identity and authorization to work in the United States. Your employment is also contingent upon your starting work with the Company on or before October 1st, 2021.

If you have any questions, please contact Jacque Khalil at jkhalil@thatonevideogamer.com or 310-466-4768

Very truly yours,

That One Video Entertainment, LLC

By:

Title: COO

I have read and accept this employment offer on the terms and conditions stated above:

_____

Danny Tracey

Dated: 10/14/2021

TOVE000004

**EXHIBIT 2**



Department of Homeland Security
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| Receipt Number | Case Type |
|---|---|
| WAC2136051231 | I129 - PETITION FOR A NONIMMIGRANT WORKER |

| Received Date | Priority Date | Petitioner |
|---|---|---|
| 09/24/2021 | | THE ONE VIDEO ENTERTAINMENT LLC |

| Notice Date | Page | Beneficiary |
|---|---|---|
| 10/04/2021 | 1 of 1 | FARROW TRACEY, DANIEL WILLIAM JAM |

THE ONE VIDEO ENTERTAINMENT LLC
c/o JACQUE KHALIL CHIEF OPERATIONS OFF
2459 W 208 ST STE 101
TORRANCE  CA  90501

**Notice Type:** Approval Notice
**Class:** H1B
**Valid from** 09/27/2021 to 01/04/2023

We have mailed an official notice about this case (and any relevant documentation) according to the mailing preferences you chose on Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative. **This is a courtesy copy, not the official notice.**

**What the Official Notice Said**

The above petition and accompanying request for an extension of stay have been approved. The status of the named beneficiary(ies) in this classification is valid as indicated on the I-94 attached below. The beneficiary(ies) can work for the petitioner pursuant to this approval notice, but only as detailed in the petition and during the petition validity period indicated above, unless otherwise authorized by law. Changes in employment or training may require you to file a new Form I-129, Petition for a Nonimmigrant Worker.

The dates in the I-94 attached below might not be for the same dates as the petition validity dates above because the I-94 below may contain a grace period of up to 10 days before and up to 10 days after the petition validity period for the following classifications: CW-1, E-1, E-2, E-3, H-1B, H-2B, H-3, L-1A, L-1B, O-1, O-2, P-1, P-1S, P-2, P-2S, P-3, P-3S, TN-1, and TN-2. An I-94 for H-2A nonimmigrants may contain a grace period of up to one week before and 30 days after the petition validity period. However, the beneficiary(ies) may not work during such grace periods, unless otherwise authorized by law. The decision to grant a grace period and the length of the granted grace period is discretionary, final, and cannot be contested on motion or appeal. Please contact the IRS with any questions about tax withholding.

The petitioner should keep the upper portion of this notice. The lower portion should be given to the beneficiary(ies). The beneficiary(ies) should keep the right part (the I-94 portion) with his or her other Forms I-94, Arrival-Departure Record. The I-94 portion should be given to the U.S. Customs and Border Protection when he or she leaves the United States. The left part is for his or her records. A person granted a extension of stay who leaves the U.S. and is not visa-exempt must normally obtain a new visa before returning. The left part can be used when applying for the new visa. If a visa is not required, he or she should present it, along with any other required documentation, when applying for reentry based on this approval notice at a port of entry or pre-flight inspection station. The petitioner may also file Form I-824, Application for Action on an Approved Application or Petition, to request that we notify a consulate, port of entry, or pre-flight inspection office of this approval.

The approval of this petition does not guarantee that the beneficiary(ies) will be found to be eligible for a visa, for admission to the United States (if traveling abroad and seeking re-admission), or for a subsequent extension of stay, change of status, or adjustment of status.

**THIS FORM IS NOT A VISA AND MAY NOT BE USED IN PLACE OF A VISA.**

Number of workers: 1

| Name | DOB | COB | Class | Consulate/POE | OCC |
|---|---|---|---|---|---|
| FARROW TRACEY, DANIEL WILLIAM JAM | 02/04/1988 | UNITED KINGDOM | H1B | | 030 |

The Small Business Regulatory Enforcement and Fairness Act established the Office of the National Ombudsman (ONO) at the Small Business Administration. The ONO assists small businesses with issues related to federal regulations. If you are a small business with a comment or complaint about regulatory enforcement, you may contact the ONO at www.sba.gov/ombudsman or phone 202-205-2417 or fax 202-481-5719.

**NOTICE:** Although this application or petition has been approved, USCIS and the U.S. Department of Homeland Security reserve the right to verify this information before and/or after making a decision on your case so we can ensure that you have complied with applicable laws, rules, regulations, and other legal authorities. We may review public information and records, contact others by mail, the internet or phone, conduct site inspections of businesses and residences, or use other methods of verification. We will use the information obtained to determine whether you are eligible for the benefit you seek. If we find any derogatory information, we will follow the law in determining whether to provide you (and the legal representative listed on your Form G-28, if you submitted one) an opportunity to address that information before we make a formal decision on your case or start proceedings.

Please see the additional information on the back. You will be notified separately about any other cases you filed.

California Service Center
U. S. CITIZENSHIP & IMMIGRATION SVC
P.O. Box 30111
Laguna Niguel CA 92607-0111

**USCIS Contact Center: www.uscis.gov/contactcenter**



CONFID

TOVE001067

If this is an interview or biometrics appointment notice, please see the back of this notice for important information.

Form I-797C  04/01/19



Department of Homeland Security
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**

| THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT. |
| --- |

| Receipt Number WAC2136051231 | | Case Type 1129 - PETITION FOR A NONIMMIGRANT WORKER |
| --- | --- | --- |
| Received Date 09/24/2021 | Priority Date | Petitioner THE ONE VIDEO ENTERTAINMENT LLC |
| Notice Date 09/28/2021 | Page 1 of 2 | Beneficiary FARROW TRACEY, DANIEL WILLIAM JAM |

THE ONE VIDEO ENTERTAINMENT LLC
c/o JACQUE KHALIL CHIEF OPERATIONS OFF
2459 W 208 ST STE 101
TORRANCE CA  90501

**Notice Type:** Premium Processing
Receipt Notice
Amount received: $4210.00 U.S.
Class requested: H1B

We have mailed an official notice about this case (and any relevant documentation) according to the mailing preferences you chose on Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative. **This is a courtesy copy, not the official notice.**

What the Official Notice Said

Thank you for choosing to use the U.S. Citizenship and Immigration Services' Premium Processing service. We have received the application or petition ("your case") listed above and accepted it as a Premium Processing case. You should receive a notice regarding your case within 15 calendar days from the date shown as the "Received Date" above. If we need to contact you regarding your case, we may do so by mail, telephone, facsimile, or e-mail using the information you provided.

If you need to contact us regarding your Premium Processing case, you can do so using the information immediately below. The mailing address, e-mail address, and phone number listed below are for use in relation to Premium Processing Program cases only. You can obtain case status information from our automated system 24 hours a day with a touch-tone phone and the receipt number for this case shown above by calling the phone number listed below.

CALIFORNIA SERVICE CENTER (CSC) Premium Processing:

| I-129 PP Routine Mail: | I-129 Premium Processing, USCIS, California Service Center P.O. Box 10825, Laguna Niguel, CA 92607-0825 |
| --- | --- |
| I-129 PP Courier Address: | USCIS, California Service Center 24000 Avila Road, 2nd Floor, Room 2302, Laguna Niguel, CA 92677 |
| I-129 PP Fax: | 949-389-3460 |
| I-129 PP Phone Number: | 1-866-315-5718 |
| Email address: | CSC-Premium.Processing@uscis.dhs.gov |

This notice shows that your case was filed on the "Received Date" listed above. It does NOT grant the beneficiary any immigration status, and it is not evidence that your case is still pending. We will notify you in writing when we make a decision on your case or if we need additional information.

Work authorization will only continue while this application or petition remains pending if expressly provided by statute or regulation and subject to any limitations prescribed therein.

Please save this and any other notices about your case for your records. You should also keep copies of anything you send us, as well as proof of delivery. Have these records available if you contact us about your case.

**If your address changes -** If you move while your case is pending, please visit www.uscis.gov/addresschange for information on how to update your address. Remember to update your address for all your receipt numbers.

Number of workers: 1

| Name | DOB | COB | Class | Consulate/POE | OCC |
| --- | --- | --- | --- | --- | --- |
| FARROW TRACEY, DANIEL WILLIAM JAM | 02/04/1988 | UNITED KINGDOM | H1B | | 030 |

**Return of Original Documents -** Use Form G-884, Request for the Return of Original Documents, to request the return of original documents submitted to establish eligibility for an immigration or citizenship benefit. You only need to submit one Form G-884 if you are requesting multiple documents contained in a single USCIS file. However, if the requested documentation is in more than one USCIS file, you must submit a separate request for each file. (For

| Please see the additional information on the back. You will be notified separately about any other cases you filed. |
| --- |

California Service Center
U. S. CITIZENSHIP & IMMIGRATION SVC
P.O. Box 30111
Laguna Niguel CA 92607-0111



**USCIS Contact Center: www.uscis.gov/contactcenter**

| If this is an interview or biometrics appointment notice, please see the back of this notice for important information. | Form I-797C  04/01/19 |
| --- | --- |

If you are visiting a field office and need directions, including public transportation directions, please see **www.uscis.gov/fieldoffices** for more information.

| **Notice for People with Disabilities** |
| --- |

To request a disability accommodation:

- Go to uscis.gov/accommodations to make your request online, or
- Call the USCIS Contact Center at 800-375-5283 (TTY 800-767-1833) for help in English or Spanish. Asylum and NACARA 203 applicants must call to make their request.

If you need a sign language interpreter, make your request as soon as you receive your appointment notice. The more advance notice we have of your accommodation request, the better prepared we can be and less likely we will need to reschedule your appointment. For more information about accommodations, visit uscis.gov/accommodationsinfo.

Department of Homeland Security
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**



| THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT. |
| --- |

| Receipt Number | | Case Type |
| --- | --- | --- |
| WAC2136051231 | | I129 - PETITION FOR A NONIMMIGRANT WORKER |
| **Received Date** | **Priority Date** | **Petitioner** |
| 09/24/2021 | | THE ONE VIDEO ENTERTAINMENT LLC |
| **Notice Date** | **Page** | **Beneficiary** |
| 09/28/2021 | 2 of 2 | FARROW TRACEY, DANIEL WILLIAM JAM |

example: if you wish to obtain your mother's birth certificate and your parents' marriage certificate, both of which are in the USCIS file that pertains to her, submit one Form G-884 with your mother's information.)

**NOTICE:** Under the Immigration and Nationality Act (INA), the information you provide on and in support of applications and petitions is submitted under the penalty of perjury. USCIS and the U.S. Department of Homeland Security reserve the right to verify this information before and/or after making a decision on your case so we can ensure that you have complied with applicable laws, rules, regulations, and other legal authorities. We may review public information and records, contact others by mail, the internet, or phone, conduct site inspections of businesses and residences, or use other methods of verification. We will use the information obtained to determine whether you are eligible for the benefit you seek. If we find any derogatory information, we will follow the law in determining whether to provide you (and the legal representative listed on your Form G-28, if you submitted one) an opportunity to address that information before we make a formal decision on your case or start proceedings.

Please see the additional information on the back. You will be notified separately about any other cases you filed.

California Service Center
U. S. CITIZENSHIP & IMMIGRATION SVC
P.O. Box 30111
Laguna Niguel CA 92607-0111



**USCIS Contact Center: www.uscis.gov/contactcenter**

CONFID

TOVE001070

If this is an interview or biometrics appointment notice, please see the back of this notice for important information.

Form I-797C  04/01/19

If you are visiting a field office and need directions, including public transportation directions, please see **www.uscis.gov/fieldoffices** for more information.

---

## Notice for People with Disabilities

---

To request a disability accommodation:

- Go to uscis.gov/accommodations to make your request online, or
- Call the USCIS Contact Center at 800-375-5283 (TTY 800-767-1833) for help in English or Spanish. Asylum and NACARA 203 applicants must call to make their request.

If you need a sign language interpreter, make your request as soon as you receive your appointment notice. The more advance notice we have of your accommodation request, the better prepared we can be and less likely we will need to reschedule your appointment. For more information about accommodations, visit uscis.gov/accommodationsinfo.

OMB Approval: 1205-0310
Expiration Date: 10/31/2021

Labor Condition Application for Nonimmigrant Workers
Form ETA-9035 & 9035E
**U.S. Department of Labor**



*Please read and review the filing instructions carefully before completing the Form ETA- 9035 or 9035E. A copy of the instructions can be found at http://www.foreignlaborcert.doleta.gov/. In accordance with Federal Regulations at 20 CFR 655.730(b), incomplete or obviously inaccurate Labor Condition Applications (LCAs) will not be certified by the Department of Labor (DOL). For all submissions, both electronic (Form ETA- 9035E) or paper (Form ETA- Form 9035 where the employer has notified DOL that it will submit this form non-electronically due to a disability or received permission from DOL to file non-electronically due to lack of Internet access), ALL required fields/items containing an asterisk (\*) must be completed as well as any fields/items where a response is conditional as indicated by the section (§) symbol.*

## A. Employment-Based Nonimmigrant Visa Information

| 1. Indicate the type of visa classification supported by this application *(Write classification symbol)*: * | H-1B |
|---|---|

## B. Temporary Need Information

**1. Job Title ***    LEAD DEVELOPER

| 2. SOC (ONET/OES) code * 15-1132.00 | 3. SOC (ONET/OES) occupation title * Software Developers, Applications |
|---|---|

| 4. Is this a full-time position? * | Period of Intended Employment | |
|---|---|---|
| ☒ Yes  ☐ No | 5. Begin Date * 9/27/2021 *(mm/dd/yyyy)* | 6. End Date * 9/26/2024 *(mm/dd/yyyy)* |

7. Worker positions needed/basis for the visa classification supported by this application

| 1 | **Total Worker Positions Being Requested for Certification *** |
|---|---|

Basis for the visa classification supported by this application
*(indicate total workers in each applicable category)*

| 0 | a. New employment * | 0 | d. New concurrent employment * |
|---|---|---|---|
| 0 | b. Continuation of previously approved employment without change with the same employer* | 1 | e. Change in employer * |
| 0 | c. Change in previously approved employment * | 0 | f. Amended petition * |

## C. Employer Information

| 1. Legal business name * That One Video Entertainment, LLC | | |
|---|---|---|
| 2. Trade name/Doing Business As (DBA), if applicable | | |
| 3. Address 1 * 2459 West 208th Street | | |
| 4. Address 2 Suite 101 | | |
| 5. City * Torrance | 6. State * California | 7. Postal code * 90501 |
| 8. Country * United States Of America | 9. Province | |
| 10. Telephone number * +1 (310) 466-4768 | 11. Extension | |
| 12. Federal Employer Identification Number (FEIN from IRS) * ▮▮▮▮▮ | 13. NAICS code (must be at least 4-digits) * 711410 | |

OMB Approval: 1205-0310
Expiration Date: 10/31/2021

Labor Condition Application for Nonimmigrant Workers
Form ETA-9035 & 9035E
**U.S. Department of Labor**



### D. Employer Point of Contact Information

**Important Note**: The information contained in this Section must be that of an employee of the employer who is authorized to act on behalf of the employer in labor certification matters. The information in this Section <u>must be different</u> from the agent or attorney information listed in Section E, unless the attorney is an employee of the employer.

| 1. Contact's last (family) name *<br>Khalil | 2. First (given) name *<br>Jacque | 3. Middle name(s) | |
|---|---|---|---|
| 4. Contact's job title *<br>Chief Operations Officer | | | |
| 5. Address 1 *<br>2459 West 208th Street | | | |
| 6. Address 2<br>Suite 101 | | | |
| 7. City *<br>Torrance | | 8. State *<br>California | 9. Postal code *<br>90501 |
| 10. Country *<br>United States Of America | | 11. Province | |
| 12. Telephone number *<br>+1 (310) 466-4768 | 13. Extension | 14. E-Mail address<br>jkhalil@thatonevideogamer.com | |

### E. Attorney or Agent Information (If applicable)

**Important Note**: The employer authorizes the attorney or agent identified in this section to act on its behalf in connection with the filing of this application.

| 1. Is the employer represented by an attorney or agent in the filing of this application? *<br>If "Yes," complete the remainder of Section E below. | | | ☑ Yes      ☐ No |
|---|---|---|---|
| 2. Attorney or Agent's last (family) name §<br>Lau | 3. First (given) name §<br>Benjamin | 4. Middle name(s) | |
| 5. Address 1 §<br>725 South Figueroa Street | | | |
| 6. Address 2<br>Suite 2500 | | | |
| 7. City §<br>Los Angeles | | 8. State §<br>California | 9. Postal code §<br>90017 |
| 10. Country §<br>United States Of America | | 11. Province | |
| 12. Telephone number §<br>+1 (213) 337-3852 | 13. Extension | 14. E-Mail address<br>Benjamin.Lau@jacksonlewis.com | |
| 15. Law firm/Business name §<br>Jackson Lewis P.C. | | 16. Law firm/Business FEIN § | |
| 17. State Bar number (only if attorney) §<br>278612 | | 18. State of highest court where attorney is in good standing (only if attorney) §<br>California | |
| 19. Name of the highest State court where attorney is in good standing (only if attorney) §<br>California Supreme Court | | | |

Case Number: **I-200-21256-580624**    Case Status: Certified    Period of Employment: **9/27/2021** to **9/26/2024**
CONFID                     TOVE001073

OMB Approval: 1205-0310
Expiration Date: 10/31/2021

Labor Condition Application for Nonimmigrant Workers
Form ETA-9035 & 9035E
**U.S. Department of Labor**



## F. Employment and Wage Information

**Important Note**: The employer must define the intended place(s) of employment with as much geographic specificity as possible. Each intended place(s) of employment listed below <u>must be the worksite or physical location where the work will actually be performed and cannot be a P.O. Box</u>. The employer <u>must</u> identify all intended places of employment, including those of short duration, on the LCA. 20 CFR 655.730(c)(5). If the employer is submitting this form non-electronically and the work is expected to be performed in more than one location, an attachment must be submitted in order to complete this section. An employer has the option to use either a single Form ETA-9035/9035E or multiple forms to disclose all intended places of employment. If the employer has more than ten (10) intended places of employment at the time of filing this application, the employer must file as many additional LCAs as are necessary to list all intended places of employment. See the form instructions for further information about identifying all intended places of employment.

### a. *Place of Employment Information* 1

| | |
|---|---|
| 1. Enter the estimated number of workers that will perform work at this place of employment under the LCA.* | 1 |

| | |
|---|---|
| 2. Indicate whether the worker(s) subject to this LCA will be placed with a secondary entity at this place of employment. * | ☐ Yes ☑ No |

3. If "Yes" to question 2, provide the legal business name of the secondary entity. §

4. Address 1 *
606 W. 57 STREET

5. Address 2
APT 1623

| 6. City *<br>NEW YORK | 7. County *<br>New York |
|---|---|
| 8. State/District/Territory *<br>New York | 9. Postal code *<br>10019 |

| 10. Wage Rate Paid to Nonimmigrant Workers *<br>From* $  101754 . 00   To: $  110000 . 00 | 10a. Per: (Choose only one)*<br>☐ Hour ☐ Week ☐ Bi-Weekly ☐ Month ☑ Year |
|---|---|

| 11. Prevailing Wage Rate *<br>$  101754 . 00 | 11a. Per: (Choose only one)*<br>☐ Hour ☐ Week ☐ Bi-Weekly ☐ Month ☑ Year |
|---|---|

**Questions 12-14. Identify the source used for the prevailing wage (PW)** *(check and fully complete only one):* *

| 12.<br>☐ | A Prevailing Wage Determination (PWD) issued by the Department of Labor | a. PWD tracking number § |
|---|---|---|

| 13.<br>☑ | A PW obtained independently from the Occupational Employment Statistics (OES) Program | |
|---|---|---|
| | a. Wage Level *(check one):* §<br>☐ I   ☑ II   ☐ III   ☐ IV   ☐ N/A | b. Source Year §<br>7/1/2021 - 6/30/2022 |

| 14.<br>☐ | A PW obtained using another legitimate source (other than OES) or an independent authoritative source | |
|---|---|---|
| | a. Source Type *(check one):* §<br>☐ CBA   ☐ DBA   ☐ SCA   ☐ Other/ PW Survey | b. Source Year § |
| | c. If responded "Other/ PW Survey" in question 14.a, enter the name of the survey producer or publisher § | |
| | d. If responded "Other/ PW Survey" in question 14.a, enter the title or name of the PW survey § | |

OMB Approval: 1205-0310
Expiration Date: 10/31/2021

Labor Condition Application for Nonimmigrant Workers
Form ETA-9035 & 9035E
**U.S. Department of Labor**



## G. Employer Labor Condition Statements

⚠ **Important Note**: In order for your application to be processed, you <u>MUST</u> read Section G of the Form ETA-9035CP - General Instructions for the 9035 & 9035E under the heading "Employer Labor Condition Statements" and agree to all four (4) labor condition statements summarized below:

(1) **Wages**: The employer shall pay nonimmigrant workers at least the prevailing wage or the employer's actual wage, whichever is higher, and pay for non-productive time. The employer shall offer nonimmigrant workers benefits and eligibility for benefits provided as compensation for services on the same basis as the employer offers to U.S. workers. The employer shall not make deductions to recoup a business expense(s) of the employer including attorney fees and other costs connected to the performance of H-1B, H-1B1, or E-3 program functions which are required to be performed by the employer. This includes expenses related to the preparation and filing of this LCA and related visa petition information. 20 CFR 655.731;

(2) **Working Conditions**: The employer shall provide working conditions for nonimmigrants which will not adversely affect the working conditions of workers similarly employed. The employer's obligation regarding working conditions shall extend for the duration of the validity period of the certified LCA or the period during which the worker(s) working pursuant to this LCA is employed by the employer, whichever is longer. 20 CFR 655.732;

(3) **Strike, Lockout, or Work Stoppage**: At the time of filing this LCA, the employer is not involved in a strike, lockout, or work stoppage in the course of a labor dispute in the occupational classification in the area(s) of intended employment. The employer will notify the Department of Labor within 3 days of the occurrence of a strike or lockout in the occupation, and in that event the LCA will not be used to support a petition filing with the U.S. Citizenship and Immigration Services (USCIS) until the DOL Employment and Training Administration (ETA) determines that the strike or lockout has ended. 20 CFR 655.733; and

(4) **Notice**: Notice of the LCA filing was provided no more than 30 days before the filing of this LCA or will be provided on the day this LCA is filed to the bargaining representative in the occupation and area of intended employment, or if there is no bargaining representative, to workers in the occupation at the place(s) of employment either by electronic or physical posting. This notice was or will be posted for a total period of 10 days, except that if employees are provided individual direct notice by e-mail, notification need only be given once. A copy of the notice documentation will be maintained in the employer's public access file. A copy of this LCA will be provided to each nonimmigrant worker employed pursuant to the LCA. The employer shall, no later than the date the worker(s) report to work at the place(s) of employment, provide a signed copy of the certified LCA to the worker(s) working pursuant to this LCA. 20 CFR 655.734.

| 1. **I have read and agree to** Labor Condition Statements 1, 2, 3, and 4 above and as fully explained in Section G of the Form ETA-9035CP – General Instructions for the 9035 & 9035E and the Department's regulations at 20 CFR 655 Subpart H. * | ☑ Yes   ☐ No |
|---|---|

## H. Additional Employer Labor Condition Statements –H-1B Employers ONLY

⚠ **Important Note**: In order for your H-1B application to be processed, you <u>MUST</u> read Section H – Subsection 1 of the Form ETA 9035CP – General Instructions for the 9035 & 9035E under the heading "Additional Employer Labor Condition Statements" and answer the questions below.

### a. Subsection 1

| 1. At the time of filing this LCA, is the employer H-1B dependent? § | ☐ Yes   ☑ No |
|---|---|
| 2. At the time of filing this LCA, is the employer a willful violator? § | ☐ Yes   ☑ No |
| 3. If "Yes" is marked in questions H.1 and/or H.2, you must answer "Yes" or "No" regarding whether the employer will use this application ONLY to support H-1B petitions or extensions of status for exempt H-1B nonimmigrant workers? § | ☐ Yes   ☐ No |

| 4. If "Yes" is marked in question H.3, identify the statutory basis for the exemption of the H-1B nonimmigrant workers associated with this LCA. § | ☐ $60,000 or higher annual wage<br>☐ Master's Degree or higher in related specialty<br>☐ Both |
|---|---|

| H-1B Dependent or Willful Violator Employers -Master's Degree or Higher Exemptions ONLY ||
|---|---|
| 5. Indicate whether a completed Appendix A is attached to this LCA covering any H-1B nonimmigrant worker for whom the statutory exemption will be based **ONLY** on attainment of a Master's Degree or higher in related specialty. § | ☐ Yes   ☐ No   ☐ N/A |

OMB Approval: 1205-0310
Expiration Date: 10/31/2021

Labor Condition Application for Nonimmigrant Workers
Form ETA-9035 & 9035E
**U.S. Department of Labor**



---

If you marked "Yes" to questions H.a.1 (H-1B dependent) and/or H.a.2 (H-1B willful violator) and "No" to question H.a.3 (exempt H-1B nonimmigrant workers), you **MUST** read Section H – Subsection 2 of the Form ETA 9035CP – General Instructions for the 9035 & 9035E under the heading "Additional Employer Labor Condition Statements" and indicate your agreement to all three (3) additional statements summarized below.

### b. Subsection 2

A. **Displacement:** An H-1B dependent or willful violator employer is prohibited from displacing a U.S. worker in its own workforce within the period beginning 90 days before and ending 90 days after the date of filing of the visa petition. 20 CFR 655.738(c);

B. **Secondary Displacement:** An H-1B dependent or willful violator employer is prohibited from placing an H-1B nonimmigrant worker(s) with another/secondary employer where there are indicia of an employment relationship between the nonimmigrant worker(s) and that other/secondary employer (thus possibly affecting the jobs of U.S. workers employed by that other employer), unless and until the employer subject to this LCA makes the inquiries and/or receives the information set forth in 20 CFR 655.738(d)(5) concerning that other/secondary employer's displacement of similarly employed U.S. workers in its workforce within the period beginning 90 days before and ending 90 days after the date of such placement. 20 CFR 655.738(d). Even if the required inquiry of the secondary employer is made, the H-1B dependent or willful violator employer will be subject to a finding of a violation of the secondary displacement prohibition if the secondary employer, in fact, displaces any U.S. worker(s) during the applicable time period; and

C. **Recruitment and Hiring:** Prior to filing this LCA or any petition or request for extension of status for nonimmigrant worker(s) supported by this LCA, the H-1B dependent or willful violator employer must take good faith steps to recruit U.S. workers for the job(s) using procedures that meet industry-wide standards and offer compensation that is at least as great as the required wage to be paid to the nonimmigrant worker(s) pursuant to 20 CFR 655.731(a). The employer must offer the job(s) to any U.S. worker who applies and is equally or better qualified for the job than the nonimmigrant worker. 20 CFR 655.739.

| 6. **I have read and agree** to Additional Employer Labor Condition Statements A, B, and C above and as fully explained in Section H – Subsections 1 and 2 of the Form ETA 9035CP – General Instructions for the 9035 & 9035E and the Department's regulations at 20 CFR 655 Subpart H. § | ☐ Yes    ☐ No |
|---|---|

## I. Public Disclosure Information

**!** **Important Note**: You must select one or both of the options listed in this Section.

| 1. Public disclosure information in the United States will be kept at: * | ☑ Employer's principal place of business <br> ☐ Place of employment |
|---|---|

## J. Notice of Obligations

A. Upon receipt of the certified LCA, the employer must take the following actions:

- o  Print and sign a hard copy of the LCA if filing electronically (20 CFR 655.730(c)(3));
- o  Maintain the original signed and certified LCA in the employer's files (20 CFR 655.705(c)(2); 20 CFR 655.730(c)(3); and 20 CFR 655.760); and
- o  Make a copy of the LCA, as well as necessary supporting documentation required by the Department of Labor regulations, available for public examination in a public access file at the employer's principal place of business in the U.S. or at the place of employment within one working day after the date on which the LCA is filed with the Department of Labor (20 CFR 655.705(c)(2) and 20 CFR 655.760).

B. The employer must develop sufficient documentation to meet its burden of proof with respect to the validity of the statements made in its LCA and the accuracy of information provided, in the event that such statement or information is challenged (20 CFR 655.705(c)(5) and 20 CFR 655.700(d)(4)(iv)).

C. The employer must make this LCA, supporting documentation, and other records available to officials of the Department of Labor upon request during any investigation under the Immigration and Nationality Act (20 CFR 655.760 and 20 CFR Subpart I).

*I declare under penalty of perjury that I have read and reviewed this application and that to the best of my knowledge, the information contained therein is true and accurate. I understand that to knowingly furnish materially false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a federal offense punishable by fines, imprisonment, or both (18 U.S.C. 2, 1001,1546,1621).*

| 1. Last (family) name of hiring or designated official * <br> KHALIL | 2. First (given) name of hiring or designated official * <br> JACQUE | 3. Middle initial § |
|---|---|---|
| 4. Hiring or designated official title * <br> CHIEF OPERATIONS OFFICER | | |
| 5. Signature * | 6. Date signed * | |

---

OMB Approval: 1205-0310
Expiration Date: 10/31/2021

Labor Condition Application for Nonimmigrant Workers
Form ETA-9035 & 9035E
**U.S. Department of Labor**



---

### K.  LCA Preparer

**Important Note**:  Complete this section if the preparer of this LCA is a person other than the one identified in either Section D (employer point of contact) or E (attorney or agent) of this application.

| 1. Last (family) name § | 2. First (given) name § | 3. Middle initial |
|---|---|---|
| LAU | BENJAMIN | C. |

| 4.  Firm/Business name § |
|---|
| JACKSON LEWIS PC |

| 5.  E-Mail address § |
|---|
| BENJAMIN.LAU@JACKSONLEWIS.COM |

---

### L.  U.S. Government Agency Use (ONLY)

By virtue of the signature below, the Department of Labor hereby acknowledges the following:

This certification is valid from <u>9/27/2021</u> to <u>9/26/2024</u>.

*Certifying Officer*

Department of Labor, Office of Foreign Labor Certification

<u>9/20/2021</u>
Certification Date (date signed)

<u>I-200-21256-580624</u>
Case number

<u>Certified</u>
Case Status

*The Department of Labor is not the guarantor of the accuracy, truthfulness, or adequacy of a certified LCA.*

---

### M.  Signature Notification and Complaints

The signatures and dates signed on this form will not be filled out when electronically submitting to the Department of Labor for processing, but **MUST** be complete when submitting non-electronically.  **If** the application is submitted electronically, any resulting certification **MUST** be signed *immediately upon receipt* from DOL before it can be submitted to USCIS for final processing.

Complaints alleging misrepresentation of material facts in the LCA and/or failure to comply with the terms of the LCA may be filed using the WH-4 Form with any office of the Wage and Hour Division, U.S. Department of Labor.  A listing of the Wage and Hour Division offices can be obtained at www.dol.gov/whd.  Complaints alleging failure to offer employment to an equally or better qualified U.S. worker, or an employer's misrepresentation regarding such offer(s) of employment, may be filed with the U.S. Department of Justice, Civil Rights Division, Immigrant and Employee Rights Section, 950 Pennsylvania Avenue, NW, # IER, NYA 9000, Washington, DC, 20530, and additional information can be obtained at www.justice.gov.  Please note that complaints should be filed with the Civil Rights Division, Immigrant and Employee Rights Section at the Department of Justice only if the violation is by an employer who is H-1B dependent or a willful violator as defined in 20 CFR 655.710(b) and 655.734(a)(1)(ii).

---

### N.  OMB Paperwork Reduction Act *(1205-0310)*

These reporting instructions have been approved under the Paperwork Reduction Act of 1995.  Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.  Your response is required to receive the benefit of consideration of your application. (Immigration and Nationality Act, Section 212(n) and (t) and 214(c)). Public reporting burden for this collection of information, which is to assist with program management and to meet Congressional and statutory requirements, is estimated to average 75 minutes per response, including the time to review instructions, search existing data sources, gather and maintain the data needed, and complete and review the collection of information.

Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Employment and Training Administration, Office of Foreign Labor Certification, 200 Constitution Ave., NW, Box PPII 12-200, Washington, DC, 20210.  (Paperwork Reduction Project OMB 1205-0310.)  **Do NOT send the completed application to this address.**

---

OMB Approval: 1205-0310
Expiration Date: 10/31/2021

Labor Condition Application for Nonimmigrant Workers
Form ETA-9035 & 9035E
**U.S. Department of Labor**



---

**F. Employment and Wage Information**

**Important Note:** The employer must define the intended place(s) of employment with as much geographic specificity as possible. Each intended place(s) of employment listed below must be the worksite or physical location where the work will actually be performed and cannot be a P.O. Box. The employer must identify all intended places of employment, including those of short duration, on the LCA. 20 CFR 655.730(c)(5). If the employer is submitting this form non-electronically and the work is expected to be performed in more than one location, an attachment must be submitted in order to complete this section. An employer has the option to use either a single Form ETA-9035/9035E or multiple forms to disclose all intended places of employment. If the employer has more than ten (10) intended places of employment at the time of filing this application, the employer must file as many additional LCAs as are necessary to list all intended places of employment. See the form instructions for further information about identifying all intended places of employment.

a. *Place of Employment Information* 2

| | | |
|---|---|---|
| 1. Enter the estimated number of workers that will perform work at this place of employment under the LCA.* | | 1 |
| 2. Indicate whether the worker(s) subject to this LCA will be placed with a secondary entity at this place of employment. * | | ☐ Yes  ☑ No |
| 3. If "Yes" to question 2, provide the legal business name of the secondary entity. § | | |

**4. Address 1 ***
2459 WEST 208TH STREET

**5. Address 2**
SUITE 101

| 6. City *<br>TORRANCE | 7. County *<br>Los Angeles |
|---|---|
| 8. State/District/Territory *<br>California | 9. Postal code *<br>90501 |

| 10. Wage Rate Paid to Nonimmigrant Workers *<br>From* $ 101754 . 00   To: $ 110000 . 00 | 10a. Per: (Choose only one)*<br>☐ Hour ☐ Week ☐ Bi-Weekly ☐ Month ☑ Year |
|---|---|
| 11. Prevailing Wage Rate *<br>$ 96907 . 00 | 11a. Per: (Choose only one)*<br>☐ Hour ☐ Week ☐ Bi-Weekly ☐ Month ☑ Year |

| Questions 12-14. Identify the source used for the prevailing wage (PW) *(check and fully complete only one):* * | | |
|---|---|---|
| 12.<br>☐ | A Prevailing Wage Determination (PWD) issued by the Department of Labor | a. PWD tracking number § |
| 13.<br>☑ | A PW obtained independently from the Occupational Employment Statistics (OES) Program | |
| | a. Wage Level *(check one):* §<br>☐ I  ☑ II  ☐ III  ☐ IV  ☐ N/A | b. Source Year §<br>7/1/2021 - 6/30/2022 |
| 14.<br>☐ | A PW obtained using another legitimate source (other than OES) or an independent authoritative source | |
| | a. Source Type *(check one):* §<br>☐ CBA  ☐ DBA  ☐ SCA  ☐ Other/ PW Survey | b. Source Year § |
| | c. If responded "Other/ PW Survey" in question 14.a, enter the name of the survey producer or publisher § | |
| | d. If responded "Other/ PW Survey" in question 14.a, enter the title or name of the PW survey § | |

---



September 20, 2021

<u>Premium Processing Service</u>
*USCIS California Service Center*
**Attn: I-129 H-1B Extensions**
24000 Avila Road
2nd Floor, Room 2312
Laguna Niguel, CA 92677

Re:   <u>**Form I-129 Petition for a Nonimmigrant Worker (H-1B Change of Employer)**</u>
            **Petitioner:**   That One Video Entertainment, LLC ("TOVE")
            **Beneficiary**:  Daniel William James Farrow Tracey

Dear Adjudicating Officer:

This letter is submitted in support of the above-referenced I-129 (H-1B Change of Employer) petition for a nonimmigrant worker that That One Video Entertainment, LLC ("**TOVE**" or "**Petitioner**"), is filing on behalf of Mr. Daniel William James Farrow Tracey ("Mr. Farrow Tracey").  TOVE seeks to employ Mr. Farrow Tracey in the professional position of Lead Developer for a temporary period of up to thirty-six (36) months.

### Information About the Petitioner

That One Video Entertainment ("TOVE") is a content creation and business management company focused on serving content creators working in the video game and entertainment field. It's TOVE's goal to help content creators maximize their potential by guiding their business and opportunities so creators can focus on what they do best, create. At TOVE, it is our philosophy and goal to ensure that the clients' brand worth is recognized and maximized within the industry. Whether YouTube, Instagram, Twitch, Facebook, or Snap Chat is the platform of choice, TOVE takes the business burden on for all influencers and entertainment personalities.

### The Specialty Occupation – Lead Developer

That One Video Entertainment wishes to employ Mr. Farrow Tracey in the specialty occupation of Lead Developer. In this position, Mr. Farrow Tracey will be responsible for working as TOVE's lead developer and programmer on interactive multimedia entertainment productions, where he will be responsible for the research, design, and development of modifications to computer software in order to enhance interactive multimedia entertainment productions. Specifically, Mr. Farrow Tracey will be responsible for the following:

- (25%) Develop and implement modifications to interactive multimedia entertainment productions, including gameplay changes, loading screens, and total software conversions to modify computer software used for gameplay and overall content;

- (20%) Research, design, and develop specialized modifications to computer software used in interactive multimedia entertainment productions. The Lead Developer will be responsible for analyzing user needs and developing modifications to meet specific user requirements;

- (20%) Modify existing interactive multimedia entertainment productions to correct errors, upgrade interfaces, and improve performance. The Lead Developer will be responsible for utilizing complicated modeling and texturing software to modify existing content and to create original content within the interactive multimedia entertainment productions;

- (15%) Update and enhance software capabilities by researching, designing, and creating modeling, and making photo-realistic texture for interactive multimedia entertainment productions. Specifically, the Lead Developer will be responsible for providing scripting support and underlying code to make modifications to interactive multimedia entertainment productions;

- (10%) Collaborate with developers, engineers, and programmers to design system modifications and to obtain information on project limitations; and

- (10%) Create video tutorials demonstrating software modifying techniques and general media content discussing software modifying strategies for interactive multimedia entertainment productions.

The Lead Developer position requires the theoretical and practical application of a highly specialized body of knowledge, that can only be attained through the completion of at least a Bachelor's degree program, or its equivalent, in Computer Science, Information Technology, Applied Computer Science, or a related field with relevant work experience.

The duties of the Lead Developer position are comparable to the Department of Labor's (DOL) Occupational Outlook Handbook (OOH) for the position of "Software Developers," (SOC 15-1132) with a specific focus on the design of modifications to interactive multimedia entertainment productions. In evaluating the professional nature of the Software Developer occupation, the OOH confirms that "Most software developers have a bachelor's degree in an information- or computer-related subject such as computer science." **Therefore, the OOH confirms that most employers require at least a bachelor's degree in a specific field for entry into this occupation.** As such, and in line with the OOH, the duties of the Lead Developer position at TOVE are complex and the knowledge and skills required to perform them must be attained through at least a bachelor's degree, or its equivalent, in Computer Science, Information Technology, Applied Computer Science, or a related field.

**That One Video Entertainment Requires a Bachelor's Degree or its Equivalent for the Position for *Lead Developer***

As the Lead Developer, Mr. Farrow Tracey will be responsible for working as the lead developer and programmer on interactive multimedia entertainment productions, where he will be responsible for the research, design, and development of modifications to computer software in order to enhance interactive multimedia entertainment productions. This will include designing and implementing modifications to existing interactive multimedia entertainment productions to correct errors, upgrade interfaces, and improve performance. The Lead Developer will be responsible for utilizing complicated modeling and texturing software to modify existing content and to create original content within the interactive multimedia entertainment productions. The Lead Developer will update and enhance software capabilities by researching, designing, and creating modeling, and making photo-realistic texture for interactive multimedia entertainment productions. Specifically, the Lead Developer will be responsible for providing scripting support and underlying code to make modifications to interactive multimedia entertainment productions.

The Lead Developer with TOVE is highly advanced in nature and can only be performed by an individual who possesses at least a Bachelor's degree in Computer Science, Information Technology, Applied Computer Science, or the foreign equivalent.

### Beneficiary Meets the Requirements of the Position

Mr. Farrow Tracey is well qualified for the position of Lead Developer. Mr. Farrow Tracey earned a Bachelor's degree in Computer Science from the University of Hertfordshire in the United Kingdom in 2009. Mr. Farrow Tracey's degree has been evaluated by a qualified credential evaluation service and was found to be the equivalent of a U.S. Bachelor's degree in Computer Science. Please see the attached evaluation.

### Conclusion

That One Video Entertainment would like to employ Mr. Farrow Tracey as Lead Developer. He will report to TOVE's headquarters in Torrance, CA and will also work from his home residence in New York, NY pursuant to the company's work from home policy. He will earn an annual salary of $105,000 and be eligible for performance bonuses.

This letter does not create a contract of employment for any length of time or a contract for benefits. Mr. Farrow Tracey's employment relationship with TOVE is at-will. At the option of

either Mr. Farrow Tracey or TOVE, Mr. Farrow Tracey's employment may be terminated at any time, with or without cause.

If you have questions regarding TOVE, we will be happy to provide you with further information.

Sincerely,

**Jacque Khalil**
**Chief Operations Officer**
4823-6560-3579, v. 1

# EXHIBIT 3

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3    _____

4    THAT ONE VIDEO ENTERTAINMENT,

5    LLC, a California limited

6    Liability company,

7              Plaintiff,

8       v.                          Case No.

9    KOIL CONTENT CREATION PTY LTD.,    2:23-CV-02687 SVW

10   An Australian proprietary       (JCx)

11   Limited company doing business

12   As NOPIXEL; MITCHELL CLOUT, an

13   Individual; and DOES 1-25,

14   Inclusive,

15             Defendants.

16   _____

17            VIDEOCONFERENCE DEPOSITION OF

18                 WILLIAM FRANCIS

19   DATE:         Monday, August 5, 2024

20   TIME:         2:33 p.m.

21   LOCATION:     Remote Proceeding

22                 Parker, TX 75002

23   OFFICIATED BY: Garrett Fitzgerald

24   JOB NO.:      6841925

25

                                        Page 1

```
 1    checking on your own to make sure these numbers were

 2    correct?

 3                  MR. BEGAKIS:  Objection, assumes facts

 4    not in evidence, vague.

 5         A    So I -- I did a little bit of spot checking.

 6    So I -- I -- in other words, I didn't -- you know, so --

 7    so first of all, I trust the software to do the math

 8    part of it better than me.  But I did do a little bit

 9    of -- of spot checking, meaning, like, I check out the

10    code at these different points in history and -- and at

11    least went and -- and sort of put them into Sublime like

12    we were talking about and looked to see, like, hey,

13    here's that -- you know, that function that was in the

14    original code basis is still here, you know -- you know,

15    three months later or whatever.

16         Q    Okay.  I'm going to move over to the addendum

17    part of the report.  In the addendum, you outline a

18    scenario where someone could access the NoPixel server

19    without agreeing to the terms and conditions; is that

20    correct?

21         A    It is.

22         Q    Okay.  And when you were coming up with this

23    scenario, were you using the current code or the code as

24    it existed in 2020?

25         A    I was 100 percent using the current code.
```

1          Q       Okay.  Do you know if your answer would be

2     different if you used the code as it existed in 2020?

3          A       I don't know if it would be, but it certainly

4     could be.

5          Q     Okay.  Don't you think it's -- you understand

6     that Danny first joined NoPixel in 2020?  You understand

7     that; right?

8          A     Yes.

9          Q     So isn't it going to be important in order --

10    to have a scenario using the software as it existed in

11    2020?

12         A     Yeah, I think that -- I think that would

13    probably be more relevant, but I didn't really -- well,

14    first of all, I -- I no longer had access to -- to that

15    code at that point, and I really think that in the -- in

16    the streaming sort of gaming space, I -- I really think,

17    like, it -- it doesn't seem like -- you know, I can't

18    say whether, you know -- you know, Danny signed the

19    terms of service or not.  Right?

20              And I would -- you know, and I don't know

21    if -- if -- you know, if -- if -- you know, if Koil, you

22    know, saves that information, and if so can, you know,

23    hopefully reproduce it and, you know, clear up that

24    question altogether.  Right?  You know, I -- I was asked

25    if it's, you know, hypothetically possible.

                                                    Page  42

CERTIFICATE OF DEPOSITION OFFICER

1

2          I, GARRETT FITZGERALD, the officer before whom

3     the foregoing proceedings were taken, do hereby certify

4     that any witness(es) in the foregoing proceedings, prior

5     to testifying, were duly sworn; that the proceedings

6     were recorded by me and thereafter reduced to

7     typewriting by a qualified transcriptionist; that said

8     digital audio recording of said proceedings are a true

9     and accurate record to the best of my knowledge, skills,

10    and ability; that I am neither counsel for, related to,

11    nor employed by any of the parties to the action in

12    which this was taken; and, further, that I am not a

13    relative or employee of any counsel or attorney employed

14    by the parties hereto, nor financially or otherwise

15    interested in the outcome of this action.

16

17                              GARRETT FITZGERALD

18                         Notary Public in and for the

19                                State of California

20

21    [X] Review of the transcript was requested.

22

23

24

25

Page 70

CERTIFICATE OF TRANSCRIBER

1

2          I, NICHOLE RYAN, do hereby certify that this

3     transcript was prepared from the digital audio recording

4     of the foregoing proceeding, that said transcript is a

5     true and accurate record of the proceedings to the best

6     of my knowledge, skills, and ability; that I am neither

7     counsel for, related to, nor employed by any of the

8     parties to the action in which this was taken; and,

9     further, that I am not a relative or employee of any

10    counsel or attorney employed by the parties hereto, nor

11    financially or otherwise interested in the outcome of

12    this action.

13

14

15                                            NICHOLE RYAN

16

17

18

19

20

21

22

23

24

25

                                              Page 71

# EXHIBIT 4

```
 1                UNITED STATES DISTRICT COURT

 2             FOR THE CENTRAL DISTRICT OF CALIFORNIA

 3

 4    THAT ONE VIDEO ENTERTAINMENT, LLC, )
      a California limited liability     )
 5    company,                           )
                                         )
 6                        Plaintiff,     )
                                         )
 7        vs.                            )  Case No.:
                                         )  2:23-cv-02687 SVW
 8    KOIL CONTENT CREATION PTY LTD., an )  (JCx)
      Australian proprietary limited     )
 9    company doing business as NOPIXEL; )
      MITCHELL CLOUT, an individual; and )
10    DOES 1-25, inclusive,              )
                                         )
11                        Defendants.    )
      _____)
12

13

14

15                 REMOTE DEPOSITION OF

16                    JACQUE KHALIL

17         PMK for THAT ONE VIDEO ENTERTAINMENT

18                 TORRANCE, CALIFORNIA

19                    JULY 12, 2024

20

21

22

23

24    REPORTED BY:  SANDRA S. PETRITSCH, CSR NO. 11684

25    FILE NO. 6799456

                                           Page 1
```

1    developers that it uses, either employee or independent

2    contractor?

3             MR. BEGAKIS:  Objection.  Vague as to "uses."

4             THE WITNESS:  Yes.  We have in the past used

5    developers for projects in the past.

6        Q    (By Mr. Zerner)  Since you hired Danny, have you

7    also still hired other developers?

8        A    I want to say no, but we could have paid a

9    developer to fix something on one of our Web sites.  A

10   couple hundred dollars or a thousand dollars.  That's it.

11   Fix something small.

12       Q    And what does Danny do for TOVE?

13       A    His official title is the lead developer.

14       Q    What did he do?

15       A    He was hired specifically to lead the

16   development for NoPixel.

17       Q    So he was hired to do the development at

18   NoPixel.  Why -- no.  I'll come back to that.

19            Prior to Danny has TOVE ever hired an employee

20   to work for another company?

21            MR. BEGAKIS:  Objection, vague.

22            If you understand it, though, you can answer it.

23            THE WITNESS:  I'm going to say, no.  I don't

24   think so, no.

25       Q    (By Mr. Zerner)  TOVE is not generally an

                                              Page 16

```
 1    employment agency.   Correct?
 2         A    No.
 3              MR. BEGAKIS:  Objection, vague.
 4         Q    (By Mr. Zerner)  Have you ever personally
 5    communicated with anyone at NoPixel?
 6         A    Other than Danny, no.
 7         Q    And you never communicated with Mitch Clout at
 8    NoPixel.  Correct?
 9              MR. BEGAKIS:  Objection.  Vague as to
10    "communicate."
11              THE WITNESS:  I want to say, no, not directly.
12    But, definitely, there was some indirect communications.
13         Q    (By Mr. Zerner)  Well, can you elaborate?
14         A    Specifically around Danny's visa.
15         Q    And when you say, "indirectly," meaning you're
16    talking to Danny and Danny is talking to Mitch or was
17    there something else?
18         A    That's correct.
19         Q    Were you ever listening in on a call that Danny
20    and Mitch were having?
21         A    No.
22         Q    Are you aware of any written -- strike that.
23              NoPixel is not in any way legally associated
24    with TOVE, correct, in that it's not a subsidiary or
25    partnership -- I mean it's not a subsidiary, it's not a
```

                                        Page 17

1    division of it -- it's a completely separate company.

2    Correct?

3              MR. BEGAKIS:  Objection.  Vague, compound, and

4    calls for a legal conclusion.

5              THE WITNESS:  In terms of, I guess, like from an

6    entity's standpoint?

7              MR. ZERNER:  Yeah.

8              THE WITNESS:  No.

9         Q    (By Mr. Zerner)  Had you heard of NoPixel prior

10   to Danny -- getting involved with Danny?

11        A    Possibly.  Possibly.  Being in the space, a lot

12   of things are coming and going sometimes very quickly, so

13   I possibly could have come across it.

14        Q    So, yeah, maybe a video game company out there

15   called NoPixel; that kind of knowledge of it?

16        A    I think as role playing community, it was

17   actually growing over time.  I might have come across it.

18   There were other content creation streamers that were, I

19   guess, part of our associated friend group, you could call

20   it.  Creators that, when they would stream, would be role

21   playing games.  I would jump in on some chats and watch

22   kind of what some people were doing.  So I could have come

23   across some streamers that might have been streaming on a

24   NoPixel server.

25        Q    Are you aware of any written agreement of any

                                              Page 18

```
1    kind between TOVE and NoPixel?
2              MR. BEGAKIS:   Objection, vague.
3              THE WITNESS:   Other than what Danny and Mitchell
4    had in there Discord chats, no.
5              MR. ZERNER:   Okay.
6         Q    (By Mr. Zerner)   And are you aware of any
7    written, legal agreements between TOVE and Mitchell Clout
8    personally?
9              MR. BEGAKIS:   Objection, vague.
10             THE WITNESS:   Same answer.   Other than what
11   Danny and Mitchell had in their chats, no.
12        Q    (By Mr. Zerner)   Is there a written partnership
13   agreement between TOVE and NoPixel?
14             MR. BEGAKIS:   Objection, vague.
15             THE WITNESS:   No.
16        Q    (By Mr. Zerner)   Is there a written partnership
17   agreement between TOVE and Mitchell Clout?
18             MR. BEGAKIS:   Objection, vague.
19             THE WITNESS:   No.
20        Q    (By Mr. Zerner)   Did TOVE hire Danny to be the
21   lead developer for TOVE or to be the lead developer for
22   NoPixel?
23             MR. BEGAKIS:   Objection, vague.
24             THE WITNESS:   He was hired as the lead developer
25   for T-O-V-E to be loaned out to NoPixel.
```

Page 19

```
 1        Q    (By Mr. Zerner)  And at the time you hired

 2   Danny, you understood that he was being paid by NoPixel.

 3   Right?

 4        A    I don't know if -- maybe I asked him some

 5   questions if he ever got paid some money.  I can't recall

 6   exactly when I learned of his income specifically that

 7   he's earned from NoPixel prior to being an employee

 8   here.

 9        Q    No one at NoPixel asked you to hire Danny to

10   then be working at NoPixel.  Correct?

11             MR. BEGAKIS:  Objection.  Vague, calls for a

12   legal conclusion.

13             THE WITNESS:  Sorry, can you repeat the

14   question?  I'm not sure I heard it all.

15        Q    (By Mr. Zerner)   No one at NoPixel asked you to

16   hire Danny to work at NoPixel?

17             MR. BEGAKIS:   Objection, vague.

18             THE WITNESS:   No.

19             MR. ZERNER:  I want to pull up Exhibit 102 from

20   yesterday.

21             Do you need this now that we're just talking

22   about it and we have them?

23             MR. BEGAKIS:  I think I prefer if the witness

24   have it readily available instead of referring to it on

25   the screen.
```

Page 20

```
 1              THE WITNESS:  Yes.
 2       Q    (By Mr. Zerner)  Well, if the lawyer had put in
 3   information that was incorrect, you would have fixed it.
 4   Right?  I mean you wouldn't have allowed it to go out.
 5   Right?
 6              MR. BEGAKIS:  Same objection.  If you're talking
 7   about yourself and own work with respect to any work
 8   product, I'm okay with you answering; but not with respect
 9   to any communications or work done with your immigration
10   counsel.
11              THE WITNESS:  You know, I couldn't tell you
12   exactly what was getting changed.  But there were
13   definitely active conversations between the attorneys
14   about what was getting updated in there.
15       Q    (By Mr. Zerner)  As you look at the letter now,
16   is there any provision -- is there any part of this letter
17   that you think is incorrect?
18              MR. BEGAKIS:  Again, familiarize yourself with
19   it before you're making a statement as to the truth or
20   accuracy of every word in this document.
21       Q    (By Mr. Zerner)  Please.
22       A    So the question is:  Do I believe it's accurate?
23       Q    Yes.
24       A    Well, I believe at the time of submission it
25   was.
```

Page  24

```
1    percentage of time that he was to be working on it.
2         Q    Wasn't he required to stream enough that you
3    could clear the $8,750.00 a month that you were paying
4    him?
5              MR. BEGAKIS:   Objection.   Assumes facts not in
6    evidence.
7              THE WITNESS:   I wouldn't call it a requirement.
8    It was for both of our benefits that he streamed to earn
9    the income and the donations so that he could -- not only
10   could we pay his salary, we could cover his salary and
11   operational cost, but that he could also make more money
12   on top of that.
13        Q    (By Mr. Zerner)  Why are you taking his
14   streaming money?  He's hired as lead developer.  That
15   streaming money is completely apart from developing.
16   Right?
17             MR. BEGAKIS:  Objection, vague.  Calls for a
18   legal conclusion.
19             THE WITNESS:  I disagree.  A lot of his
20   development was done while streaming, or a lot of
21   customization in some of his work was done during
22   streaming.
23        Q    (By Mr. Zerner)  You know a lot of streamers.
24   Right?
25        A    I do.
```

Page 32

```
 1              MR. BEGAKIS:  Are we entering an exhibit?

 2              MR. ZERNER:  No.  I'm just going to show it to

 3     him to see if it refreshes his recollection.

 4              MR. BEGAKIS:  Okay.

 5         Q    (By Mr. Zerner)  Do you see what's on the screen

 6     is page TOVE 1376?

 7              MR. BEGAKIS:  I'll just object to the extent

 8     that any questions around this document lack foundation.

 9              But if you understand what you're looking at,

10     Mr. Khalil, you can answer.

11         Q    (By Mr. Zerner)  Do you see 1376 on the bottom?

12         A    Yes, sir.

13         Q    I'm just going to say to you this is a document

14     you produced to me, and it appears to be a Discord chat

15     between you and Danny; did you produce that to them?

16         A    Yes.

17         Q    And do you see that he says, "Official lead

18     developer since November/December of last year"; do you

19     see that?

20         A    Yes.

21         Q    And do you see it says, "I'm also part of the

22     management team"?

23         A    Yep.

24         Q    Does that refresh your recollection as to

25     whether Danny told you that he was the lead developer from
```

Page 36

```
 1    what you're doing to the witness to intimidate him him
 2    improperly.
 3              Stick with the questions, Larry.  Stick with the
 4    questions.
 5              MR. ZERNER:  When we get to court --
 6              MR. BEGAKIS:  You're not an immigration
 7    attorney, Larry.  So stick with the questions and get done
 8    with them.  You're not getting what you want and
 9    frustrated by it --
10              MR. ZERNER:  No.  I'm not frustrated at all.  At
11    all.
12       Q    (By Mr. Zerner)  The money that NoPixel paid
13    Danny was paid into Danny's personal PayPal account.
14    Correct?
15              MR. BEGAKIS:  Objection to the extent it calls
16    for speculation.
17              THE WITNESS:  If you say it was.
18       Q    (By Mr. Zerner)  You heard him say that
19    yesterday.  Right?
20              MR. BEGAKIS:  Objection to the extent it calls
21    for speculation.
22              THE WITNESS:  I heard something along those
23    lines.
24       Q    (By Mr. Zerner)  NoPixel didn't pay TOVE Danny's
25    salary.  Correct?
```

Page 42

```
1          A     Correct.
2          Q     And Danny, to this day, has not paid TOVE any
3     portion of the salary he earned from NoPixel.  Correct?
4          A     Yes.  But I would stipulate that before Danny
5     and I could actually true up the books completely, I
6     actually had reached out to him at the end of 2022 to
7     discuss that when he had informed me about the termination
8     and thus I decided to take the action that we did to get
9     us here today.
10         Q     Do you currently owe Danny money; does TOVE
11    currently owe Danny money?
12         A     It's possible we could based off all the income.
13    But, again, ever since the issues came about, I basically
14    told Danny don't worry about it.  Let's see where the
15    cards fall and then we'll settle up at a later date.  And
16    that's kind of been the way we've been moving forward.
17         Q     But Danny is your employee.  Right?
18         A     Correct.
19         Q     You don't think you're required to pay your
20    employees what they're owed?
21               MR. BEGAKIS:  Objection to the extent it calls
22    for a legal conclusion, argumentative, calls for an expert
23    opinion.
24               But if you understand the question and can
25    answer, go for it.
```

```
 1    percent and with some of the others clients it was upwards
 2    of 20 percent.
 3         Q    Do you know what it was for Danny?
 4              MR. BEGAKIS:  Objection to the extent it calls
 5    for speculation.
 6              But if you know.
 7              MR. ZERNER:  Asking if he knows.
 8              THE WITNESS:  I believe it was 20 percent with
 9    Danny.
10         Q    (By Mr. Zerner)  So if Danny got $10,000 and he
11    gets the first $2,000 and then you get the rest, right,
12    and then you split it up afterwards?
13         A    So traditionally the way it works is the
14    management firm would collect the money from what are
15    generally like marketing or influencer agencies, so they
16    would collect the money.  They would take their fees and
17    any costs that they had on there.  So if they were
18    FedExing stuff or Ubering things, sometimes you have
19    products and stuff, so they'll take their cost out and
20    then that would be sent to T-O-V-E where we would then
21    take our percentage out and then hold the rest and send it
22    to Daniel at a later date.
23         Q    And when he got money -- so the employment
24    agreement says that TOVE is only entitled to 30 percent;
25    but when he got money, TOVE would actually take the first
```

                                              Page 62

```
1    $8,750 or 100 percent of that money before they did the

2    70/30 split.  Correct?

3         A    I don't know if I would characterize it that

4    way.  You have to look at it from like an aggregate of all

5    the income that was coming in for the month.  The salary

6    was the base, plus I think there were some operational

7    overhead which Danny and I had agreed upon.  I think that

8    was like -- 12,500 was like the number he should be aiming

9    for as a bare minimum.  Anything over that was not only my

10   taking my 30 percent and covering cost, but it was extra

11   bonus money for him.

12            If there was a sponsorship deal -- like using

13   your example of 10,000 -- we would receive 8,000.  I would

14   take -- in accounting, we would account for the the 3,000

15   and then Danny would have the extra 5,000 as a bonusable

16   income.

17        Q    Right.  So if you only make 10,000 in a month

18   and it's a single month from streaming money; did TOVE

19   keep all of that?

20            MR. BEGAKIS:  Objection.  Incomplete

21   hypothetical and assumes facts not in evidence.

22            THE WITNESS:  I would also say that it never

23   happened -- yeah, it never happened.  Until the end of

24   2022; and I think we also, at some point, agreed at the

25   end of summer or maybe the beginning of the fourth quarter
```

Page 63

```
1                    REPORTER'S CERTIFICATE

2

3

4            I, SANDRA S. PETRITSCH, CSR No. 11684, Certified

5    Shorthand Reporter, certify;

6            That the foregoing proceedings were

7    stenographically reported by me at the time and place

8    therein set forth and were thereafter transcribed;

9            That the foregoing is a true and correct

10   transcript of my shorthand notes so taken.

11           I further certify that I am not a relative or

12   employee of any attorney or any of the parties nor

13   financially interested in the action.

14           I declare under penalty of perjury under the

15   laws of California that the foregoing is true and correct.

16           Dated this 26th day of July, 2024.

17

18

19

20

     SANDRA S. PETRITSCH, CSR No. 11684

21

22

23

24

25

                                              Page 67
```

# EXHIBIT 5

1              UNITED STATES DISTRICT COURT

2          FOR THE CENTRAL DISTRICT OF CALIFORNIA

3   _____

4   THAT ONE VIDEO ENTERTAINMENT,

5   LLC, a California limited

6   liability company,

7           Plaintiff,

8       v.                              Case No.

9   Koil CONTENT CREATION PTY LTD.,     2:23-cv-02687

10  an Australian proprietary           SVW (JCx)

11  limited company doing business

12  as NOPIXEL; MITCHELL CLOUT, an

13  individual; and DOES 1-25,

14  inclusive,

15          Defendants.

16  _____

17        VIDEOCONFERENCE DEPOSITION OF DANIEL TRACEY

18  DATE:          Thursday, July 11, 2024

19  TIME:          2:02 p.m.

20  LOCATION:      Remote Proceeding

21                 Phoenix, AZ 85213

22  OFFICIATED BY: Garrett Fitzgerald

23  JOB NO.:       6799446

24

25  PAGES 100-122 ARE CONFIDENTIAL

                                          Page 1

```
 1   have a recollection?
 2              MR. BEGAKIS:  Possibly he's having video
 3   issues.
 4   BY MR. ZERNER:
 5       Q    Can you hear me?
 6       A    What do you -- I don't know -- I don't know
 7   what the question is, sorry.  The internet.
 8       Q    Mr. Tracey, we're going to have a trial.
 9   People from Koil, they're going to say, "Danny Tracey
10   came to our website and signed up"; right?  Then you're
11   going to get on the stand.  And if you're asked, "Is
12   that true?" are you going to say, "It's true," or "It's
13   not true"?
14              MR. BEGAKIS:  Objection.  Argumentative,
15   asked and answered, assumes facts not in evidence.
16   BY MR. ZERNER:
17       Q    You can answer.
18       A    I would say, "I don't know."
19       Q    Okay.  You're not aware of any facts that it's
20   not true at this point in your -- in time; right?
21              MR. BEGAKIS:  Objection.  Asked and
22   answered, assumes facts not in evidence.
23              Be careful with how the questions are
24   being asked.  It's been asked already.
25              MR. ZERNER:  You're coaching the witness.
```

Page 36

```
 1                    THE OFFICER:  Sure.

 2                    (The officer repeated the record as

 3                    requested.)

 4                    MR. BEGAKIS:  Objection.

 5        A    I don't believe I -- I don't believe I said

 6    that.

 7    BY MR. ZERNER:

 8        Q    Okay.  Well, at some point you -- you got

 9    involved with NoPixel; correct?

10        A    Yes.

11        Q    Okay.  And you were writing code for them;

12    right?

13        A    Can you be more specific?

14        Q    In 2020, were you writing code for NoPixel?

15        A    Yes.

16        Q    Okay.  Great.  Did they pay you for that code?

17                    MR. BEGAKIS:  Objection.  Asked and

18    answered.

19        A    I don't recall.

20        Q    Okay.  You -- okay.  You -- okay.  When you

21    wrote code for NoPixel in 2020, in your opinion -- I'm

22    just asking you your opinion -- who owned the copyright

23    to the code that you wrote for NoPixel?

24                    MR. BEGAKIS:  Objection to the extent it

25    calls for a legal conclusion.
```

                                                Page 46

```
 1   BY MR. ZERNER:

 2        Q    You can answer.

 3                  MR. BEGAKIS:   He looks frozen.

 4   BY MR. ZERNER:

 5        Q    Okay.  Did you hear my question?

 6        A    Was the question, when I wrote code for

 7   NoPixel in 2020, who owned the copyright?

 8        Q    Yes.

 9        A    Me.

10        Q    Great.  And when you wrote the code in 2020

11   and submitted it to NoPixel, did you give NoPixel

12   permission to use that code in the NoPixel server?

13                  MR. BEGAKIS:  Objection.  Vague, calls

14   for a legal conclusion.

15        A    Not explicitly.

16        Q    Sorry?  Can you repeat that?

17        A    Not explicitly.

18        Q    Okay.  But did you give them implicit

19   permission to use that code in the server?

20                  MR. BEGAKIS:  Objection.  Vague, calls

21   for a legal conclusion.

22        A    I don't understand how you would give implicit

23   permission, to be honest.

24        Q    Well, what was NoPixel supposed to do with the

25   code that you submitted to them?
```

Page 47

```
1    sponsors -- deals was paid directly to TOVE; correct?

2         A    Yes.

3         Q    Okay.  But not the NoPixel money; correct?

4         A    Yes.

5         Q    And you did not pay -- you have not paid, as

6    of yet, 30 percent of the money that you got from

7    NoPixel to TOVE; correct?

8         A    We haven't settled our books yet, correct.

9         Q    I understand.  The answer is yes or no.

10   Correct; right?

11                   MR. BEGAKIS:  Objection.  Objection.

12   Argumentative.

13                   THE WITNESS:  Okay.

14                   MR. BEGAKIS:  You -- Mr. Tracey, you give

15   the -- you give an answer that you believe is

16   appropriate for the question.

17                   THE WITNESS:  Okay.

18                   MR. BEGAKIS:  You don't allow Counsel to

19   dictate what your answer is.

20                   THE WITNESS:  Okay.

21   BY MR. ZERNER:

22        Q    Where does it say in this agreement that

23   they're entitled to all of the money from NoPixel or any

24   of the money from NoPixel?

25                   MR. BEGAKIS:  Objection.  Document speaks
```

Page 128

1          Q      Okay.    And you created the code that let the
2     Tebex and the API talk to each other?    Or am I -- is
3     that too bad a generalization?    Is that okay?    Is
4     that --
5          A      Yes.
6          Q      Okay.    And you did that 100 percent yourself?
7          A      Yes.
8          Q      Okay.    And do you think you own that code?
9                      MR. BEGAKIS:    Objection.    Calls for a
10    legal conclusion.
11         A      No, TOVE owns it.
12         Q      Okay.    TOVE owns it?    You did that after you
13    were signed by TOVE?
14         A      Yes.
15         Q      Okay.    Did -- does NoPixel have permission to
16    use that code?
17                      MR. BEGAKIS:    Objection.    Calls for
18    speculation, calls for a legal conclusion.
19         A      I wouldn't -- they were never explicitly given
20    permission to use it.
21         Q      Okay.    Have you ever been involved in a
22    copyright lawsuit?
23         A      No.
24         Q      Do you have any knowledge about copyright?
25    The laws of copyright?

Page 202

```
 1              CERTIFICATE OF DEPOSITION OFFICER
 2            I, GARRETT FITZGERALD, the officer before whom
 3    the foregoing proceedings were taken, do hereby certify
 4    that any witness(es) in the foregoing proceedings, prior
 5    to testifying, were duly sworn; that the proceedings
 6    were recorded by me and thereafter reduced to
 7    typewriting by a qualified transcriptionist; that said
 8    digital audio recording of said proceedings are a true
 9    and accurate record to the best of my knowledge, skills,
10    and ability; that I am neither counsel for, related to,
11    nor employed by any of the parties to the action in
12    which this was taken; and, further, that I am not a
13    relative or employee of any counsel or attorney employed
14    by the parties hereto, nor financially or otherwise
15    interested in the outcome of this action.
16
17     Date: July 25, 2024
18
19
20
21     GARRETT FITZGERALD
22     Notary Public in and for the
23     State of California
24
25     [X] Review of the transcript was requested.
```

Page 205

1              CERTIFICATE OF TRANSCRIBER

2              I, VIOLET MILLHAUSER, do hereby certify that

3    this transcript was prepared from the digital audio

4    recording of the foregoing proceeding, that said

5    transcript is a true and accurate record of the

6    proceedings to the best of my knowledge, skills, and

7    ability; that I am neither counsel for, related to, nor

8    employed by any of the parties to the action in which

9    this was taken; and, further, that I am not a relative

10   or employee of any counsel or attorney employed by the

11   parties hereto, nor financially or otherwise interested

12   in the outcome of this action.

13

14    Date: July 25, 2024

15

16

17

18

19

20

21    VIOLET MILLHAUSER

22

23

24

25

                                        Page  206